COOLEY LLP
Steven M. Strauss (99153) (sms@cooley.com)
Erin C. Trenda (277155) (etrenda@cooley.com)
4401 Eastgate Mall
San Diego, CA  92121
Telephone: (858) 550-6000
Facsimile:  (858) 550-6420

Jeffrey Karr (186372) (jkarr@cooley.com)
3175 Hanover Street
Palo Alto, CA 94304
Telephone: (650) 843-5258
Facsimile: (650) 849-7400

Attorneys for Plaintiff
Javo Beverage Co., Inc.

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

JAVO BEVERAGE CO., INC.,

               Plaintiff,

    v.

CALIFORNIA EXTRACTION
VENTURES, INC. AND STEPHEN
COREY,

             Defendants.

Case No. **'19 CV 1859 BEN WVG**

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

  (1) **Violation of Defend Trade Secrets Act (18 U.S.C. § 1836,** *et seq.***)**

  (2) **Violation of California Uniform Trade Secret Act (Cal. Civ. Code § 3426,** *et seq.***)**

  (3) **Declaratory Judgment of Patent Ownership**

  (4) **Intentional Interference with Contractual Relations**

**DEMAND FOR JURY TRIAL**

Plaintiff Javo Beverage Co., Inc. ("Javo") brings the following complaint against Defendants Stephen Corey ("Corey") and California Extraction Ventures, Inc. ("CEV" and with Corey, "Defendants"), and alleges as follows:

## INTRODUCTION

1. Over more than two decades and at great expense, Javo researched and developed a highly valuable, unique, and proprietary process for the manufacture of concentrated, high quality, stable extracts of coffee, tea, and other botanicals and has built a strong business and reputation in its industry around this unique offering. Many large, well-known companies in the coffee, food, and beverage industry contract with Javo specifically for Javo's extraction and related manufacturing expertise. Javo has continually maintained this process as a proprietary trade secret that has been central to its business operations and value in the industry.

2. Corey was an original co-founder of Javo and its predecessors, and a principal inventor of Javo's trade secret extraction process. Corey was, for over a decade, an employee of Javo and its predecessor entities beginning from the company's inception in or around 1993 until 2011.

3. In that role, Corey assigned all rights and interests he may have had in the proprietary process to Javo, including through his Employment Agreement ("EA") and the associated Employee Confidentiality and Invention Assignment Agreement ("CIAA"), which he simultaneously executed on December 5, 2001. These agreements contain strict confidentiality clauses preventing Corey from using outside his employment or publicly disclosing any Javo trade secrets or confidential information.

4. Instead of honoring these obligations, Corey, after separating from Javo, brazenly applied for patents broadly disclosing and claiming rights in the core aspects of the highly valuable trade secrets and confidential information he participated in developing for Javo. Corey then assigned those patent applications to CEV. Through this scheme, Corey and CEV have caused irreparable harm to Javo and the value of its trade secret processes.

## PARTIES

5.     Plaintiff Javo is a Delaware Corporation organized and existing under the laws of Delaware with its principal place of business located at 1311 Specialty Drive, Vista, California.

6.     Defendant CEV is a Delaware corporation, organized and existing under the laws of Delaware with its principal place of business located at 1024 Bayside Drive, Suite 526, Newport Beach, California.

7.     Defendant Corey is an individual residing in La Jolla, California and is the President of Defendant CEV.

8.     This court is the proper court for the trial in this action because the actions and omissions of Defendants as alleged herein were made within this Court's jurisdictional area.

9.     Javo and Corey were parties to the EA dated December 5, 2001, and simultaneously executed the associated CIAA, dated December 5, 2001.  True and correct copies of the EA and the CIAA are attached as Exhibit A.

## JURISDICTION AND VENUE

10.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Javo asserts federal claims under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1831, *et seq*.  Javo also asserts claims under the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, that relate to the patent laws of the United States, 35 U.S.C. § 1, *et seq*.  The Court has supplemental or pendant jurisdiction over Javo's remaining claims, which form part of the same case or controversy as the federal question claims, pursuant to 28 U.S.C. § 1367.

11.    This Court has personal jurisdiction over Defendants.  On information and belief, Defendant Corey resides and engages in regular business activities in California and this District.  Defendant CEV is a corporation organized under the laws of Delaware with its principal place of business in California, and engages in regular business in California and this District.

12.     Venue in this District is proper under 28 U.S.C. §§ 1391 (b), (c), and (d). Javo maintains a principal place of business in this District. Corey resides in this District. CEV is deemed to reside in this District pursuant to 28 U.S.C. § 1391(d) because CEV has a principal place of business in California and engages in regular business in California and this District. Additionally, the agreements between Javo and Corey both include Choice of Law provisions stating that the "parties agree to the jurisdiction of the federal and state courts of California for disputes arising from this agreement." Ex. A at 12 (EA § 11.1), 20 (CIAA § 15). Further, a substantial part of the actions giving rise to the claims occurred in this District.

