1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

COOLEY LLP
Steven M. Strauss (99153) (sms@cooley.com)
Erin C. Trenda (277155) (etrenda@cooley.com)
Alexander R. Miller (294474) (amiller@cooley.com)
4401 Eastgate Mall
San Diego, CA 92121
Telephone: (858) 550-6000
Facsimile:  (858) 550-6420

Jeffrey Karr (186372) (jkarr@cooley.com)
3175 Hanover Street
Palo Alto, CA 94304
Telephone: (650) 843-5000
Facsimile: (650) 849-7400

Attorneys for Plaintiff
Javo Beverage Co., Inc.

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAVO BEVERAGE CO., INC.,<br><br>Plaintiff,<br><br>v.<br><br>CALIFORNIA EXTRACTION VENTURES, INC. AND STEPHEN COREY,<br><br>Defendants. | Case No.  19-CV-1859 CAB WVG<br><br>**OPPOSITION TO DEFENDANTS CALIFORNIA EXTRACTION VENTURES, INC. AND STEPHEN COREY'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>Date:    November 22, 2019<br>Ctrm.:   4C (4th Floor)<br>Judge:  Hon. Cathy Ann Bencivengo<br><br>Complaint Filed:  September 26, 2019<br>Trial Date:        TBD |

1

## **TABLE OF CONTENTS**

2

**Page**

3   I.     INTRODUCTION ..................................................................................... 1

    II.    BACKGROUND ...................................................................................... 3
4
    III.   LEGAL STANDARD ............................................................................... 7
5
    IV.    ARGUMENT............................................................................................ 7
6
           A.     Javo's Claims Are Timely.............................................................. 7
7
                  1.     Publication of a Patent Application Does Not Automatically
                         Trigger the Statute of Limitations.................................................. 8
8
                  2.     Defendants' Motion to Dismiss on Statute of Limitations
9                        Grounds Is Improper Because It Has No Basis in the
                         Complaint.................................................................................. 14
10
                  3.     Javo's Request for Declaratory Judgment of Patent
11                       Ownership Is Timely Even Under Defendants' Incorrect
                         Theory. ..................................................................................... 18
12
           B.     Javo's Claim Against CEV for Tortious Interference Arises From
13                Different Underlying Facts and Is Not Preempted. ............................... 19

           C.     If Necessary, Javo Should Be Granted Leave to Amend........................ 23
14
    V.     CONCLUSION ...................................................................................... 23

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*U.S. ex rel. Air Control Techs., Inc. v. Pre Con Indus., Inc.*,
720 F.3d 1174 (9th Cir. 2013) ................................................................. 15

*Alamar Biosciences, Inc. v. Difco Labs., Inc.*,
40 U.S.P.Q.2d 1437 (E.D. Cal. 1996) ....................................................... 11

*Ali v. Fasteners for Retail, Inc.*,
544 F. Supp. 2d 1064 (E.D. Cal. 2008) .................................................... 22

*Amron Int'l Diving Supply, Inc. v. Hydrolinx Diving Commc'n, Inc.*,
No. 11-CV-1890 H (JMA), 2011 WL 5025178 (S.D. Cal. Oct. 21,
2011) ............................................................................................... 20, 22

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................... 7

*Avery v. Barsky*,
2013 WL 1663612 (D. Nev. Apr. 17, 2013) ......................................... 9, 16

*Bd. of Trs. of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*,
583 F.3d 832 (Fed. Cir. 2009), ............................................................... 19

*California Sansome Co. v. U.S. Gypsum*,
55 F.3d 1402 (9th Cir. 1995) ................................................................... 17

*City of San Diego v. Monsanto Co.*,
No. 15-CV-578 WQH (AGS), 2017 WL 5632052 (S.D. Cal. Nov. 22,
2017) ........................................................................................................ 15

*CleanFuture, Inc. v. Motive Energy, Inc.*,
2019 WL 2896132 (C.D. Cal. Apr. 15, 2019) .......................................... 22

*ClearOne Commc'ns, Inc. v. Chiang*,
2007 WL 4376125 (D. Utah Dec. 13, 2007) ...................................... 20, 22

*DC Comics v. Pac. Pictures Corp.*,
938 F. Supp. 2d 941 (C.D. Cal. 2013) ..................................................... 18

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

ii.

OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS PLAINTIFF'S COMPLAINT
Case No. 19-CV-1859 CAB WVG

*Deerpoint Grp., Inc. v. Agrigenix, LLC,*
   345 F. Supp. 3d 1207 (E.D. Cal. 2018) ................................................. 22

*DeSoto v. Yellow Freight Sys., Inc.,*
   957 F.2d 655 (9th Cir. 1992) ................................................................ 23

*E-Smart Techs., Inc. v. Drizin,*
   2009 WL 35228 (N.D. Cal. Jan. 6, 2009) ............................................ 20

*Ferris Mfg. Corp. v. Carr,*
   2015 WL 279355 (N.D. Ill. Jan. 21, 2015) .................................. 9, 12, 17

*First Advantage Background Servs. Corp. v. Private Eyes, Inc.,*
   569 F. Supp. 2d 929 (N.D. Cal. 2008) .............................................. 3, 20

*Fox v. Ethicon Endo-Surgery,*
   35 Cal. 4th 797 (2005) ................................................................... 10, 17

*Gallardo v. DiCarlo,*
   203 F. Supp. 2d 1160 (C.D. Cal. 2002) ............................................... 17

*Gen. Elec. Co. v. Wilkins,*
   2011 WL 3163348 (E.D. Cal. July 26, 2011) ......................................... 9

*Harrison v. Great HealthWorks, Inc.,*
   No. 17-CV-705 JM (JLB), 2017 WL 2554448 (S.D. Cal. June 13,
   2017) ...................................................................................................... 17

*K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.,*
   171 Cal. App. 4th 939 (2009) ............................................................... 21

*Katz v. Avanir Pharm.,*
   No. 06-CV-0496 DMS (POR), 2006 WL 8455491 (S.D. Cal. June 29,
   2006) ........................................................................................................ 9

*Klang v. Pflueger,*
   2014 WL 12587028 (C.D. Cal. Oct. 2, 2014) ................................. 12, 13

*Knievel v. ESPN,*
   393 F.3d 1068 (9th Cir. 2005) ................................................................ 7

*Kohler v. Flava Enters.,*
   No. 10-CV-0730 IEG (NLS), 2010 WL 3238946 (S.D. Cal. Aug. 13,
   2010) ...................................................................................................... 15

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

iii.

OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS PLAINTIFF'S COMPLAINT
Case No. 19-CV-1859 CAB WVG

*Leatt Corp. v. Innovative Safety Tech., LLC*,
    No. 09-CV-1301 IEG (POR), 2010 WL 2803947 (S.D. Cal. July 15,
    2010) .......................................................................................................... 20, 21

*Lee Myles Assocs. Corp. v. Paul Rubke Enters., Inc.*,
    557 F. Supp. 2d 1134 (S.D. Cal. 2008) ........................................................ 15, 16

*MedioStream, Inc. v. Microsoft Corp.*,
    869 F. Supp. 2d 1095 (N.D. Cal. 2012)................................................................ 22

*Medrano v. Ortega, et al.*,
    No. 19-CV-423 AJB (MDD), 2019 WL 5650805 (S.D. Cal. Oct. 31,
    2019) .......................................................................................................... 15

*Moser v. Encore Capital Grp., Inc.*,
    No. 04-CV-2085 LAB (WMC), 2006 WL 8427269 (S.D. Cal. May 2,
    2006) .......................................................................................................... 15, 16

*Motha v. Time Warner Cable Inc.*,
    2017 WL 3617105 (N.D. Cal. Aug. 23, 2017) ....................................................... 13

*MV Circuit Design, Inc. v. Omnicell, Inc.*,
    2015 WL 1321743 (N.D. Ohio Mar. 24, 2015)....................................................... 10

*Neuman v. B2 Brands, Inc.*,
    2010 WL 11596467 (C.D. Cal. Feb. 17, 2010) ...................................................... 22

*Onyx Pharm., Inc. v. Bayer Corp.*,
    2011 WL 7905185 (N.D. Cal. May 10, 2011)..................................................*passim*

*OrbusNeich Med. Co., BVI v. Bost. Sci. Corp.*,
    694 F. Supp. 2d 106 (D. Mass. 2010)................................................................ 9, 14

*Orkin v. Taylor*,
    487 F.3d 734 (9th Cir. 2007) ................................................................................ 13

*Phoenix Techs. Ltd. v. DeviceVM*,
    2009 WL 4723400 (N.D. Cal. Dec. 8, 2009) ........................................................ 21

*Postx Corp. v. Secure Data in Motion, Inc.*,
    2004 WL 2663518 (N.D. Cal. Nov. 20, 2004)....................................................... 20

*Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*,
    768 F.3d 938 (9th Cir. 2014) ................................................................................... 7

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

iv.

OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS PLAINTIFF'S COMPLAINT
Case No. 19-CV-1859 CAB WVG

*Silicon Image, Inc. v. Analogix Semiconductor, Inc.,*
    2007 WL 1455903 (N.D. Cal. May 16, 2007)..........................................21

*Stoffwechselforschung GmbH v. ProSciento, Inc.,*
    No. 16-CV-1549 LAB (BLM), 2017 WL 1198992 (S.D. Cal. Mar. 31,
    2017) ...................................................................................................15, 17

*Synopsys, Inc. v. Magma Design Automation, Inc.,*
    No. C-04-3923, 2005 U.S. Dist. LEXIS 46595 (N.D. Cal. May 18,
    2005) .......................................................................................................9, 10

*T & S Enters., LLC v. Sumitomo Corp. of Am.,*
    No. 11-CV-01318 BEN (MDD), 2011 WL 5085569 (S.D. Cal. Oct.
    26, 2011) .....................................................................................................16

*Turtle v. Castle Records Inc.,*
    2005 WL 1159419 (N.D. Cal. May 17, 2005)..........................................8

*Unique Functional Prods., Inc. v. JCA Corp.,*
    No. 9-CV-265 JM (MDD), 2012 WL 1416201 (S.D. Cal. Apr. 23,
    2012) ...........................................................................................................17

*W. Air Charter, Inc. v. Sojitz Corp.,*
    2019 WL 4509304 (C.D. Cal. May 2, 2019)............................................20

*Wang v. Palo Alto Networks, Inc.,*
    2014 WL 1410346 (N.D. Cal. Apr. 11, 2014)....................................12, 13

*Washington v. Baenziger,*
    673 F. Supp. 1478 (N.D. Cal. 1987).......................................................16

*WesternGeco v. Ion Geophysical Corp.,*
    2009 WL 3497123 (S.D. Tex. Oct. 28, 2009) .........................................12

**Statutes**

18 U.S.C. § 1836.................................................................................................8

35 U.S.C. § 122................................................................................................11

Cal. Civ. Code § 3426.1....................................................................................20

Cal. Civ. Code § 3426.6......................................................................................8

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

v.

OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS PLAINTIFF'S COMPLAINT
Case No. 19-CV-1859 CAB WVG

Cal. Civ. Proc. Code § 339 ........................................................................... 8

Cal. Civ. Proc. Code § 343 ......................................................................... 19

Cal. Code Civ. Proc. § 337 ......................................................................... 19

California Labor Code § 2860 ..................................................................... 19

**Other Authorities**

37 C.F.R. § 1.11 ........................................................................................... 11

Fed. R. Civ. P. 8 ............................................................................................ 7

Fed. R. Civ. P. 12 ....................................................................................... 17

OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS PLAINTIFF'S COMPLAINT
Case No. 19-CV-1859 CAB WVG

**I.     INTRODUCTION**[1]

Plaintiff Javo Beverage Co., Inc. ("Javo") filed this action after discovering that Defendants Stephen Corey ("Corey") and California Extraction Ventures, Inc. ("CEV") had stolen Javo's proprietary extraction process, publicly disclosed it in patent filings, and falsely claimed it as their own.  Javo is a leader in the business of coffee, tea, and botanical extracts, ingredients, and flavor systems.  Javo has spent over two decades developing and improving a unique and proprietary extraction method, which results in high quality, concentrated, and stable extracts.  Corey co-founded Javo and was central to developing Javo's extraction process, which sets Javo apart from competitors based on flavor quality and extract concentration.  Under his employment agreement and confidentiality and inventions assignment agreement, Corey expressly agreed this extraction process belongs to Javo and committed to protecting it as a trade secret, even after his departure from the company.

Nearly four years after leaving Javo, Corey quietly began taking steps to patent Javo's proprietary extraction process and then assign it to CEV—a new company he co-founded with Javo's former President and CEO, Kurt Toneys.  The offending patent applications filed by Corey/CEV first began to publish on September 22, 2016.  ***All of this was unknown to Javo until shortly before it sent Defendants a cease and desist letter on May 30, 2019.***  Javo had no reason to know, let alone suspect, that Corey would act in material breach of the strict contractual obligations he still owes to Javo to maintain and protect the confidentiality of the company's trade secrets and other information, and to transfer and assign to Javo any inventions conceived of during his employment.  Corey's brazen conduct is even more shocking given the positions of trust and fiduciary roles that Corey and Toneys each held at Javo and its predecessors.

In an effort to avoid the merits, Defendants now move to dismiss Javo's Complaint based on their misapplication of the statute of limitations.  Defendants do

---

[1] References to "¶ __" refer to the Complaint (Doc. No. 1).  All emphasis is added, and citations and internal quotation marks are omitted unless otherwise stated.

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

1.

OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS PLAINTIFF'S COMPLAINT
Case No. 19-CV-1859 CAB WVG

not argue that Javo discovered their misconduct a long time ago and chose not to act, nor do they argue Javo had a reason to suspect its claims earlier and failed to investigate. Defendants do not allege either scenario because they know Javo did not sit on any of its claims.  Instead, Defendants seek to bar Javo's claims based on the unsupported argument that Javo should automatically be held to immediate constructive notice of Corey's and CEV's tortious conduct the second the first of the offending patent applications became publicly available on September 22, 2016.[2]  That is not the law.

Defendants' statute of limitations argument fails for three separate but related reasons.  First, as a matter of law, the mere publication of a patent application standing alone does not create constructive notice to start the statute of limitations.  Second, Defendants' statute of limitations defense is not appropriately raised in a motion to dismiss because it is not apparent from the face of the Complaint.  Specifically, the Complaint does not allege facts showing Javo had reason to suspect Corey and discover his misconduct any sooner than it did.  Finally, even under Defendant's incorrect theory, Javo's claim for declaratory judgment of patent ownership is timely because the claim did not even accrue until, at earliest, January 2, 2018, when the first patent in the family issued.  In addition, the underlying wrong for the claim sounds in contract such that a four year (not three year) statute of limitations applies.

Separately, Defendants incorrectly argue that the California Uniform Trade Secrets Act ("CUTSA") preempts Javo's claim against CEV for tortiously interfering with Corey's contractual obligations to Javo.  There is no CUTSA preemption here because CEV's tortious interference exists independently of its misappropriation of Javo's trade secrets.  For example, CEV also interfered with Corey's contractual obligations to Javo by: (1) improperly soliciting Corey to disclose non-trade secret confidential information; and (2) intentionally interfering with Corey's obligation to

---

[2] Defendants make this claim after engaging in settlement discussions with Javo from June 2019 until shortly before Javo filed the Complaint.  It now appears that Defendants deliberately stretched these settlement discussions into late September 2019, in an effort to support their incorrect statute of limitations theory.

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

2.

OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS PLAINTIFF'S COMPLAINT
Case No. 19-CV-1859 CAB WVG

assign to Javo any patents for inventions Corey conceived of during his employment with the company.  In addition, discovery may uncover other grounds for this claim, such as CEV requiring Corey to enter into an assignment agreement with CEV that conflicts with contractual duties that CEV knows he still owes to Javo.

