UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAVO BEVERAGE CO., INC., <br><br> Plaintiff, <br><br> v. <br><br> CALIFORNIA EXTRACTION VENTURES, INC. AND STEPHEN COREY, <br><br> Defendants. | Case No.: 19-CV-1859-CAB-WVG <br><br> **ORDER DENYING MOTION TO DISMISS** <br><br> [Doc. Nos. 7, 25] |

This matter comes before the Court on Defendants California Extraction Ventures, Inc.'s ("CEV") and Stephen Corey's (collectively "Defendants") motion to dismiss. [Doc. No. 7.] The motion has been fully briefed and the Court finds it suitable for determination on the papers submitted. *See* S.D. Cal. CivLR 7.1(d)(1). Defendants' request for oral argument [Doc. No. 25] is therefore denied. For the reasons set forth below, Defendants' motion to dismiss is denied.

## I.   BACKGROUND[1]

Since 1993, Plaintiff Javo Beverage Co., Inc. ("Javo") has been engaged in the business of coffee, tea, and botanical extracts, ingredients, and flavor systems, which are

---

[1] The Court is not making any findings of fact, but rather summarizing the relevant allegations of Plaintiff's complaint. [Doc. No. 1]

1

sold across the country. [Doc. No. 1 at ¶ 13.[2]] Javo researched and developed a proprietary process for its manufacture of extracts of coffee, tea, and other botanicals which includes, among other things, introducing purified, deionized water within particular temperature and pressure ranges into a proprietary columnar extraction vessel containing an extractable material (e.g., roasted coffee) that has been ground into multiple particle sizes and specially packed into the vessel into which deionized water is introduced, eventually resulting in a pure, concentrated extract flowing from the top of the vessel. [Doc. No. 1 at ¶¶ 1, 14.] Javo alleges it has continually maintained this process as a proprietary trade secret within the industry. [*Id.*] Defendant Corey was an original co-founder of Javo and its predecessors, and a principal inventor of Javo's trade secret extraction process. [*Id.* at ¶ 2.] During his time as an employee, Corey assigned all rights and interests he may have had in the proprietary process to Javo through his Employment Agreement ("EA") and the associated Employee Confidentiality and Invention Assignment Agreement ("CIAA"), executed on December 5, 2001. [*Id.* at ¶ 3.]

On January 24, 2011, Javo commenced a Chapter 11 bankruptcy proceeding to, among other things, restructure its debt. [*Id.* at ¶ 42.] In or about August 2011, Javo terminated Corey without cause because of the elimination of his position due to the restructuring under the bankruptcy plan. [*Id.* at ¶ 47.]

Kurt Toneys, a former President/CEO of one of Javo's predecessors, is now involved with Defendant CEV as its current CEO, alongside Defendant Corey who is CEV's current President. [*Id.* at ¶ 7, 22.] Javo alleges that Corey and CEV misused Javo's trade secrets and other confidential information to benefit CEV, constituting a breach of Corey's EA and CIAA with Javo, when Corey improperly disclosed the information in publicly-available patent applications he filed with the United States Patent and Trademark Office and assigned to CEV. [*Id.* at ¶¶ 15, 18.] CEV offered and sold securities to fund, at least

---

[2] Document numbers and page references are to those assigned by CM/ECF for the docket entry.

2

in part, the preparation and filing of Corey's provisional patent application, U.S. Pat. App. No. 62/134,497, which Corey filed on March 17, 2015 (the "'497 Provisional Application"). [*Id.* at ¶ 49–50.] The '497 Provisional Application lists Corey as the inventor and contains terminology frequently used by Corey at Javo and refers to "Javo" processes in certain figures. [*Id.* at ¶ 51.] Thus far, Corey has obtained seven issued patents and has seven additional published patent applications all claiming priority to Corey's '497 Provisional Application which have all been assigned to CEV. [*Id.* at ¶ 65.] According to the complaint, the issued patents and published patent applications disclose material that substantially describes and overlaps with the proprietary confidential information and trade secrets of Javo, constituting a violation of Corey's obligations to refrain from disclosing confidential information of Javo and to transfer all interest in any inventions to Javo. [*Id.* at ¶ 66.]