## FACTUAL ALLEGATIONS

13.     Since 1993, Javo has been engaged in the business of coffee, tea, and botanical extracts, ingredients, and flavor systems, which are sold across the country. Javo also has a global presence, having shipped products internationally to countries such as Canada, the United Kingdom, Amsterdam, China, Sri Lanka, and Malaysia. Javo utilizes a unique and proprietary extraction method that has been continually improved over the years and results in high quality, concentrated, and stable extracts for its clients. Javo has two processing facilities, one in Vista, California, and the other in Indianapolis, Indiana. At both facilities, the Javo team manages the entire proprietary extraction process from start to finish.

14.     Javo's trade secret extraction process includes, for example, introducing purified, deionized water within particular temperature and pressure ranges into a proprietary columnar extraction vessel containing an extractable material (e.g., roasted coffee) that has been ground into multiple particle sizes and specially packed into the vessel into which a flat column of deionized water is introduced into the bottom of the vessel where it meets and moves upward through the extractable material causing expansion, off-gassing, and compaction of the material, and the formation of a higher temperature boundary layer that moves upward through the vessel as the extraction process proceeds, resulting in a pure, concentrated extract flowing from the top of the

vessel.

15.     Javo and its predecessors have spent significant time, effort, and expense over the last 25 years to develop Javo's trade secrets and other confidential information. Javo's trade secrets and other confidential information were not known, nor readily ascertainable, from information available to the public—until Corey improperly disclosed the information in publicly-available patent applications he filed with the United States Patent and Trademark Office ("USPTO") and assigned to CEV.

16.     Javo takes reasonable steps and precautions to protect its highly valuable trade secrets and other confidential information in order to restrict access to the information outside of Javo and prevent the valuable information from falling into the hands of a competitor.  Javo limits employee access to sensitive information on a need to know basis, restricts the number of employees that are trained across multiple aspects of the trade secret process, and requires its employees who have access to confidential information to keep the information confidential and not use the information for anything other than company purposes.  Javo requires its employees and contractors to sign agreements prohibiting the use and disclosure of such information outside of Javo, and requires the return of sensitive materials upon termination of the agreements.  Javo also restricts access and has physical security, including key card access to all doors and alarm systems at its facilities, as well as secure storage sites.  Hourly facility employees use a biometric print geometry device to confirm their identity when clocking in and out of work, with handprint scanners being used up to ten years ago and fingerprint scanners being used over the last two or three years.  Visitors to Javo's facilities are required to execute confidentiality and non-use agreements in favor of Javo as a condition of entry.

17.     Javo considers the confidentiality agreements entered into by its employees to be a critical piece of Javo's effort to protect the confidentiality of the company's trade secrets and other confidential information.  Corey executed multiple agreements with the company in which he acknowledged his duties of confidentiality

and agreed to protect Javo's trade secrets and other confidential information.

18. On information and belief, Corey and CEV misused Javo's trade secrets and other confidential information to benefit CEV. On information and belief, CEV knew that this constituted Corey's breach of material terms in his employment agreement with Javo, as set forth in the EA and confirmed in the CIAA. This also constituted trade secret misappropriation by Corey and CEV. Corey's blatant disregard for his obligations to Javo are all the more shocking given his role as the company's founder.

19. In 1993, Corey formed Stephen's Coffee Company, Inc. to develop and commercialize the same method of extraction that is substantially in use by Javo currently.

20. In the 1997-1998 timeframe, Corey and Stephen's Coffee Company partnered with others in creating Stephen's Coffee Holding Corp. and using an existing entity, North West Farms, Inc., as part of a business restructuring plan.

21. As part of this business restructure, North West Farms acquired the assets of Stephen's Coffee Company and merged with Stephen's Coffee Holding Corp., with North West Farms as the surviving entity and with Corey as a substantial shareholder of North West Farms.

22. In 1999, Kurt Toneys became President/CEO and a director of North West Farms. On information and belief, Toneys is presently involved with CEV as its CEO and a director.

23. Also in 1999, North West Farms briefly changed its name to La Jolla Coffee Company, Inc., and shortly thereafter to La Jolla Fresh Squeezed Coffee Company, Inc.

24. In the 1999 timeframe, the company also began construction of full-scale steel extractors based on its proprietary extraction process.