As a final point, Defendants impermissibly go beyond the allegations of the Complaint and assert that Javo's proprietary process was "common knowledge in the industry" and "part of the public domain for decades."  (MTD at 1:13–18 (citing expired U.S. Patent 3,830,940 (Sivetz)).)  Defendants have not moved to dismiss any claims on the merits, and the Court need not consider Defendants' posturing as to the novelty of Javo's process.  However, it will become apparent as this case proceeds to the merits that Corey/CEV have already made multiple representations before the USPTO in an effort to distinguish steps in Javo's process from the Sivetz patent they cite.  Moreover, while serving as officers and directors of Javo's predecessor entity, Corey and Toneys made repeated statements in SEC filings claiming the extraction method developed by Corey at Javo was proprietary.

Defendants' blatant disregard for Javo's intellectual property rights and the contractual obligations that Corey still owes to the company he co-founded is astounding.  Javo has already suffered irreparable harm and estimated damages of over $50 million, and the company stands to suffer more irreparable harm if Defendants are not stopped.  Defendants' motion to dismiss should be denied, and this case should proceed to the merits.

## II.  BACKGROUND

Over the last 25 years, Javo has built a global reputation as a leader in the manufacture of premium concentrated coffee, tea, and botanical extracts.  (¶¶ 1, 13.) During this time, Javo has spent significant time, effort, and expense developing its highly valuable and unique trade secret extraction process and other confidential information.  (¶¶ 1, 13–14, 75.)  Javo manages its entire proprietary extraction process from start to finish, and implements a number of safeguards to ensure its secrecy,

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

3.

OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS PLAINTIFF'S COMPLAINT
Case No. 19-CV-1859 CAB WVG

including confidentiality, employment, and non-use agreements, and physical and digital security measures such as secure storage sites and biometric scanning to confirm employee identities. (¶¶ 13, 16–17, 73.) Javo holds no patents because its trade secrets and confidential information are unknown to the public, and not readily ascertainable by reverse engineering or other analysis. (¶¶ 15, 76.) This approach prevents competitors from being able to copy Javo's proprietary extraction methods. (¶ 75.) Accordingly, Javo considers the confidentiality and employment agreements entered into by its employees to be a critical component of Javo's strategy to protect its trade secrets and other confidential information. (¶ 17.)

Javo has successfully safeguarded its proprietary information in this fashion for decades. (¶ 1.) Now, for the first time, Javo has discovered that one of its original co-founders, Stephen Corey, has deliberately and materially breached his confidentiality and employment agreements by falsely claiming Javo's trade secret and other confidential information as his own and seeking to patent Javo's process in a bid to compete with Javo through his new startup, CEV. (¶¶ 18, 49–67.) Corey is doing so even though he and CEV both know Corey executed an Employment Agreement ("EA") and an associated Employee Confidentiality and Invention Assignment Agreement ("CIAA") while at Javo. (¶¶ 3, 9, 77–78.) The agreements contain strict confidentiality clauses preventing Corey from using or disclosing Javo's trade secret and other confidential information outside his employment. (¶¶ 3, 18, 32–33, 37, 39, 41.) Under the CIAA, Corey also expressly transferred and assigned all right and title to any inventions conceived of during the term of his employment to Javo. (¶¶ 34–36.)

CEV was founded several years after Corey departed Javo. (¶ 49.) Kurt Toneys, who served as Javo's President, CEO, and a Director from 1999 to 2001, currently serves as CEV's CEO, and as a Director. (¶¶ 22, 26.) Corey currently serves as CEV's President.[3] (¶ 7.) While at Javo, Corey was involved in developing Javo's trade secret

---

[3] Toneys, like Corey, had similar non-disclosure obligations to Javo and its predecessors, and has knowledge of Corey's involvement at Javo and his duties under

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

4.

OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS PLAINTIFF'S COMPLAINT
Case No. 19-CV-1859 CAB WVG

and other confidential information.  (¶¶ 66–67.)  As part of a planned restructuring following Javo's bankruptcy, Corey left Javo in August 2011.  (¶ 47.)  During the time between Corey's departure from Javo in 2011 and CEV's founding in late 2014 or early 2015, Javo had no reason to suspect Corey intended to compete against Javo in the future, let alone that he would brazenly violate his agreements with the company and seek to patent Javo's trade secrets.  (*See ¶¶* 31–41, 43–45, 47.)

On March 17, 2015, Corey filed a provisional application, U.S. Pat. App. No. 62/134,497 (the "'497 Provisional Application") titled "Coffee Extraction Method and Apparatus," and listing Corey as the inventor.  (¶¶ 50–51.)  The '497 Provisional Application describes the invention as "a novel method for precisely extracting purified supreme coffee from coffee bean mixture using precise water structuring parameters, pressure gradients and temperature profiles," and contains terminology frequently used by Corey at Javo.  (¶¶ 51–57.)  Corey conceived of the invention in the '497 Provisional Application during his tenure with Javo.  (¶ 53.)  The application even refers to "Javo" processes in certain figures.  (¶ 51.)  Corey has obtained seven issued patents claiming priority to the '497 Provisional Application, including: U.S. Pat. No. 9,855,516 (issued Jan. 2, 2018); U.S. Pat. No. 10,112,124 (issued Oct. 30, 2018); U.S. Pat. No. 10,130,898 issued Nov. 20, 2018); U.S. Pat. No. 10,207,200 (issued Feb. 19, 2019); U.S. Pat. No. 10,293,275 (issued May 21, 2019); U.S. Pat. No. 10,335,712 (issued July 2, 2019), and U.S. Pat. No. 10,399,006 (issued September 3, 2019).  (¶ 65.)  Corey has also filed seven additional patent applications claiming priority to the '497 Provisional Application.  (*Id.*)  The issued patents and pending patent applications disclose material that substantially overlaps with Javo's trade secrets and proprietary confidential information, and all are assigned to CEV.  (¶¶ 65–66.)  The '497 Provisional Application and the seven issued patents were not publicly available on the United

---

the EA and CIAA, including his duties to preserve Javo's trade secrets and other confidential information, and to assign any patents conceived of during his employment to Javo.  (¶¶ 109–111.)

Cooley LLP
Attorneys At Law
San Diego

5.

Opposition to Defendants' Motion to
Dismiss Plaintiff's Complaint
Case No. 19-CV-1859 CAB WVG

States Patent and Trademark Office ("USPTO") website until September 22, 2016.[4] (RJN Exs. 1, 3, 5, 7, 9, 11.)

Shortly after learning of Defendants' misconduct, Javo reached out to Corey and CEV on May 30, 2019 and demanded Defendants cease and desist from any further use or disclosure of Javo's trade secrets and other confidential information, and immediately assign all rights in the patents and any applications claiming priority to the '497 Provisional Application to Javo pursuant to the CIAA. (¶ 68.) Javo also requested that Defendants identify all persons to whom they revealed Javo's trade secrets and other confidential information, and disclose their improper use of Javo's information to its investors. (¶¶ 68, 77.) Although Defendants now claim Javo's claims are time barred, Defendants are aware Javo only recently learned of their malfeasance, and Defendants never raised any purported statute of limitations issues during discussions. (*See* ¶¶ 68–69.) This litigation was filed once it became clear that Defendants did not intend to resolve this dispute in good faith. (¶ 69.)

Defendants' actions have caused substantial damage to Javo, including diminishing Javo's perceived value at a critical time when Javo was considering a potential sale of the company and engaging in negotiations with potential buyers. (¶ 70.) Javo's damages from termination of the recent sales process alone are estimated to exceed $50 million. (*Id.*) Besides being the centerpiece of Javo's operations and business, Javo's trade secret and other confidential information is also highly valuable competitive information. (¶¶ 72–73, 75.) Defendants' misappropriation of Javo's trade secrets and other confidential information gives them an unfair competitive advantage against Javo and others in the coffee, tea, and botanical extraction space, potentially resulting in millions of dollars of lost sales by Javo. (¶ 74.)

---

[4] Contrary to Defendants' assertion, U.S. Patent '3,830,940, which is neither attached to nor referenced in the Complaint, does not reveal Javo's trade secret extraction process or other confidential information. (*See* MTD at 1:13–17.)

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

6.

OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS PLAINTIFF'S COMPLAINT
Case No. 19-CV-1859 CAB WVG

## III.   LEGAL STANDARD

The Federal Rules of Civil Procedure require that a complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint need not provide "detailed factual allegations," but must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. In other words, the complaint must "raise a reasonable expectation that discovery will reveal evidence" of the acts alleged therein. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

When considering a motion to dismiss, the Court "must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party." *Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014). The Court may also consider documents outside of the complaint when "the plaintiff's claim depends on the contents of a document . . . and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

## IV.   ARGUMENT

### A.   Javo's Claims Are Timely.

There is absolutely no merit to Defendants' assertion that Javo's claims should be time-barred. Defendants do not argue that Javo discovered the misappropriation any earlier than May 2019, or that Javo had a reason to suspect Corey was filing patent applications and had formed a new company, CEV, to compete with Javo. Consistent with the lack of any such facts (or inferences) alleged in the Complaint, Defendants know neither situation occurred. (*See* ¶ 68.) Instead, Defendants argue Javo's claims are time-barred because Javo should automatically be held to immediate constructive

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

7.

OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS PLAINTIFF'S COMPLAINT
Case No. 19-CV-1859 CAB WVG

1   notice of Defendants' tortious conduct the instant the first of the offending patent

2   applications became publicly available on September 22, 2016.  That is not the law.[5]

3        Defendants' statute of limitations argument fails for at least three reasons.  First,

4   as a matter of law, the mere publication of a patent application by the USPTO alone

5   does not start the statute of limitations for Javo's claims.  Second, Defendants' statute

6   of limitations defense is not apparent from the face of the Complaint, and is thus not

7   appropriately raised in a motion to dismiss.   Third, Javo's claim for declaratory

8   judgment of patent ownership is timely because Javo seeks ownership of the patents

9   themselves—the earliest of which did not issue until January 2, 2018.  In addition, the

10  "underlying wrong" for Javo's declaratory judgment claim is Corey's breach of his

11  agreements requiring him to assign any inventions to Javo such that the four-year statute

12  of limitations for breach of contract applies.  The motion to dismiss should be denied.

### 1.   Publication of a Patent Application Does Not Automatically Trigger the Statute of Limitations.

15       Both DTSA and CUTSA have a three-year discovery rule statute of limitations

16  based on when misappropriation "*is discovered or by the exercise of reasonable*

17  *diligence should have been discovered*."  *See* 18 U.S.C. § 1836(d); Cal. Civ. Code

18  § 3426.6.  Given the concealed nature of the harm, Javo's claims for patent ownership

19  and interference with contractual obligations are subject to a similar "discovery rule."

20  *See Turtle v. Castle Records Inc.*, 2005 WL 1159419, at *2 (N.D. Cal. May 17, 2005)

21  ("[U]nder the 'discovery rule,' if breaches of contract are committed in secret, the claim

22  accrues when the harm flowing from those breaches is reasonably discoverable."); Cal.

23  Civ. Proc. Code § 339 ("An action upon a contract . . . shall not be deemed to have

24  accrued until the discovery of the loss or damage suffered by the aggrieved party

25  thereunder.")

26  ---

[5] Nor could it be, as such a requirement would effectively require all businesses—
27  including those with no patent holdings like Javo—to devote significant time and
resources to monitoring USPTO records and scouring any publicly available patents
28  and patent applications for any possible references to protected trade secrets or other
confidential information.

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

8.

OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS PLAINTIFF'S COMPLAINT
Case No. 19-CV-1859 CAB WVG

It is well established that "the mere existence of public records does not, as a matter of law, put a plaintiff on inquiry or constructive notice in every instance." *Katz v. Avanir Pharm.*, No. 06-CV-0496 DMS (POR), 2006 WL 8455491, at *4 (S.D. Cal. June 29, 2006) (finding "issuance of the [patent], standing alone, does not put [a party] on inquiry or constructive notice"). Instead, the limitations period is only triggered if a party was privy to facts sufficient to put a reasonable person on "inquiry notice" of the injury, which could have been confirmed by additional investigation. *See, e.g.*, *Synopsys, Inc. v. Magma Design Automation, Inc.*, 2005 U.S. Dist. LEXIS 46595, at *18-19 (N.D. Cal. May 18, 2005); *Onyx Pharm., Inc. v. Bayer Corp.*, 2011 WL 7905185, at *9 (N.D. Cal. May 10, 2011). Judge Battaglia's detailed analysis of the statute of limitations in *Gabriel Technologies Corp., v. Qualcomm Inc.*, 857, F. Supp. 2d 997 (S.D. Cal. 2012), directly illustrates the point. There, the patent applications and issued patents allegedly containing plaintiff's trade secrets were publicly available beginning in January 2003, when plaintiff's co-founder and chief technology officer suspected a "direct rip-off" but did nothing because "I'm a bad businessman. . . . I didn't think it was important." *Id.* at 1004, 1006 & n.13. For purposes of triggering the statute of limitations, the issue was if the patent materials were publicly available when the plaintiff first suspected the alleged misappropriation in January 2003—not when the patent materials published. *Id.* at 1006–07.

Multiple courts have expressly rejected Defendants' automatic constructive notice argument.[6] For example, in *Synopsys*, the court held that constructive notice of

---

[6] *See, e.g.*, *Gen. Elec. Co. v. Wilkins*, 2011 WL 3163348, at *5 (E.D. Cal. July 26, 2011) (it is "not reasonable" to impose an "onerous burden" that would require a claimant "to scour the Patent Office's records for all patents issued to [his prior employer] each year and then review the substance of each patent" in search of potential claims); *Avery v. Barsky*, 2013 WL 1663612, at *4 (D. Nev. Apr. 17, 2013) (declining to impose automatic constructive notice); *OrbusNeich Med. Co., BVI v. Bost. Sci. Corp.*, 694 F. Supp. 2d 106, 117 (D. Mass. 2010) (it would be "unreasonably burdensome to impose a duty to conduct this kind of searching inquiry, in the absence of evidence that some precipitating event should have provoked [plaintiff] to do so"); *Ferris Mfg. Corp. v. Carr*, 2015 WL 279355, at *4 (N.D. Ill. Jan. 21, 2015) (it "would be unreasonable" and "would impose costs far in excess of any conceivable benefits[] to impose a duty to monitor all patent applications"); *MV Circuit Design, Inc. v. Omnicell, Inc.*, 2015 WL

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

9.

OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS PLAINTIFF'S COMPLAINT
Case No. 19-CV-1859 CAB WVG

a patent application did not render a misappropriation claim untimely because the plaintiff "was not chargeable with notice of the publication of [defendant's] application *unless and until [plaintiff] had reason to suspect that its confidential information had been misappropriated*." *Synopsys*, 2005 U.S. Dist. LEXIS 46595, at *18–19. This is consistent with California's discovery rule, which provides "that the statute of limitations does not begin to run until the plaintiff 'has reason to suspect an injury and some wrongful cause.'" *Id.* at *19 (quoting *Fox v. Ethicon Endo-Surgery*, 35 Cal. 4th 797, 802 (2005)).[7] In *Onyx*, the court similarly declined to impose constructive notice to bar a collaboration claim on the basis of a patent application where there was no undisputed evidence that plaintiff had a reason to suspect defendant of wrongdoing. *Onyx*, 2011 WL 7905185, at *9 ("Given the large number of patent applications likely filed by Bayer ever year *and the lack of undisputed evidence that Onyx had reason to believe in 2005 that Bayer might be acting in contravention of its collaboration obligations*, the court is not prepared at this juncture to impose such duty of investigation on Onyx.").

Defendants cannot show the statute of limitations has run as a matter of law on a motion to dismiss because Javo has "allege[d] nothing which would suggest that [Javo] had any reason to suspect a potential misappropriation of its confidential information, such that it was under a duty to investigate" by monitoring the USPTO records for potential patent filings. *See Onyx*, 2011 WL 7905185, at *9. To the contrary, Corey was under an obligation not to use or disclose Javo's trade secret or other confidential information at the time he left Javo, and neither he nor Javo held any patents. (¶¶ 15–18, 31–32, 37–39, 41.) Moreover, Javo had no reason to suspect Corey would compete

---

1321743, at *10 (N.D. Ohio Mar. 24, 2015) (the "mere publication of a patent or patent application is insufficient to put a claimant on notice of his claims relating to the patent" because it is "not reasonable to impose on a claimant the onerous burden of scour[ing]" patent filings).