On May 30, 2019, Javo demanded, among other things, that Defendants immediately assign rights in the patents and applications claiming priority to the '497 Provisional Application. [*Id.* at ¶ 68.] Javo then filed its complaint on September 26, 2019, alleging: (1) Misappropriation of Trade Secrets Under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836, *et seq.*; (2) Misappropriation of Trade Secrets Under the California Uniform Trade Secrets Act ("CUTSA"), Cal. Civ. Code §§ 3426-3426.11; (3) Declaratory Judgment of Ownership of the Patents; and (4) Intentional Interference with Contractual Relations.

## II.    REQUEST FOR JUDICIAL NOTICE

At the motion to dismiss stage a court may consider materials incorporated into the complaint or matters of public record, without converting the motion to dismiss into a motion for summary judgment. *Coto Settlement v. Eisenberg.*, 593 F.3d 1031, 1038 (9th Cir. 2010) (citation omitted); *see also* Federal Rules of Evidence 201(b): "The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."

Defendants request the Court take judicial notice of the patent applications and the

corresponding patents that are implicated in this case. [Doc. No. 7-2.] Javo filed a statement of non-opposition to Defendants' request for judicial notice. [Doc. No. 11.] Accordingly, the Court takes judicial notice of Defendants' exhibits.

## III. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Thus, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). On the other hand, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678; *see also Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001) ("Conclusory allegations of law are insufficient to defeat a motion to dismiss"). Nor is the Court "required to accept as true allegations that contradict exhibits attached to the Complaint or . . . allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). A claim may be dismissed under Rule 12(b)(6) on the grounds that it is barred by the applicable statute of limitations when "the running of the statute is apparent on the face of the complaint." *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 996 (9th Cir. 2006) (quotations omitted).

## IV. DISCUSSION

Defendants contend that Javo's complaint is time-barred. In addition, Defendants contend that Javo's claim for intentional interference with contractual relations is preempted by the California Uniform Trade Secrets Act ("CUTSA"). [Doc. No. 7-1.] The Court addresses each issue in turn.

### A. Statute of Limitations

Defendants assert that the Court does not have to reach the merits of Javo's claims, which they do not address, because Javo failed to file its claims before the applicable statute

of limitations period. Primarily, Defendants claim that the publication of patent applications constitutes constructive notice sufficient to trigger the statute of limitations, and therefore, Javo's claims accrued at the latest on September 22, 2016 – the date on which the USPTO made the '497 Provisional Application and six of the seven patent applications publicly available. Defendants contend Javo was obligated to bring its intentional interference claim within two years and its trade secret and declaratory judgment claim within three years of September 22, 2016. Since Javo did not file the instant lawsuit until September 26, 2019, Defendants contend all of Javo's claims are time-barred. Javo responds that Defendants' statute of limitations argument fails for the following reasons: (1) the mere publication of a patent application standing alone does not create constructive notice; (2) it is not apparent from the face of the complaint that Javo had reason to suspect misconduct and therefore the statute of limitations defense is not appropriate for a motion to dismiss; and (3) Javo's claim for declaratory judgment of patent ownership is timely because the claim did not accrue until January 2, 2018, when the first patent in the family issued.

### 1. Trade Secret Misappropriation

"Dismissal at the pleading stage on statute-of-limitations grounds ordinarily is improper unless it is 'apparent from the face of the complaint that the claim is time-barred.'" *ABB Turbo Sys. AG v. Turbousa, Inc.*, 774 F.3d 979, 985 (Fed. Cir. 2014) (citations omitted). "[T]o approve dismissal on timeliness grounds, [the court] would have to conclude that [plaintiff's] complaint alleges facts making it apparent that [plaintiff] discovered, or 'by the exercise of reasonable diligence should have . . . discovered,' the alleged misappropriations at least three years before [the statute of limitations ran]." *Id*.