25. In 2000, the company merged with Sorisole Acquisition Corp., becoming a successor issuer to Sorisole.

26.    In 2001, Toneys resigned and Cody Ashwell replaced Toneys as CEO and Director of the company.

27.    In 2002, the company moved to its current location in Vista, California.

28.    In connection with the move to Vista, and while Corey served as the Vice President of Research and Development, the company had additional extractor vessels fabricated under contracts that included non-disclosure agreements.  Though the company has continued to make improvements and modifications to the extractor vessels and extraction process over time, these same extractor vessels are currently still in use.

29.    In 2002, the company redomiciled to Delaware and changed its name to Javo Beverage Company, Inc.

30.    During the 2001-2002 timeframe, Corey had begun to take a smaller role as a corporate leader of the company and to increasingly focus on research and development work.  Corey still remained a director until 2004, when outside directors came on board.

31.    On December 5, 2001, Corey entered into the EA and simultaneously executed the CIAA with Javo's predecessor in interest, La Jolla Fresh Squeezed Coffee Co., Inc. *See* Ex. A.

32.    The EA included requirements to ensure that Corey would protect Javo's confidential information and trade secrets.  Ex. A at 9-10 (EA § 7).  Under the EA, Corey expressly "acknowledges that Confidential Information and Trade Secrets are the sole property of the Company and agrees not to use such Confidential Information or Trade Secrets other than during the Employment Period and for the benefit of Company."  Ex. A. at 10 (EA § 7.3).  As part of these confidentiality requirements, Corey agreed to and executed a separate agreement, the CIAA.  Ex. A at 10 (EA § 7.7), 16-26 (CIAA).

33.    By executing the CIAA, Corey acknowledged that he had already "previously transferred any and all right, title and interest in inventions relating to coffee

and coffee extracts to the Company and has continuously operated under nondisclosure agreements under which he has been and continues to be prohibited from disclosing confidential information of the Company."  Ex. A at 16 (CIAA, First Recital).

34.    Under the CIAA, Corey expressly agreed, in capital letters, that he "transfers and assigns" his "entire right, title, and interest in all inventions" that were "made, conceived, reduced to practice, or learned" by him during his past relationship with the company or its predecessors in interest. Ex. A at 18 (CIAA § 8.2 (Assignment of Inventions Created Prior to Execution of this Agreement)).

35.    Under the CIAA, Corey expressly agreed that during the term of his employment, "all Inventions belong to and shall be the sole property of Company and shall be Inventions of Company subject to the provisions of this Agreement."   Ex. A at 18-19 (CIAA § 8.3 (Assignment of Inventions During the Term of this Agreement)). Corey signed terms that expressly "assign[] to Company all right, title, and interest Employee may have or may acquire in and to all Inventions." *Id.*

36.    By executing the CIAA, Corey further acknowledged that "since the execution of such prior transfer of invention, Employee has performed all research and development and other work in the field of coffee as an employee of the Company using the Company's equipment, supplies, facilities, and/or trade secret information and that Employee's efforts have either related to the employer's business or to actual or demonstrably anticipated research or development of the Company or result from work performed by Employee for the Company."  Ex. A at 16 (CIAA, Second Recital).

37.    By executing the CIAA, Corey also agreed to "hold in trust, keep confidential, and not disclose to any third party or make any use of the Confidential Information of Company or Clients except for the benefit of Company or Clients and in the course of his employment with Company." Ex. A at 17 (CIAA § 3).

38.    Corey confirmed on Schedule A to the CIAA that there were no inventions proprietary to him that he wanted to exclude from the application of the agreement.  Ex. A at 18 (CIAA § 5), 22 (CIAA, Schedule A, indicating "None" in response to a request

to identify any "Inventions that [Corey did] not wish to be assigned to Company under this Agreement").

39.     By executing the CIAA, Corey also agreed that his obligations to protect the confidential information of the company and to refrain from the disclosure or use to his benefit (or the benefit of any third party) of any confidential information or invention, would extend beyond his termination.  Ex. A at 19-20 (CIAA § 10.2).

40.     Finally, under the CIAA, Corey recognized that his "breach of [the CIAA] may cause Company irreparable harm for which money is inadequate compensation" and "agree[d] that Company will be entitled to injunctive relief to enforce this Agreement, in addition to damages and other available remedies."  Ex. A at 20 (CIAA § 11).  Corey made a similar acknowledgment under the EA.  Ex. A at 10 (EA § 7.6.)

41.     The CIAA concludes with the following, in all capital letters: "This Agreement affects your rights to Inventions you have made and may make during your employment, and restricts your right to disclose or use Company's Confidential Information during or subsequent to your employment."  Ex. A at 21 (CIAA, Signature Page).