[7] *Fox* is clear that plaintiffs are only "required to conduct a reasonable investigation *after becoming aware of an injury*, and are charged with knowledge of the information that would have been revealed by such an investigation." 35 Cal.4th at 808.

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO
10.
OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS PLAINTIFF'S COMPLAINT
Case No. 19-CV-1859 CAB WVG

against Javo in the future, and indeed CEV was not established until years after Corey's separation from Javo.   (¶ 49.)   When Javo did become aware of Defendants' malfeasance, it promptly reached out to Defendants in May 2019 to attempt to resolve the dispute.   (¶ 68.)   This is not a case where a "plaintiff was suspicious that its former employee and his new employer had misappropriated its trade secrets" but chose to sit back and do nothing, rather than investigate its claims.   *Cf. Gabriel*, 857 F. Supp. 2d at 1006 (citing *Alamar Biosciences, Inc. v. Difco Labs., Inc.*, 40 U.S.P.Q.2d 1437, 1440 (E.D. Cal. 1996)).[8]

Defendants' automatic constructive notice argument is further undermined by their reliance on the publication of the first patent ***application*** in the patent family as the purported trigger for the statute of limitations rather than the issuance of the patent itself.   (MTD at 13:5–14:17.)   Prior to the publication of the applications on September 22, 2016, there would have been no indication whatsoever in the USPTO records that Corey had filed the '497 Provisional Application or any subsequent patent applications. *See* 35 U.S.C. § 122(b)(1) (patent applications are generally published 18 months from the earliest filing date); 37 C.F.R. § 1.11(a) (only published patents and applications are available to the public).   Defendants acknowledge as much in their motion.   (*See* MTD at 12:21–27.)   As emphasized in *Onyx*, courts have properly distinguished between constructive notice based on patent applications as opposed to final issued patents, which is consistent with the fact that even less time exists for an aggrieved party to potentially discover a wrongful application.   *Onyx*, 2011 WL 7905185, at *9 (citing cases and rejecting statute of limitations argument on summary judgment).   Put differently, constructive notice cannot be immediate when there is nothing in the public

---

[8] In *Gabriel*, the plaintiff "was well aware . . . that [defendant] was filing multiple patent applications covering a GPS technology" and "[s]ome of the applications and issued patents that allegedly contained [plaintiff's] trade secrets were publicly available in January 2003" when plaintiff's CTO "had a suspicion of wrongdoing" *Gabriel Tech.*, 857 F. Supp. 2d at 1006.   In *Alamar Biosciences*, after finding there was "no question" the plaintiff was suspicious, the court held that plaintiff "failed to take the steps a reasonably diligent plaintiff would take in investigating its claims." *Alamar Biosciences*, 40 U.S.P.Q.2d at 1440.

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

11.

OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS PLAINTIFF'S COMPLAINT
Case No. 19-CV-1859 CAB WVG

sphere that would even trigger a suspicion and put a party on inquiry notice to investigate.[9]

In their attempt to conjure a bright-line rule imputing automatic and instant constructive notice as a matter of law based merely on publication of a patent application, Defendants rely heavily on *Wang v. Palo Alto Networks, Inc.*, 2014 WL 1410346 (N.D. Cal. Apr. 11, 2014) and *Klang v. Pflueger*, 2014 WL 12587028, at *4–5 (C.D. Cal. Oct. 2, 2014).[10]  (MTD at 2:6–8, 8:7–9, 13:7–10, 13:12–14, 14:10, 15:8–9, 16:2–5.)  Both cases are easily distinguished.  The *Wang* court imputed constructive notice based on publication ***at the summary judgment stage***—not as a matter of law on motion to dismiss—because there was ***evidence*** showing plaintiff was previously put on "inquiry notice" of its claims.  2014 WL 1410346, at *1 ("This order will retrace the history so that the reader can catalog the moments when plaintiff might have been on notice that his trade secrets had been stolen for purposes of commencing the limitation period.").  For example, plaintiff knew that its former employee went to work for a competitor and "breached the non-disclosure agreement when he violated his agreement to return the documents containing Wang's trade secrets."  *Id.* at *4, *7.  Consistent with this evidence suggesting a reason to suspect misappropriation, *Wang* held "that an inventor actively practicing in the field ***and prosecuting his own patent application*** must be deemed to be on constructive notice of published patent applications in the same field."  *Id.* at *6.  Here, by contrast, the allegations show that Javo was not filing

---

[9] To be clear, this is not an invocation of the continuing violation doctrine (MTD 17:13–19:13), it is an inquiry notice issue.

[10] Defendants also rely on *WesternGeco v. Ion Geophysical Corp.*, 2009 WL 3497123 (S.D. Tex. Oct. 28, 2009), an unpublished, out-of-circuit case summarily holding publication of a patent application constituted constructive notice.  Under the facts of that case, the court found it was "not unreasonable to expect that Ion would examine the public records published under the PCT to determine what its colleagues around the world are inventing and accomplishing."  *Id.* at *5.  Numerous courts have expressly declined to follow *WesternGeco* for the reasons identified above.  *See, e.g., Onyx Pharm.*, 2011 WL 7905185, at *9; *Ferris Mfg. Corp.*, 2015 WL 279355, at *4 (collecting cases and noting other courts "have expressly declined to follow *WesternGeco's* reasoning in a 12(b)(6) setting, and even on summary judgment").  In any event, unlike *WesternGeco*, Javo has never patented its technology and had no reason to suspect the misconduct.  *Cf.* 2009 WL 3497123, at *1.

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

12.

OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS PLAINTIFF'S COMPLAINT
Case No. 19-CV-1859 CAB WVG

for patent protection.  (*See, e.g.*, ¶¶ 1, 15–18.)  Additionally, Javo had no reason to suspect Corey, and did not know that CEV even existed.  Consistent with this reality, there are no allegations in the Complaint that Javo had reason to think Corey was previously in violation of his confidentiality agreements, or that Javo had any other reason to suspect Defendants were misappropriating Javo's trade secrets and other confidential information before 2019.  (*See generally* Doc. No. 1.)

Defendants' reliance on the *Klang* case is also misplaced.  (MTD at 2:6–7, 13:12–13.)  *Klang* is distinguishable on both inquiry notice and because it involved an issued patent and not a patent application.  Specifically, the *Klang* court held that because the plaintiff had "actual knowledge" that he had disclosed his invention to two dinner guests without any confidentiality protections in place, he must be charged with constructive notice of the issued patent.  2014 WL 12587028, at *1, *5 (C.D. Cal. Oct. 2, 2014) (citing *General Bedding Corp. v. Echevarria*, 947 F.2d 1395 (9th Cir. 1991)).  The court also reasoned this result was appropriate given plaintiff had already patented another invention in the same field.  *Id.* at *4–5.  In contrast, Javo has protected its proprietary process by having Corey enter multiple written agreements stating that he would keep that information confidential and refrain from disclosing it outside the company.[11] (¶ 31–33, 37, 39.)  Neither Corey nor Javo held any patents at the time of Corey's departure, and there was no reason to think Corey, as one of Javo's co-founders, would not honor his agreements with the company.[12]  (¶ 31–41, 43–45, 47.)  Moreover, the *Klang* court erred in its interpretation of *Echevarria*, as the Ninth Circuit there explicitly ***rejected a bright line*** immediate constructive notice rule that fails to consider whether

[11] Defendants' reliance on *Orkin v. Taylor*, 487 F.3d 734 (9th Cir. 2007) is similarly unavailing.  (MTD at 11–12.)  *Orkin* involved claims for theft and conversion by descendants of a Jewish art collector claiming ownership over the painting *Vue de l'Asile et de la Chapelle de Saint–Rémy* by Vincent van Gogh, which was purportedly stolen by Nazis during World War II and purchased by actress Elizabeth Taylor decades later at a highly-publicized international auction.  *Id.* at 735–36, 741.