Under both the DTSA and CUTSA, a civil action must be brought no later than three years after the misappropriation "is discovered or by the exercise of reasonable diligence should have been discovered." 18 U.S.C. § 1836(d); Cal. Civ. Code § 3426.6. Misappropriation is defined as (A) acquisition of a trade secret "by improper means" or (B) "disclosure or use of a trade secret of another without express or implied consent" by

one who either used "improper means" or "at the time of disclosure or use," had reasons to know it was acquired by "improper means." 18 U.S.C. § 1839(5); Cal. Civ. Code § 3426.1. Thus, the statute of limitations began to run when Javo knew or should have known that the alleged trade secrets were wrongfully acquired, disclosed, or used. *See id.* Here, to approve dismissal on timeliness grounds, the Court would have to conclude that Javo's complaint alleges facts making it apparent that Javo discovered, or by the exercise of reasonable diligence should have discovered, the alleged misappropriation at least three years before the instant lawsuit was filed. The Court cannot so conclude.

Javo's complaint alleges no facts to identify actual or constructive notice prior to May 2019. Javo alleged in its complaint that it sent correspondence to the Defendants on May 30, 2019, demanding immediate action with regard to the alleged misappropriation. [Doc. No. 1 at ¶ 68.] Further, there are no facts to suggest Javo had reason to suspect, or should have suspected, that there would be any wrongdoing on the part of the Defendants. Accordingly, the Court cannot conclude, on the face of the complaint, that Javo alleged any facts that make it apparent that Javo discovered, or by the exercise of reasonable diligence should have discovered, the alleged misappropriation prior to May 2019.

The Ninth Circuit has recognized that the "issuance of a patent and recordation in the Patent Office constitute notice to the world of its existence." *Gen. Bedding Corp. v. Echevarria,* 947 F.2d 1395, 1397-98 (9th Cir. 1991) (quoting *Wine Ry. Appliance Co. v. Enterprise Ry. Equip. Co.*, 297 U.S. 387, 393 (1936)). However, the Court does not find this holding, and the cases that rely on it, applicable to the circumstances in this case. Here, it is undisputed that the first *issuance* of an implicated patent was not until January 2018. The majority of cases relying on the issuance of a patent as constructive notice were either at the summary judgment stage or later in the proceedings with sufficient evidence on the record to decide this issue. Here, the Court cannot conclude, as a matter of law, that Javo's claims accrued at the latest on September 22, 2016 due to the publication of the patent *application* itself. In the Court's view, it would be unreasonable to require a company that consciously chooses the proprietary trade secret route over the patent protection route to

6

19-CV-1859-CAB-WVG

devote significant time and resources searching for any relevant patents within its industry that could potentially lead to some cognizable legal claim when it has no basis to suspect some wrongdoing. Furthermore, because it is not apparent on the face of Javo's complaint that its claims are time barred it is not Javo's burden to specifically plead the inability to have made an earlier discovery. *See Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 808 (2005).

At this early stage of the proceeding, there is no evidence on the record from which the Court could conclude that Javo was aware, or should have been aware, of the alleged misappropriation, such that the publication of the patent application itself constituted constructive notice. It is not apparent at what point in time Javo even became aware of Defendants' operations as a business in the similar industry and Defendant Corey's involvement with the business. Were such relevant evidence on the record, it is possible the Court could find under specific circumstances that Javo should have been aware of the alleged misappropriation such that it should be charged with having constructive notice of its claims earlier than it contends. However, construing the complaint in its entirety, in the light most favorable to Javo, the time of discovery of the alleged misappropriation is not clear, and therefore at this time the Court cannot hold that Javo's trade secret misappropriation claims are time-barred. Likewise, the Court cannot hold that Javo's intentional interference with contractual relations claims are time-barred where it is not clear that Javo had any reason to suspect wrongdoing on the part of Defendants with respect to the EA and CIAA executed with Defendant Corey.