42.     On January 24, 2011 ("Petition Date"), the company commenced a Chapter 11 bankruptcy proceeding in the United States Bankruptcy Court in the District of Delaware, Case No. 11-10212 (BLS) to, among other things, restructure its debt.  On February 18, 2011, Javo filed its Schedule of Assets and Liabilities.  *In re Javo Beverage Co.*, Case No. 11-10212 (BLS), Dkt. No. 111 (Bankr. D. Del.).  On Schedule B – Personal Property, Javo listed that it owned "proprietary manufacturing processes" with an "[u]nknown" value.  *Id.* at 10.  On Schedule G – Executory Contracts and Unexpired Leases, Javo listed Corey as a counter-party to the EA and the attached CIAA.  *Id.* at 42.

43.     On February 22, 2011, Javo's agent served Corey (as a creditor and interested party) with a Notice of Deadline of March 24, 2011, to file a Proof of Claim setting forth any claim, allegation, liability, or damage Corey may have had against Javo

as of the Petition Date.  *In re Javo Beverage Co.*, Case No. 11-10212 (BLS), Dkt. Nos. 119, 125 (Bankr. D. Del.).  The Notice expressly stated that not filing a claim would forever waive Corey's ability to assert that claim against Javo or its assets in the future.

44.    Corey filed no Proof of Claim in response to the Notice of Deadline of March 24, 2011, and filed no objections to the confirmation of Javo's First Amended Plan of Reorganization ("Plan").

45.    On April 28, 2011, the Bankruptcy Court entered an order ("Confirmation Order") confirming Javo's Plan, which included an assumption by the reorganized Javo entity of Corey's EA and the attached CIAA.  *In re Javo Beverage Co.*, Case No. 11-10212 (BLS), Dkt. No. 242 (Bankr. D. Del. Apr. 28, 2011).  The Confirmation Order provided that all of Javo's property, including, without limitation, the proprietary manufacturing processes, were vested in the reorganized entity, free of claims, liens, encumbrances, and interests of any kind.  The Confirmation Order further provided that all holders of claims had forever released and discharged reorganized Javo and its property from any and all claims, rights, causes of action, liabilities, whether known or unknown, and interests.  The Confirmation Order also enjoined creditors, including Corey, from taking any action against reorganized Javo with respect to any pre-effective date claim.

46.    Javo exited bankruptcy on or about May 13, 2011, upon consummation of the Plan.  *In re Javo Beverage Co.*, Case No. 11-10212 (BLS), Dkt. No. 257 (Bankr. D. Del. Apr. 28, 2011).

47.    In or about August 2011, the company terminated Corey without cause as a result of the elimination of his position due to the restructuring under the Plan.

48.    On December 12, 2011, Corey executed Exhibit B to the EA, confirming his release and waiver of any claims against Javo.  Ex. A at 7 (EA § 6.1(b)), 25 (EA, Exhibit B).

49.    Commencing on December 31, 2014, CEV offered and sold securities amounting to $13,488 per a Form D Notice of Exempt Offering of Securities CEV

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

10.

COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF

subsequently filed with the U.S. Securities and Exchange Commission ("SEC") on August 3, 2018.

50.     On information and belief, this offer and sale of securities by CEV funded, at least in part, the preparation and filing of Corey's provisional patent application, U.S. Pat. App. No. 62/134,497, which Corey filed on March 17, 2015 (the "'497 Provisional Application").

51.     The '497 Provisional Application is titled "Coffee Extraction Method and Apparatus" and lists Corey as the inventor.  The Provisional contains terminology frequently used by Corey at Javo and even refers to "Javo" processes in certain figures. A true and correct copy of the '497 Provisional Application is attached as Exhibit B.

52.     The '497 Provisional Application describes the field of invention as generally relating to "a method of coffee bean extraction and apparatus."  The '497 Provisional Application describes the invention more specifically as "a novel method for precisely extracting purified supreme coffee from coffee bean mixture using precise water structuring parameters, pressure gradients and temperature profiles."  Ex. B at 2, para [001].

53.     The '497 Provisional Application admits that Corey conceived of grind matrixing / the filtration core while at Javo.  For example, the '497 Provisional Application states that "it took the Applicant six years of testing to figure it out" and that "[t]his only happened when the Applicant was able to build a Lexan, transparent vessel." Ex. B at 19, para [0043].  At least some, and most likely all, of those "six years of testing" were done at Javo or one of its predecessors.  At minimum, two of those "six years" were at Javo because six years prior to March 17, 2015, would be March 2009, and Corey worked at Javo until his termination in August 2011.  Indeed, while at Javo, Corey built a Lexan transparent vessel that he used for testing that is similar to what is described in the '497 Provisional Application.  On information and belief, conception occurred during Corey's tenure with the company.

54.     The '497 Provisional Application also contains phrases frequently used by

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

11.

COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF

Corey at Javo.  For example, it states that "the coffee itself became its own best filtering agent."  Ex. B at 19, para [0043].  While at Javo, Corey also frequently used that same phrase, and the related term "grind matrixing."  Ex. B at 10, para [0024].  The "grind matrix" term appears in the title and throughout the '124 and '275 patents.

55.    Literature on Javo's predecessor describes its proprietary products as "seventh generation cold water extraction technology" that it deployed in February 2000.  The '497 Provisional Application refers to "categories" of operations that "are critical, absolutely vital and necessary to the new generation of the Gen 7 extraction process."  Ex. B at 25, para [0056].

56.    Figure 7 of the '497 Provisional Application is titled "Coffee Sequencing Sets & Subsets Flow-Chart" and addresses both coffee beans and "hungry water".  Ex. B, Figure 7.  The flow-chart has the word "Javo" written ten times next to multiple steps relating to the extraction process.  *See id*.  Corey also used the term "hungry water" to describe purified, deionized water during his time at Javo.

57.    Another example of the patents containing terms frequently used by Corey at Javo, are the frequent references to "pressure wave" technology.  CEV claims the "pressure-wave" as its novel technology, but Javo has documentation created by Corey in the course of his employment at the company in which Corey describes the "pressure-wave" within the Javo process.  For example, in an extraction log from 2004, Corey reported on a lab extraction he had performed by writing: "Decent extraction, fairly even upwelling of pressure wave, consistent transition through diffuser."

58.    Commencing on May 1, 2017, CEV offered and sold securities amounting to $11,040 per a Form D Notice of Exempt Offering of Securities CEV subsequently filed with the SEC on August 3, 2018.

59.    Commencing on February 12, 2018, CEV offered and sold securities amounting to $2,560,998 per a Form D Notice of Exempt Offering of Securities CEV subsequently filed with the SEC on August 6, 2018.

60.    On information and belief, these later offers and sales funded, at least in

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

12.

COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF

part, the preparation and filing of additional patent applications that Corey assigned to CEV.

61.    On information and belief, in seeking the funding, Corey and/or CEV disclosed Javo's confidential and trade secret information to investors or prospective investors, at least through disclosing the provisional applications, pending applications, or issued patents.

62.    On information and belief, in seeking the funding, Corey and/or CEV made claims of ownership over confidential and trade secret information of Javo to investors or prospective investors.

63.    On information and belief, the decisions of investors to invest in CEV were at least in part based on Corey and/or CEV's disclosure of provisional applications, pending applications, or issued patents.

64.    On information and belief, the decisions of investors to invest in CEV were at least in part based on confidential and trade secret information of Javo that Corey and/or CEV represented was owned by Corey and/or CEV.

65.    Thus far, Corey has obtained seven issued patents claiming priority to Corey's '497 Provisional Application, including U.S. Pat. No. 9,855,516 (issued Jan. 2, 2018); U.S. Pat. No. 10,112,124 (issued Oct. 30, 2018); U.S. Pat. No. 10,130,898 (issued Nov. 20, 2018); U.S. Pat. No. 10,207,200 (issued Feb. 19, 2019); U.S. Pat. No. 10,293,275 (issued May 21, 2019); U.S. Pat. No. 10,335,712 (issued July 2, 2019), and U.S. Pat. No. 10,399,006 (issued September 3, 2019).  All seven patents are assigned to CEV.  Corey also has seven additional published patent applications claiming priority to the '497 Provisional Application, which are also assigned to CEV.

66.    The issued patents and published patent applications disclose material that substantially describes and overlaps with the proprietary confidential information and trade secrets of Javo.  On information and belief, the unpublished applications describe and overlap on the same.  Even assuming for the sake of argument that Corey was and is a correctly-named inventor of the patents and published patent applications, the

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

13.

COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF

publication of these materials still constituted a violation of Corey's clear obligations to refrain from disclosing confidential information of the company and to transfer all interest in any inventions to the Company.

67.     On information and belief, after the date of the EA and CIAA and prior to Corey's termination, Javo had developed further designs or processes constituting confidential and/or trade secret information.   Any involvement of Corey in such development was subject to the confidentiality and assignment provisions of the EA and CIAA.   The issued patents and published patent applications also disclose aspects of these further-developed designs.

68.     Through correspondence sent to Corey and CEV on May 30, 2019, Javo has demanded that Defendants immediately assign rights in the patents and applications claiming priority to the '497 Provisional Application; that Defendants identify all persons to whom they have disclosed Javo's confidential information and trade secrets (outside of disclosures resulting from publication of the patents and patent applications); that Defendants cease and desist from any further use or disclosure of Javo's confidential information and trade secrets, including the further development or sales of products related to the confidential information and trade secrets; and that Defendants disclose to its investors and prospective investors the improper use of Javo's confidential information and trade secrets and Corey's breach of contract.