[12] By contrast, the plaintiff in another case Defendants rely on, *Motha v. Time Warner Cable Inc.*, 2017 WL 3617105, at *2 (N.D. Cal. Aug. 23, 2017), owned a portfolio of IP, including several patents, and had actual notice that the patent at issue had been sold to a third party.  (*See* MTD at 13:18–20.)

a reasonable person would have "had enough information to warrant an investigation," i.e., inquiry notice.[13]  *Echevarria*, 947 F.2d at 1398–99 (holding summary judgment was inappropriate because "[t]he district court incorrectly ruled that as a matter of law [plaintiff] had constructive notice when the patent was issued").

Simply put, Defendants' incorrect assertion that Javo's claims are time-barred based on the date the first offending patent applications published "ignores the essential prerequisite to such an imposition [of constructive notice]: the plaintiff must have been under a ***duty*** to inquire into the contents of the relevant public records." *OrbusNeich*, 694 F. Supp. 2d at 117 (emphasis in original).  "Such a duty arises only when sufficient facts were available to provoke a reasonable person to investigate their contents." *Id.* There is nothing in the Complaint to suggest that Javo was put on actual or inquiry notice of Defendants' malfeasance before May 2019, when Javo first contacted Defendants regarding the offending patents and patent applications.  (¶ 68.)  Thus, Javo's claims are timely.

### 2.    Defendants' Motion to Dismiss on Statute of Limitations Grounds Is Improper Because It Has No Basis in the Complaint.

In addition to being wrong, Defendants' theory that the statute of limitations is triggered by automatic and instantaneous constructive notice of published patent applications is also inappropriate for resolution on a motion to dismiss.  Defendants incorrectly argue their statute of limitations defense is appropriately raised on a motion to dismiss because it "is obvious on the face of [the] complaint" that Javo's claims are untimely.  (*See* MTD at 7:11–18, 8:17–20.)  But nothing in the Complaint indicates Javo knew or had reason to know of Corey's patent applications the second they published.

It is well established that "[t]he untimeliness of the complaint must appear beyond doubt on the face of the complaint, before a claim will be dismissed as time-

---

[13] The Ninth Circuit even emphasized that the fact defendant had publicly advertised the patented invention did not change the analysis because there was "no evidence [plaintiff] ever saw the ads." *Echevarria*, 947 F.2d at 1399.

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

14.

OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS PLAINTIFF'S COMPLAINT
Case No. 19-CV-1859 CAB WVG

barred." *Lee Myles Assocs. Corp. v. Paul Rubke Enters., Inc.*, 557 F. Supp. 2d 1134, 1137 (S.D. Cal. 2008); *U.S. ex rel. Air Control Techs., Inc. v. Pre Con Indus., Inc.*, 720 F.3d 1174, 1178 (9th Cir. 2013) ("A claim may be dismissed as untimely pursuant to a 12(b)(6) motion only when the running of the statute of limitations is apparent on the face of the complaint."). Accordingly, "[t]he motion must be denied if the factual and legal issues are not sufficiently clear to permit a determination with certainty whether the action was timely." *Lee Myles Assocs. Corp.*, 557 F. Supp. 2d at 1137.

Defendants identify no allegations on the face of the Complaint establishing Javo's claims are untimely, let alone allegations that are "beyond doubt." Judges in this district routinely deny motions to dismiss under analogous circumstances. *See, e.g.*, *Medrano v. Ortega, et al.*, No. 19-CV-423 AJB (MDD), 2019 WL 5650805, at *3 (S.D. Cal. Oct. 31, 2019) ("Because it is not apparent that Plaintiff's claims are barred by the statute of limitations, dismissal of the complaint is inappropriate on this ground."); *City of San Diego v. Monsanto Co.*, No. 15-CV-578 WQH (AGS), 2017 WL 5632052, at *9 (S.D. Cal. Nov. 22, 2017) (same); *Profil Institut fur Stoffwechselforschung GmbH v. ProSciento, Inc.*, No. 16-CV-1549 LAB (BLM), 2017 WL 1198992, at *4 (S.D. Cal. Mar. 31, 2017) (same); *Kohler v. Flava Enters.*, No. 10-CV-0730 IEG (NLS), 2010 WL 3238946, at *3 (S.D. Cal. Aug. 13, 2010) (same); *Lee Myles Assocs. Corp.*, 557 F. Supp. 2d at 1137 (S.D. Cal. 2008) (same); *Moser v. Encore Capital Grp., Inc.*, No. 04-CV-2085 LAB (WMC), 2006 WL 8427269, at *8 (S.D. Cal. May 2, 2006) (same).

For instance, in *Profil* defendant argued plaintiff's trade secret misappropriation claims were untimely, but the court denied the motion to dismiss because "the running of the limitations period cannot be said to appear on the face of the complaint."[14]  2017

---

[14] Similarly, in *Lee Myles Associates Corp.*, defendants argued plaintiff's trade secret misappropriation claims were untimely because plaintiff alleged actions taken by defendants outside the statute of limitations period. 557 F. Supp. 2d at 1137 (S.D. Cal. 2008).  However, construing "the Complaint in its entirety, in the light most favorable to the nonmoving party, and without drawing any unwarranted inferences," the court denied the motion to dismiss because "[b]ased on the allegations, the time of Plaintiff's discovery is unclear." *Id.*

WL 1198992, at *4.  Relevant to the court's analysis was a letter plaintiff had sent to defendant within the limitations period "demand[ing] the return of all proprietary information," which appeared to indicate plaintiff "had come to realize [its trade secrets] were being misappropriated."  *Id.*  That realization is what started the statute of limitations.  *Id.*  Javo made a similar demand on May 30, 2019, shortly after realizing Defendants had misappropriated Javo's trade secrets and Corey violated his employment agreements.  (¶ 68.)  Javo's claims are brought well within the applicable statute of limitations, and Defendants fail to show otherwise.[15]

As detailed above, Corey's filing of the patent application and its subsequent publication is insufficient to establish "constructive notice" of Javo's claims for statute of limitations purposes because it does not establish that Javo knew or should have known of Defendants' malfeasance any earlier than May 2019.  (*See supra* Section IV(A)(1).)  In any event, in the Ninth Circuit constructive notice is a fact that is normally left to the trier of fact.  *See, e.g., Onyx Pharm.*, 2011 WL 7905185, at *9 (constructive notice "is generally treated as a question of fact inappropriate for summary judgment"); *Avery*, 2013 WL 1663612, at *4 (dismissal on statute of limitations grounds "not appropriate at the motion to dismiss stage"); *T & S Enters., LLC v. Sumitomo Corp. of Am.*, No. 11-CV-01318 BEN (MDD), 2011 WL 5085569, at *2 (S.D. Cal. Oct. 26, 2011) ("When opposing inferences may be made as to whether there was sufficient information to put the plaintiff on constructive notice, it is a question that is to be determined by a trier of fact."); *Washington v. Baenziger*, 673 F. Supp. 1478, 1485 (N.D. Cal. 1987) ("[P]recedent dictates that the question of actual or constructive notice of a cause of action is for the trier of fact.").  Accordingly, "dismissal on limitations grounds under Rule 12(b)(6), based on the publication of a

---

[15] As another example, in *Avery v. Barsky*, the court found "it is not appropriate at the motion to dismiss stage to dismiss these claims on statute of limitation grounds" because plaintiffs' allegation that they discovered the co-inventorship claim nearly ten years after the patent application was filed was not clearly unreasonable on the face of the complaint.  2013 WL 1663612, at *4 ("It is not clear from the Complaint that this allegation is unreasonable.").

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS PLAINTIFF'S COMPLAINT
Case No. 19-CV-1859 CAB WVG

patent application to trigger the limitations period as a matter of law, would be inappropriate." *Ferris Mfg. Corp.*, 2015 WL 279355, at \*4 (collecting cases across districts).