### 2. Declaratory Judgment of Patent Ownership

The parties do not dispute that the statute of limitations for a declaratory judgment claim is equivalent to the statute of limitations for the underlying wrong, however, Javo contends the underlying wrong for its declaratory judgment claim sounds in contract, and therefore the applicable statute of limitations is four years. Javo alleges in its claim for declaratory judgment that Defendant Corey contributed to the conception of at least one claim of each issued patent and pending patent application claiming priority to the '497

7

Provisional Application during his employment at Javo. [Doc. No. 1 at ¶ 98.] As a result, Javo claims ownership of the patents by virtue of the CIAA, wherein Defendant Corey assigned his right, title, and interest in all inventions made, conceived, reduced to practice, or learned during his employment by Javo and its predecessors. Accordingly, Javo's declaratory judgment claim sounds in contract and the applicable statute of limitations is four years. In the alternative, Javo argues that its claims are timely even under the three-year statute of limitations Defendants seek to impose because as stated above, the first patent was not issued until January 2018. Regardless of which statute of limitations applies here, Javo is correct that its patent ownership claims run through at least September 2020, and therefore are not time-barred.

Accordingly, Defendants' motion to dismiss Javo's complaint as time-barred is **DENIED without prejudice** should discovery uncover the necessary facts to re-allege a statute of limitations argument at the appropriate time.

### B. Preemption Under the CUTSA

Defendants contend that Javo's claim for intentional interference with contractual relations is preempted by the CUTSA because the CUTSA implicitly preempts alternative civil remedies based on trade secret misappropriation. Javo argues that its intentional interference claim exists independently of its trade secret allegations and is not preempted because it extends to: (1) non-trade secret confidential information that CEV improperly solicited from Corey; and (2) CEV's intentional interference with Corey's obligation to assign to Javo any patents for inventions Corey conceived of during his employment.

Under California law, CUTSA provides the exclusive civil remedy for conduct falling within its terms and preempts other civil remedies for trade secret misappropriation. Cal. Civ. Code § 3426.7; *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 236 (2010), disapproved on other grounds by *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 (2011). It therefore preempts claims based on the same nucleus of facts as trade secret misappropriation. *Silvaco*, 184 Cal. App. 4th at 232 (quoting *K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*, 171 Cal. App. 4th 939, 962 (2009)). At the pleading

stage, the preemption analysis asks whether, stripped of facts supporting trade secret misappropriation, the remaining factual allegations can be reassembled to independently support other claims for relief. *Qiang Wang v. Palo Alto Networks, Inc.*, No. C 12–05579 WHA, 2013 WL 415615, at *4 (N.D. Cal. Jan. 31, 2013). Claims are not preempted, however, when based upon a broader spectrum of misconduct than misappropriation. *See* Cal. Civ. Code § 3426.7(b) (noting that the UTSA does not affect "other civil remedies that are not based upon misappropriation of a trade secret").

Here, Javo alleges that Defendant CEV interfered with the contractual relations between Javo and Defendant Corey with respect to the EA and CIAA. [Doc. No. 1 at ¶¶ 107–110.] Javo alleges that Defendant CEV interfered with Defendant Corey's duty to assign the patents at issue which, among Javo's trade secrets, also include non-trade secret confidential information. [*Id*. at ¶¶ 110–112.] Therefore, Javo's allegations sufficiently plead wrongful conduct distinct from the alleged misappropriation of trade secrets. To the extent these allegations are based upon the trade secret information, the Court agrees that the intentional interference claim should be preempted. Accordingly, Defendants' motion to dismiss Javo's intentional interference claim as preempted is **DENIED** to the extent the allegations are based upon non-trade secret information.

## V. CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss is **DENIED**.

It is **SO ORDERED**.

Dated: December 2, 2019

_____
Hon. Cathy Ann Bencivengo
United States District Judge