69.     Following additional correspondence and meetings between the parties, it has become clear that Corey and CEV have no intention of resolving this dispute in good faith.

70.     Corey and CEV have caused substantial damage to Javo.   This harm to Javo includes diminishing the value of Javo at a critical time when Javo was considering a potential sale of the company and engaging in negotiations with potential buyers. Damages are estimated to exceed $50 million, and include the reduction in bid price from potential buyers, less advantageous deal terms, additional time and money spent on negotiations, and the ultimate termination of the process.

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

14.

COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF

### FIRST CAUSE OF ACTION (against all defendants)

### Misappropriation of Trade Secrets Under the Defend Trade Secrets Act

### (18 U.S.C. § 1836, *et seq.*)

71.    Javo incorporates by reference the allegations contained in paragraphs 1 through 70 as though fully set forth herein.

72.    Javo owns confidential and trade secret information, as alleged above. Javo's confidential and trade secret information relates to products and services related to the extraction of coffee, tea, botanicals, and other materials.  Javo's trade secrets are related to Javo's products and services that are used, sold, shipped and/or ordered in, or intended to be used, sold, shipped and/or ordered in, interstate and foreign commerce.

73.    The confidential and trade secret information of Javo is valuable competitive information.  Javo has taken reasonable steps and precautions to limit and restrict others from knowing, readily ascertaining, or using Javo's trade secrets, including by limiting access to sensitive information, requiring employees and contractors to sign agreements prohibiting use and disclosure of such information outside of the company, protecting files and information, restricting access and providing physical security at Javo's facilities and storage sites, and requiring the return of sensitive materials upon termination of agreements.

74.    A competitor who comes to learn of Javo's confidential or trade secret information would receive an unfair competitive advantage that could tangibly harm Javo's competitive position in the market, potentially creating millions of dollars in lost sales.  Defendants' misuse and disclosure of Javo's confidential and trade secret information has necessarily caused a loss in value of the company.  Specifically, Defendants' actions directly impacted and interfered with Javo's efforts to sell the company.  Damages are estimated to exceed $50 million, and include the reduction in bid price from potential buyers, less advantageous deal terms, additional time and money spent on negotiations, and the ultimate termination of the process.

75.    As described above, the confidential and trade secret processes and

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

15.

COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF

information at issue are the centerpiece of Javo's operations and business; Javo has developed and used the confidential and trade secret processes and information since its inception, and in no event later than early 2001.  Javo received aspects of this confidential and trade secret information in part via agreement with and assignment from Corey.  Javo has also continued to develop the information.  Javo's confidential and trade secret information are critical to its business, and the confidential and trade secret treatment of Javo's manufacturing process prevented competitors from being able to copy Javo's proprietary extraction methods.

76.   Javo's confidential and trade secret information derives value from not being generally known to the public nor readily ascertainable from Javo's products.

77.   Corey and CEV have improperly disclosed Javo's confidential and trade secret information at least by applying for and obtaining patents from the USPTO.  On information and belief, Corey and CEV also may have disclosed Javo's confidential or trade secret information to third parties, including to investors, business partners or agents of Corey or CEV.

78.   Corey and CEV knew or should have known that disclosure of Javo's confidential or trade secret information was prohibited by at least the EA and CIAA between Corey and Javo.

79.   On information and belief, Corey and CEV knowingly, willfully, and purposefully applied for and obtained patents in the field of extraction processes for coffee, tea, botanicals, and other materials.

80.   Corey's and CEV's patent applications and issued patents are in significant part based on Javo's confidential or trade secret information.

81.   On information and belief, Corey and/or CEV are presently in possession of Javo's confidential or trade secret information.

82.   Javo has been, and continues to be, irreparably harmed by Corey's and CEV's misappropriation of Javo's trade secret information.  Javo seeks compensatory damages and to enjoin such misappropriation by filing for preliminary and permanent

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

16.

COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF

injunctive relief.

83.    In violation of Javo's rights, both Corey and CEV have willfully misappropriated Javo's confidential and trade secret information for their own use, including by filing patent applications and obtaining issued patents on related or otherwise derivative technology.

84.    If Corey's and CEV's conduct is not remedied, they will continue to misappropriate and misuse Javo's confidential and trade secret information, including for example by prosecuting further patent applications claiming priority to the '497 Provisional Application.

85.    Corey's and CEV's actions have caused and will continue to cause Javo to suffer severe competitive injury, irreparable harm, and significant damages in an amount to be proven at trial.  As the direct and proximate result of Corey's and CEV's misappropriation, Javo has suffered damage within the meaning of 18 U.S.C. § 1836(b)(3)(B)(i)(I) in an amount that is yet unknown.  If Corey's and CEV's conduct is not stopped, Javo will continue to suffer irreparable injury and significant damages.