While Defendants argue that Javo must plead facts "[i]n order to avail itself of the tolling benefits of the discovery rule" (*see* MTD at 11:22–12:1, 12:14–15), this too is incorrect.  As Defendants concede, statute of limitations is an affirmative defense (*see* MTD at 7:11–18) and Javo "is not required to plead facts in anticipation" of it.  *Profil*, 2017 WL 1198992, at \*4; *see also Unique Functional Prods., Inc. v. JCA Corp.*, No. 9-CV-265 JM (MDD), 2012 WL 1416201, at \*2 (S.D. Cal. Apr. 23, 2012) ("[F]ederal courts have repeatedly held that a plaintiff is not required to plead facts in his complaint in order to avoid potential affirmative defenses.").  To the extent Defendants rely on *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 808 (2005), as requiring Javo to "plead facts demonstrating the inability to have made earlier discovery despite reasonable diligence" (MTD at 11:22–27), as Judge Miller recently held under similar circumstances, "that is simply another misleading citation."  *Harrison v. Great HealthWorks, Inc.*, No. 17-CV-705 JM (JLB), 2017 WL 2554448, at \*3 (S.D. Cal. June 13, 2017) (denying motion to dismiss based on statute of limitations).  As "[t]he full quote from *Fox* reads, '*a plaintiff whose complaint shows on its face that his claim would be barred without the benefit of the discovery rule* must specifically plead . . . .'"  *Id.* (emphasis in original).  Thus, to trigger the pleading rule that Defendants seek to invoke from *Fox*, the Complaint would need to show Plaintiff's claims are time barred on their face (*i.e.*, that Javo alleged it suspected its claims sooner).[16]  *Id.*  Consistent with what happened in reality, the Complaint does not contain any

---

[16] This is the same rule acknowledged by the court in *California Sansome Co. v. U.S. Gypsum*, 55 F.3d 1402 (9th Cir. 1995).  (*See* MTD at 11:24–27.)  Indeed, *Sansome* holds that "there is no requirement that a plaintiff specifically allege when the cause of action accrued—that is the defendant's responsibility if it wishes to raise a limitations defense. *Id.* at 1407.  Defendants' citation to dicta from *Gallardo v. DiCarlo*, 203 F. Supp. 2d 1160 (C.D. Cal. 2002) is also inapposite.  (MTD at 11: 27–12:2.)  There, plaintiff claimed **assault and battery** while incarcerated.  *Gallardo*, 203 F. Supp. 2d 1160, 1169–70.  Thus, the plaintiff had instant, actual notice of the misconduct at issue.

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

17.

OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS PLAINTIFF'S COMPLAINT
Case No. 19-CV-1859 CAB WVG

allegations that would permit such an inference to be drawn.  Defendants' motion to dismiss based on the statute of limitations should be denied.

### 3.   Javo's Request for Declaratory Judgment of Patent Ownership Is Timely Even Under Defendants' Incorrect Theory.

As a preliminary matter, Javo seeks a declaration of Javo's ownership interest in the '516, '124, '898, '200, '275, '172, and '006 patents, and any patents that issue from the pending patent applications.  (*See, e.g.*, ¶¶ 104–05.)  Accordingly, Javo's claims regarding the '516, '124, '898, '200, '275, '172, and '006 patents could not have accrued until, at earliest, the date when the first patents in the family actually issued—not when the first of the applications published.  *See Onyx*, 2011 WL 7905185, at *9 ("In ordinary tort and contract actions, the statute of limitations begins to run upon the occurrence of the last element necessary to the cause of action.").  The earliest any of the patents issued was January 2, 2018 (*see* ¶ 65), so Javo's declaratory judgment claim is timely even under the three-year statute of limitations that Defendants seek to impose.

Even assuming *arguendo* that Defendants' incorrect theory of automatic constructive notice could somehow start the statute of limitations for ownership of patents that had not yet issued, Javo's declaratory judgment claim would still be timely.  While Javo agrees the statute of limitations for a declaratory judgment claim is equivalent to the statute of limitations for the underlying "wrong" (MTD at 9:27–10:8 (collecting cases)), the underlying "wrong" alleged in connection with this claim is Corey's breach of his duty to transfer and assign his inventions to Javo under the CIAA.[17]  (*See, e.g.*, ¶ 99 ("As a result, Javo is the owner of the '516, '124, '898, '200, '275, '172, and '006 Patents **by virtue of the CIAA** . . . ."); ¶ 101 ("**As a result of Corey's**

---

[17] Defendants' reliance on *Ashton-Tate Corp. v. Ross* (MTD at 10:6–8) is inapposite, as that case did not involve an employment agreement, and instead both parties sought declaratory relief with respect to ownership of a copyright. 728 F. Supp. 597, 600 (N.D. Cal. 1989) ("No formal or written contract, other than a non-disclosure agreement, existed between the two programmers."). Moreover, the Court in *DC Comics v. Pac. Pictures Corp.* (MTD at 10:28–11:5) determined, **on summary judgment**, that plaintiff previously received "actual notice" of its claim.  938 F. Supp. 2d 941, 952 (C.D. Cal. 2013). Nothing like that exists here.

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

18.

OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS PLAINTIFF'S COMPLAINT
Case No. 19-CV-1859 CAB WVG

Case 3:19-cv-01859-CAB-WVG  Document 10  Filed 11/08/19  PageID.702  Page 26 of 30

***assignment under the CIAA*** and work with other Javo employees during his employment, Javo is either the full owner or the joint owner of the '516, '124, '898, '200, '275, '172, and '006 Patents.").)  Corey's contractual and common law[18] duties to assign any patents for inventions made, conceived, reduced to practice, or learned during his employment by Javo exists regardless of whether or not the invention is a trade secret.  (¶ 99.)  Thus, the declaratory judgment claim sounds in contract—not trade secret misappropriation—and the applicable statute of limitations is four years.[19]  Cal. Code Civ. Proc. § 337; *see Bd. of Trs. of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*, 583 F.3d 832, 846 (Fed. Cir. 2009) (applying four year statute of limitations to patent ownership claim under California law), *aff'd on other grounds*, 563 U.S. 776 (2011).[20]  As a result, the statute of limitations on Javo's patent ownership claims runs through at least September 2020.

**B.  Javo's Claim Against CEV for Tortious Interference Arises From Different Underlying Facts and Is Not Preempted.**

Defendants argue Javo's intentional interference with contractual relations claim is preempted under CUTSA because it relies on Javo's trade secret allegations (MTD at 19:16–20:15), but this is incorrect.  Javo's interference claim exists independently of its trade secret allegations and is not preempted under CUTSA because it extends to: (1) non-trade secret confidential information that CEV improperly solicited from Corey; and (2) CEV's intentional interference with Corey's obligation to assign to Javo any

---

[18] *See* Cal. Lab. Code § 2860 ("Everything which an employee acquires by virtue of his employment . . . belongs to the employer.")

[19] Alternatively, the residuary four-year limitation period for all causes of action that do not fall under specific statutes of limitations applies.  Cal. Civ. Proc. Code § 343.

[20] Although *Stanford* ultimately held that plaintiff's patent ownership claim was untimely because plaintiff had actual notice of the patent family at issue and was specifically warned that "continuations based on the same application 'family' remain pending," *Stanford*, 583 F.3d at 847–48, the same reasoning does not apply here because the first patent in the family being prosecuted by Corey/CEV was not issued until January 2, 2018.  (¶ 65.)

ATTORNEYS AT LAW
SAN DIEGO

19.

OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS PLAINTIFF'S COMPLAINT
Case No. 19-CV-1859 CAB WVG

patents for inventions Corey conceived of during his employment.  In any event, it is premature to dismiss this claim on preemption grounds.

Tortious interference claims are not preempted under CUTSA to the extent they are not based on trade secrets.  *Leatt Corp. v. Innovative Safety Tech., LLC*, No. 09-CV-1301 IEG (POR), 2010 WL 2803947, at *6–7 (S.D. Cal. July 15, 2010) (denying motion to dismiss in part on this basis); *Amron Int'l Diving Supply, Inc. v. Hydrolinx Diving Commc'n, Inc.*, No. 11-CV-1890 H (JMA), 2011 WL 5025178, at *9 (S.D. Cal. Oct. 21, 2011) (same).   Accordingly, "so long as the confidential information at the foundation of the claim is not a trade secret, as that term is defined in CUTSA," a claim may proceed.[21]  *First Advantage Background Servs. Corp. v. Private Eyes, Inc.*, 569 F. Supp. 2d 929, 942 (N.D. Cal. 2008); *see, e.g.*, *W. Air Charter, Inc. v. Sojitz Corp.*, 2019 WL 4509304, at *16 (C.D. Cal. May 2, 2019) (denying motion to dismiss claim where there "are wrongful acts which form an independent basis to find interference with contractual relations, even when ignoring other bases that would trigger CUTSA preemption"); *E-Smart Techs., Inc. v. Drizin*, 2009 WL 35228, at *6 (N.D. Cal. Jan. 6, 2009) (claims that "rely upon allegations of something other than misappropriation of trade secrets, . . . cannot be preempted by the [C]UTSA"); *Postx Corp. v. Secure Data in Motion, Inc.*, 2004 WL 2663518, at *3 (N.D. Cal. Nov. 20, 2004) (CUTSA preemption unwarranted where "the two claims are not based on precisely the same nucleus of facts"); *see also ClearOne Commc'ns, Inc. v. Chiang*, 2007 WL 4376125, at *4 (D. Utah Dec. 13, 2007) ("[C]UTSA preempts only conflicting remedies that are based on the misappropriation of a trade secret.").

---

[21] CUTSA defines a "trade secret" as information that "derives independent economic value . . . from not being generally known" and that is the subject of reasonable efforts to maintain its secrecy.  Cal. Civ. Code § 3426.1(d).

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

20.

OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS PLAINTIFF'S COMPLAINT
Case No. 19-CV-1859 CAB WVG

Although Javo has stated valid claims for trade secret misappropriation, the substance of which Defendants do not challenge in their motion to dismiss,[22] Javo would still state a valid claim for interference even if Javo's trade secret allegations were excised from the Complaint because it alleges CEV intentionally interfered with valid and enforceable contracts between Corey and Javo. (¶¶ 106–113.)  For example, CEV interfered with Corey's contractual obligation to preserve and protect Javo's non-trade secret confidential information under the EA and the CIAA. (¶¶ 109–110.)  Thus, Javo alleges throughout the Complaint that Corey's contractual duty extends to both trade secret *and* confidential information.  *See Leatt Corp.*, 2010 WL 2803947, at *6 (denying motion to dismiss in part where "throughout their [complaint], Plaintiffs base their injury not only on the theft of their trade secrets, but also on other 'confidential' and/or 'proprietary' information").  CEV also interfered with Corey's duty under the CIAA to assign to Javo any patents arising from inventions conceived of during Corey's employment at Javo. (¶¶ 33–36, 111.)  CUTSA preemption is inappropriate under these circumstances.  *See, e.g.*, *Silicon Image, Inc. v. Analogix Semiconductor, Inc.*, 2007 WL 1455903, at *9 (N.D. Cal. May 16, 2007) (denying motion to dismiss as preempted by CUTSA where interference claim was not "based on the 'identical nucleus' of facts" as the trade secret misappropriation claim).  In addition, discovery may uncover other grounds for the interference claim, such as CEV requiring Corey to enter into an assignment agreement with CEV that conflicts with his contractual duties owed to Javo.

In arguing for preemption, Defendants rely primarily on *K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*, 171 Cal. App. 4th 939 (2009) (*see* MTD at 19:20–24), which is inapposite.  Permitting Javo's tortious interference claim against CEV to proceed "does not undermine the analytic framework" of CUTSA and is

---

[22] To the extent Defendants disingenuously suggest Javo's proprietary extraction process is supposedly "common knowledge in the industry" (MTD at 1:13–17), this is belied both by Defendants' improper patenting of Javo's process, as well as Defendants' contradictory argument that Javo's interference claim is preempted under CUTSA (which applies only to trade secrets).

21.

consistent with "allowing claims to go forward where the gravamen of the claims does not rest on the misappropriation of trade secrets." *Phoenix Techs. Ltd. v. DeviceVM*, 2009 WL 4723400, at *5 (N.D. Cal. Dec. 8, 2009); *accord Leatt Corp.*, 2010 WL 2803947, at *6. As explained above, Javo's interference claim survives even without its trade secret allegations because Javo has alleged CEV interfered both with Corey's duty not to reveal non-trade secret confidential information, and with his duty to assign inventions to Javo. All of Defendants' cases are distinguishable on this basis. *Cf. CleanFuture, Inc. v. Motive Energy, Inc.*, 2019 WL 2896132, at *5 (C.D. Cal. Apr. 15, 2019) (plaintiff's trade secret allegations were necessary "in rendering Defendants' conduct unlawful rather than simply competitive"); *MedioStream, Inc. v. Microsoft Corp.*, 869 F. Supp. 2d 1095, 1116 (N.D. Cal. 2012) ("[A]ll of the property purportedly misappropriated by defendants is included within MedioStream's expansive definition of its trade secrets."); *Deerpoint Grp., Inc. v. Agrigenix, LLC*, 345 F. Supp. 3d 1207, 1237 (E.D. Cal. 2018) (only remaining basis for interference claim was trade secret misappropriation); *Neuman v. B2 Brands, Inc.*, 2010 WL 11596467, at *8 (C.D. Cal. Feb. 17, 2010) ("Plaintiffs' claim for intentional interference with contract is preempted because it is 'based upon' misappropriation of a trade secret.").

Even if there was potential overlap between Javo's trade secret and interference claims, resolution on a motion to dismiss is nonetheless premature and inappropriate because "the question of preemption cannot be addressed prior to determining whether the allegedly misappropriated information constitutes a trade secret."[23] *Amron Int'l Diving Supply, Inc.*, 2011 WL 5025178, at *10 (listing cases); *Ali v. Fasteners for Retail, Inc.*, 544 F. Supp. 2d 1064, 1072 (E.D. Cal. 2008) (dismissal based on CUTSA preemption inappropriate because "at this point, it is still unclear how much of the

---

[23] Defendants cited case, *Neuman v. B2 Brands, Inc.,* only decided preemption on **summary judgment**, "after the filing of three amended complaints and the close of discovery," and recognized that other courts "have deferred the preemption decision . . . in the context of motions to dismiss or amend during the early stages of litigation." 2010 WL 11596467, at *7.

1   allegedly misappropriated information was a trade secret"); *ClearOne Commc'ns, Inc.*,
2   2007 WL 4376125, at *4 (same).  Accordingly, dismissal is improper and the Court
3   should deny Defendants' request to dismiss this claim.

4   **C.    If Necessary, Javo Should Be Granted Leave to Amend.**

5   The Court should deny Defendants' motion to dismiss in its entirety.  But if the
6   motion is granted as to any of Javo's claims, the Court should grant Javo leave to amend
7   the Complaint.  "[L]eave to amend should be granted 'unless the court determines that
8   the allegation of other facts consistent with the challenged pleading could not possibly
9   cure the deficiency.'"  *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir.
10  1992) (citation omitted).  Defendants concede that dismissal with prejudice is only
11  appropriate where amendment would be futile.  (MTD at 8:10–12, 20:18–21:13.)  If
12  Defendants' motion is granted, Javo should be given leave to plead additional facts
13  refuting Defendants' disingenuous statute of limitations argument, and further
14  distinguishing Javo's interference claim from its trade secret claims.

15  **V.    CONCLUSION**

16  For the reasons set forth above, Javo's claims are timely.  In addition, the tortious
17  interference claim against CEV is not preempted.  Defendants' motion to dismiss should
18  be denied in its entirety.  Alternatively, Javo requests leave to amend the Complaint.

19
20  Dated:    November 8, 2019              COOLEY LLP

21                                          By: */s/ Steven M. Strauss*
22                                              Steven M. Strauss (99153)
23                                          Attorneys for Plaintiff Javo Beverage Co.,
                                            Inc.
24
25
26
27
28

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

23.

OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS PLAINTIFF'S COMPLAINT
Case No. 19-CV-1859 CAB WVG