86.    Because Javo's remedy at law is inadequate to compensate for a breach of the EA and CIAA provisions against disclosure of confidential or trade secret information, as agreed upon by the parties, Javo also seeks injunctive relief.  Ex. A at 10 (EA § 7.6), 20 (CIAA § 11).  Javo is entitled to injunctive relief pursuant to 18 U.S.C. § 1836(b)(3)(A) and seeks preliminary and permanent injunctive relief to recover and protect its proprietary, confidential, and trade secret information and to protect its other legitimate business interests.

87.    In addition, Corey and CEV have been unjustly enriched as a direct and proximate result of Corey's and CEV's misappropriation of Javo's trade secrets, within the meaning of 18 U.S.C. § 1836(b)(3)(B)(i)(II) in an amount that is yet unknown. Among other things, Javo is informed and believes and therefore alleges that Corey and CEV were able to raise money for CEV and finance patent prosecution efforts by virtue of Corey's and CEV's misappropriation of Javo's trade secret information.

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

17.

COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF

88.     On information and belief, Corey's and CEV's misappropriation of Javo's trade secrets was willful and malicious within the meaning of 18 U.S.C. § 1836(b)(3)(C)&(D).  Accordingly, Javo is entitled to recover exemplary damages and its reasonable attorneys' fees.

89.     Pursuant to the Court's powers under 18 U.S. Code § 1836(b), Javo seeks the assignment of all Corey or CEV patent applications or patents that disclose or claim any Javo trade secrets or any amendments thereto.

## SECOND CAUSE OF ACTION (against all defendants)

### Misappropriation of Trade Secrets Under the California Uniform Trade Secrets Act (Cal. Civ. Code §§ 3426-3426.11)

90.     Javo incorporates by reference the allegations contained in paragraphs 1 through 89 as though fully set forth herein.

91.     For at least the same reasons as set forth in paragraphs 71 through 89 above, Javo's trade secrets are protectable under the California Uniform Trade Secrets Act.

92.     For at least the same reasons as set forth in paragraphs 71 through 89 above, Corey's and CEV's conduct constitutes misappropriation of trade secrets under California Civil Code § 3426, *et seq.*

93.     As a direct and proximate result of Corey's and CEV's conduct, Javo has suffered and continues to suffer irreparable injury and damages in an amount to be proven at trial.  Javo is also entitled to an award of attorneys' fees and costs.

94.     Corey's and CEV's actions have caused and will continue to cause irreparable harm to Javo unless enjoined by the Court.  Javo has no adequate remedy at law.  Accordingly, Javo is entitled to injunctive relief pursuant to California Civil Code § 3426.2.

95.     On information and belief, Corey's and Javo's misappropriation of Javo's trade secrets was willful and malicious and, accordingly, Javo is entitled to recover exemplary damages and its reasonable attorneys' fees and costs pursuant to California

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

18.

COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF

1  Civil Code §§ 3426.3(c) and 3426.4.

2  **THIRD CAUSE OF ACTION (against CEV)**

3  **Declaratory Judgment of Ownership of the '516, '124, '898, '200, '275, '172, and '006 Patents**

4

5  96.  Javo incorporates by reference the allegations contained in paragraphs 1

6  through 95 as though fully set forth herein.

7  97.  As evidenced by the allegations above, Javo alleges that it is the owner of

8  right, title, and interest in the '516, '124, '898, '200, '275, '172, and '006 Patents by

9  assignment from the named inventor.

10  98.  Upon information and belief, Corey contributed to the conception of at

11  least one claim of each issued patent and pending patent application claiming priority

12  to the '497 Provisional Application during his employment at Javo.

13  99.  As a result, Javo is the owner of the '516, '124, '898, '200, '275, '172, and

14  '006 Patents by virtue of the CIAA, which Corey entered into with Javo's predecessor

15  in interest, La Jolla Fresh Squeezed Coffee Co., Inc.  In accordance with the CIAA,

16  Corey assigned his right, title, and interest in all Inventions made, conceived, reduced

17  to practice, or learned during his employment by Javo and its predecessors.

18  100.  On information and belief, other employees of Javo, with similar

19  assignment obligations to those under Corey's CIAA, likely made inventive

20  contributions to the subject matter claimed in the '516, '124, '898, '200, '275, '172, and

21  '006 Patents.  Any Javo employees who contributed to conception of at least one claim

22  of any of the patents must be named as joint inventors on the patents.

23  101.  As a result of Corey's assignment under the CIAA and work with other

24  Javo employees during his employment, Javo is either the full owner or the joint owner

25  of the '516, '124, '898, '200, '275, '172, and '006 Patents.

26  102.  Upon information and belief, Corey has assigned all relevant patents and

27  patent applications to CEV.

28  103.  Upon information and belief, CEV and Corey's statements to the USPTO

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

19.

COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF

1   were intentional and were designed to mislead the USPTO with respect to the true
2   ownership of the '516, '124, '898, '200, '275, '172, and '006 Patents.

3       104.   There exists a substantial and continuing justiciable controversy between
4   the parties concerning ownership.   Accordingly, Javo seeks declaratory relief
5   concerning Javo's ownership interest in the '516, '124, '898, '200, '275, '172, and '006
6   Patents.

7       105.   Further, as alleged above, Javo is either the full owner or joint owner of all
8   pending patent applications claiming priority to the '497 Provisional Application.  To
9   the extent patents issue on any pending patent applications filed by Corey and/or CEV
10  that claim priority to the '497 Provisional Application, Javo will timely amend its
11  complaint to name the additional issued patents.

12                 **FOURTH CAUSE OF ACTION (against CEV)**
13               **Intentional Interference with Contractual Relations**

14      106.   Javo incorporates by reference the allegations contained in paragraphs 1
15  through 105 as though fully set forth herein.

16      107.   Corey had valid and enforceable contracts with Javo that included at least
17  the EA and the CIAA.

18      108.   On information and belief, CEV was aware of the existence of the EA and
19  the CIAA contracts between Javo and Corey, at least due to Corey's involvement with
20  CEV.

21      109.   In addition, Kurt Toneys, who was President/CEO and Director of Javo's
22  predecessor(s) in interest, is presently the CEO and Director of CEV.  Through Toneys,
23  who similarly had non-disclosure obligations to at least Javo's predecessors, CEV has
24  knowledge of Corey's involvement with and the history of Javo, including the existence
25  of the confidential and trade secret processes and information at issue, Javo's ownership
26  of the information and its value and importance to Javo, and the requirement to protect
27  and preserve the confidentiality of the information.

28      110.   On information and belief, CEV intended to file patent applications on

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

20.

COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF

extraction processes for coffee, tea, and other materials identifying Corey as an inventor.  CEV was aware that, to the extent such patent applications disclosed the confidential or trade secret information of Javo, the disclosure of that information would violate the provisions of Corey's EA and the CIAA intended to protect Javo's confidential and trade secret information.

111.   The published patent applications and issued patents assigned to CEV identifying Corey as an inventor were a material breach of the restrictions against disclosure of Javo's confidential and trade secret information in Corey's EA and the CIAA.

112.   By inducing Corey to misuse and disclose Javo's confidential and trade secret information, CEV has necessarily caused a loss in value of the company. Specifically, CEV's actions directly impacted and interfered with Javo's efforts to sell the company.  Damages are estimated to exceed $50 million, and include the reduction in bid price from potential buyers, less advantageous deal terms, additional time and money spent on negotiations, and the ultimate termination of the process.

113.   As a direct and proximate result of CEV's conduct, Javo has suffered and continues to suffer irreparable injury and damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Javo prays for judgment against Corey and CEV as follows:

1.   For damages in an amount to be determined at trial;

2.   For treble damages in view of the willful misappropriation of Javo's confidential or trade secret information;

3.   For an order requiring Corey and CEV to immediately cease acts of unlawful, unfair and/or fraudulent misappropriation and use of Javo's confidential or trade secret information;

4.   For an order requiring Corey and CEV to assign to Javo all patent applications and patents that disclose in whole or in part Javo trade secrets;

5.   For reasonable attorney's fees to be determined at trial;

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

21.

COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF

6.    For a declaratory judgment concerning Javo's ownership interest in the '516, '124, '898, '200, '275, '172, and '006 Patents, and an order requiring CEV to assign the patents to Javo.

7.    For Corey and CEV to cease and desist developing, demonstrating, offering for sale, or selling any system that incorporates or is derived from Javo confidential or trade secret information, and to stop all public disclosures of such information;

8.    For disclosure to CEV's past, present, or future investors, actual or prospective, regarding CEV's improper use of Javo's confidential or trade secret information, and a request that they immediately return to Javo any Javo confidential or trade secret information that may still be in said investor or potential investor's possession; and

9.    For such other and further relief as the Court may deem proper.

## JURY DEMAND

Javo demands a trial by jury in this action on all issues so triable.

Dated:  September 26, 2019              COOLEY LLP

By:  */s/ Steven M. Strauss*
                                          Steven M. Strauss (99153)

Attorneys for Plaintiff Javo Beverage Co., Inc.

210074255

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF