SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
   A Limited Liability Partnership
   Including Professional Corporations
JOHN A. YACOVELLE, Cal. Bar No. 131781
   jyacovelle@sheppardmullin.com
MARISA B. MILLER, Cal. Bar No. 270860
   mmiller@sheppardmullin.com
KRISTIN P. HOUSH, Cal. Bar No. 286651
   khoush@sheppardmullin.com
JESSE SALEN, Cal Bar No. 292043
   jsalen@sheppardmullin.com
12275 El Camino Real, Suite 200
San Diego, California 92130-4092
Telephone:   858.720.8900
Facsimile:   858.509.3691

Attorneys for Defendants/Counter-Claimant
CALIFORNIA EXTRACTION
VENTURES, INC.; STEPHEN COREY

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAVO BEVERAGE CO., INC.,<br><br>              Plaintiff,<br><br>      v.<br><br>CALIFORNIA EXTRACTION VENTURES, INC. AND STEPHEN COREY,<br><br>              Defendants. | Case No. 3:19-CV-01859-CAB-WVG<br><br>**DEFENDANTS CALIFORNIA EXTRACTION VENTURES, INC. AND STEPHEN COREY'S OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date:      January 23, 2020<br>Time:      10:00 a.m.<br>Ctrm.:      4C (4th Floor)<br>The Hon. Cathy Ann Bencivengo |
| CALIFORNIA EXTRACTION VENTURES, INC.,<br><br>              Counter-Claimant,<br><br>      v.<br><br>JAVO BEVERAGE CO., INC.,<br><br>              Counterclaim-Defendant. | Complaint Filed:   September 26, 2019<br>Trial Date:      TBD<br><br>**[FILED UNDER SEAL]** |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................... 1

II. STATEMENT OF FACTS ...................................................................... 3

    A.    The Prior Art:  The Sivetz Patent (i.e., Javo's Extraction Process).......... 3

    B.    Mr. Corey's Catalyzing Pressure Wave Invention and the CEV Patents. ................................................................................................. 6

    C.    CEV's Extraction Process Parameters. .................................................. 8

    D.    Plaintiff's Anti-Competitive Lawsuit. ................................................. 10

III. PRELIMINARY INJUNCTION STANDARD .................................... 10

IV. ARGUMENT ....................................................................................... 11

    A.    Javo Has Not Shown That It Is Likely To Prevail On The Merits......... 11

        1.    Javo's Process Is Not A Trade Secret..................................... 11

            a.    Javo's Process Is Not Proprietary..................................... 11

            b.    Javo's Process Is Based On An Expired Patent. ............... 13

        2.    Javo Has Failed to Show That The Patents Disclose Its Process. ................................................................................ 15

        3.    CEV's Process Is Different From Javo's................................. 16

        4.    Javo's Claims Are Time-Barred............................................ 18

    B.    Javo Has Not Demonstrated Irreparable Harm. .................................... 18

        1.    Javo's Claims Are Based On Alleged Past Harm Redressable By Damages Or Equitable Relief Following Trial. ..................................................................................... 18

        2.    Javo's Alleged Irreparable Injuries Are Speculative. .................. 21

    C.    The Balance Of Equities Favors Defendants. ....................................... 23

    D.    An Injunction Is Not In The Public Interest......................................... 24

    E.    A Significant Bond Is Necessary. ........................................................ 25

V. CONCLUSION ..................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

<u>Cases</u>

*Advanced Instructional Sys., Inc. v. Competentum USA, Ltd.*
  2015 WL 7575925 (M.D. N.C. 2015) ........................................................ 20, 21

*Alliance for Wild Rockies v. Cottrell*
  632 F.3d 1127 (9th Cir. 2011) .................................................................. 21

*Aransas Project v. Shaw*
  775 F.3d 641 (5th Cir. 2014) .................................................................. 18

*Art Attacks Ink, LLC v. MGA Entm't, Inc.*
  No. 04CV1035 J (BLM), 2004 WL 7333800 (S.D. Cal. Sept. 8,
  2004) .......................................................................................................... 19

*Callaway Golf Co. v. Dunlop Slazenger Group Americas, Inc.*
  318 F. Supp. 2d 205 (D. Del. 2004) ...................................................... 13, 15, 16

*Campbell Soup Co. v. ConAgra, Inc.*
  977 F.2d 86 (3rd Cir. 1992) .................................................................. 19

*Caribbean Marine Services Co., Inc. v. Baldrige*
  844 F.2d 668 (9th Cir. 1988) .................................................................. 18

*City of Los Angeles v. Lyons*
  461 U.S. 95 (1983) .................................................................................. 18

*DISH Network Corp. v. Federal Communications Comm'n*
  653 F.3d 771 (9th Cir. 2011) .................................................................. 11

*E. & J. Gallo Winery v. Instituut Voor Landbouw—En
  Visserijonderzoek*
  2018 WL 2463869 (E.D. Cal. 2018) ...................................................... 13

*Earth Island Inst. v. Carlton*
  626 F.3d 462 (9th Cir. 2010) .................................................................. 10, 23

*eBay Inc. v. MercExchange, L.L.C.*
  547 U.S. 388 (2006) ................................................................................ 21

*Eskridge Research Corp. v. U.S.*
  92 Fed. Cl. 88 (2010) .............................................................................. 11

*Flexible Lifeline Systems, Inc. v. Precision Lift, Inc.*
  654 F.3d 989 (9th Cir. 2011) ....................................................................... 21

*Gallagher Benefits Servs., Inc. v. De La Torre*
  2007 WL 4106821 (N.D. Cal. 2007) .......................................................... 20

*Garcia v. Google, Inc.*
  786 F.3d 733 (9th Cir. 2015) ......................................................... 11, 19, 21

*Goldie's Bookstore, Inc. v. Sup.Ct.*
  739 F.2d 466 (9th Cir. 1984) ....................................................................... 21

*Herb Reed Enterprises, LLC v. Florida Entertainment Mgmt., Inc.*
  736 F.3d 1239 (9th Cir. 2013) ..................................................................... 21

*Idaho v. Coeur d'Alene Tribe*
  794 F.3d 1039 (9th Cir. 2015) ..................................................................... 19

*Int'l Jensen, Inc. v. Metrosound U.S.A., Inc.*
  4 F.3d 819 (9th Cir. 1993) ........................................................................... 23

*Klang v. Pflueger*
  No. SACV1301971JVSDFMX, 2014 WL 12587028 (C.D. Cal. Oct.
  2, 2014) ........................................................................................................ 18

*League of Wilderness Defenders/Blue Mountains Biodiversity Project
  v. Connaughton*
  752 F.3d 755 (9th Cir. 2014) ....................................................................... 23

*Los Angeles Memorial Coliseum Comm'n v. NFL*
  634 F.2d 1197 (9th Cir. 1980) ..................................................................... 19

*MacDonald v. Chicago Park Dist.*
  132 F.3d 355 (7th Cir. 1997) ....................................................................... 23

*Mazurek v. Armstrong*
  520 U.S. 968 (1997) ..................................................................................... 10

*Muggill v. Reuben H. Donnelley Corp.*
  62 Cal.2d 239 (Cal. 1965) ........................................................................... 24

*Munns v. Kerry*
  782 F.3d 402 (9th Cir. 2015) ....................................................................... 18

*Nintendo of America, Inc. v. Lewis Galoob Toys, Inc.*
   16 F.3d 1032 (9th Cir. 1994) .................................................................. 25

*Oakland Tribune, Inc. v. Chronicle Publishing Co., Inc.*
   762 F.2d 1374 (9th Cir. 1985) ................................................................ 19

*Pac. Aerospace & Elecs., Inc. v. Taylor*
   295 F. Supp. 2d 1188 (E.D. Wash. 2003) ............................................. 20

*Perfect 10, Inc. v. Google, Inc.*
   653 F.3d 976 (9th Cir. 2011) .................................................................. 21

*Pixon Imaging, Inc. v. Empower Techs. Corp.*
   2011 WL 3739529 (S.D. Cal. 2011)....................................................... 20

*Prestige Flag Mfg. Co., Inc. v. Par Aide Products Co.*
   2015 WL 11990931 (S.D. Cal. 2015) ..................................................... 11

*Qiang Wang v. Palo Alto Networks, Inc.*
   No. C 12-05579 WHA, 2014 WL 1410346 (N.D. Cal. Apr. 11,
   2014) ...................................................................................................... 18

*Sampson v. Murray*
   415 U.S. 61 (1974) ................................................................................. 19

*Sardi's Restaurant Corp. v. Sardie*
   755 F.2d 719 (9th Cir. 1985) .................................................................. 23

*Scott v. Snelling & Snelling, Inc.*
   732 F. Supp. 1034 (N.D. Cal. 1990)....................................................... 24

*Scotts Co. v. United Indus. Corp.*
   315 F.3d 264 (4th Cir. 2002) .................................................................. 23

*United States v. Liew*
   856 F.3d 585 (9th Cir. 2017) .................................................................. 13

*W. Directories, Inc. v. Golden Guide Directories, Inc.*
   2009 WL 1625945 (N.D. Cal. 2009)....................................................... 20

*WesternGeco v. Ion Geophysical Corp.*
   No. CIV.A. 09-CV-1827, 2009 WL 3497123 (S.D. Tex. Oct. 28,
   2009) ...................................................................................................... 18

*Winter v. Natural Resources Defense Council, Inc.*
    555 U.S. 7 (2008) ....................................................................10, 11, 18, 23, 24, 25

<u>Statutes</u>

Cal. Bus. & Prof. Code § 16600 ..............................................................................24

Cal. Civ. Code § 3246.1(d)(1) ..................................................................................11

18 U.S.C. 1839(3) ....................................................................................................11

<u>Other Authorities</u>

Fed. R. Civ. Proc. 65(c) ............................................................................................25

California Extraction Ventures, Inc. ("CEV") and Stephen Corey (together, "Defendants") hereby submit their Opposition to Javo Beverage Co., Inc.'s ("Javo") Motion for Preliminary Injunction (the "Motion").

# I.     INTRODUCTION

This lawsuit is Javo's transparent effort to prevent Defendants from lawfully competing against Javo.  Non-compete contract provisions are illegal in California, except in very limited circumstances not applicable to this case.  But through its meritless Motion based on a frivolous lawsuit, Javo has asked the Court to impose an illegal non-compete restriction on the Defendants using its purported "trade secret" process as a pretext.  The Court should reject Javo's entreaty and deny the Motion.

Javo's Motion relies on purported evidence that does not come close to satisfying the high standard for imposing a preliminary injunction.  As a threshold matter, Javo will not prevail on the merits.  Javo's corporate witness testified that the steps of Javo's extraction process are either not proprietary to Javo, different from the process described in CEV's patents, or exist in the public domain.  These admissions are fatal to Javo's Motion and dispositive of Javo's claims in this case.

Javo cannot salvage its Motion by contending that even if aspects of its process exist in the public domain, it is the particular "combination" of the various steps of the process that Javo is trying to protect.  Javo has not asserted this allegation in its complaint, and at any rate, Javo has failed to submit a shred of evidence showing that Defendants have disclosed any step of Javo's so-called proprietary process, let alone the entirety of the process.  The technology and processes described in Defendants' patents are far different from Javo's, and in any event, CEV does not, in practice, use the self-proclaimed key parameters of Javo's "process."  Preliminary injunctive relief cannot issue under these circumstances.

In addition to failing to demonstrate a likelihood of success on the merits, Javo has not shown that it will suffer irreparable harm absent preliminary injunctive relief.  Even if the Court chooses to look past Javo's six-month delay in filing its Motion

1 (more than three years after Javo had constructive notice of Defendants' patent

2 applications/patents and nearly six months after having actual notice), the fact

3 remains that the harm allegedly suffered by Javo – the alleged disclosure of its "trade

4 secrets" in CEV's patent application and a subsequent (alleged) failed sales process –

5 has already occurred.  Even if Javo could reliably show that its sales process

6 terminated *because* of CEV's patents, which Javo has not, the proverbial horse is out

7 of the barn, and any alleged past damage suffered cannot be cured by an injunction.

8   Nor has Javo offered sufficient evidence of irreparable harm it might suffer if

9 an injunction does not issue.  Javo claims that CEV's building permits and a

10 statement by one former CEV employee on LinkedIn regarding CEV's expected

11 production date somehow demonstrate that CEV will imminently bring a competing

12 product to the market.  Yet, as shown in CEV's evidence accompanying this

13 opposition, CEV is at least ███████ away from production, as it has not

14 completed construction of its facility, nor does it have the necessary equipment,

15 inventory, testing, or regulatory approvals to begin production.

16   What is more, the "evidence" that Javo has managed to muster cuts against its

17 claim of "alleged harm."  According to Javo's own witnesses, since the publication of

18 Defendants' patent applications in 2016, Javo's annual revenue has **more than**

19 **doubled**.  CEV's patent applications, published over three years ago, present no

20 imminent harm to Javo.  Indeed, the patent applications and patents appear to have

21 had no impact on Javo's business.  Preliminary injunctive relief is not warranted here.

22   In addition, the balance of equities clearly favors Defendants.  The preliminary

23 injunction sought by Javo would effectively put CEV out of business, resulting in

24 enormous financial losses from which it will likely never recover.  Meanwhile, Javo

25 will continue as a going concern (as it will even if its Motion is denied), based on its

26 own witnesses' sworn declarations.  Granting a preliminary injunction and altering

27 the status quo so severely would be untenable under these circumstances.

28

1    Finally, the public interest is not served by a preliminary injunction preventing

2    Defendants from executing their novel extraction process, raising money from

3    investors, filing new patent applications, or licensing their own patented technology.

4    Javo's Motion is a thinly-veiled end-run around the general prohibition on non-

5    compete agreements.  Javo cannot prevent a competitor from entering the same field

6    by wrongfully asserting that Defendants' patents disclose a 25-year old, publicly-

7    available extraction process.  Javo's deficient Motion runs contrary to public policy.

8    For these reasons and as further detailed below, the Motion should be denied.

9    **II.     STATEMENT OF FACTS**

10   **A.     The Prior Art:  The Sivetz Patent (i.e., Javo's Extraction Process).**

11   Javo was co-founded by Mr. Corey, who also developed and established Javo's

12   extraction process.  Corey Decl. ¶ 13.  Mr. Corey based Javo's process on prior art

13   developed by Michael Sivetz, memorialized in an expired patent that was filed on

14   August 20, 1974 and expired on August 20, 1994, entitled "Preparation of Aqueous

15   Beverage Concentrate of Coffee," Patent No. 3,830,940 (the "Sivetz Patent").  Corey

16   Decl. ¶ 4, Ex. 4.  After three years of research and development, Mr. Corey

17   discovered the Sivetz Patent in 1996 after speaking with Mr. Sivetz.  *Id.* at ¶¶ 4-7.

18   The Sivetz Patent discloses a process for a "flavorful" concentrated coffee

19   extract.  Ex. 4 at Abstract.  Like Javo's process, the Sivetz Patent provides for

20   extraction through a columnar extraction vessel with an aspect ratio of 6:1, removable

21   end caps on either side of the vessel, and perforated retainers on the bottom and top of

22   the vessel.  *Id.* at 2:65-70, Claims 1, 5.  Extractable material, consisting of ground

23   roast coffee beans of different particle sizes, is loaded into the vessel.  *Id.* at 2:70-

24   3:20, 3:50-57, Claim 5.  The Sivetz Patent describes a range of coffee grind sizes

25   from fine to coarse and includes a chart with a specific grind matrix based on vessel

26   size.  *Id.* at 3:2-19, 3:42-54.  The appropriate grind range is fine enough to optimize

27   extraction, but not too fine to cause a hydraulic plug or "deadheading."  *Id*. at 3:42-49.

28   The "fineness of grind" will also contribute to "effective gas displacement."  *Id*. at

3:42-43.  Further refinements in grind sizes and columnar vessels "may be desirable for different types of beans, different levels of roast, etc. and these will be apparent to those skilled in this art." *Id.* at 3:54-57.



Six years after Mr. Corey began researching extraction methodologies, he implemented the Sivetz Patent process at one of Javo's predecessor entities.[1]  Corey Decl. ¶¶ 3-13.  Mr. Corey carried this process over to Javo and scaled it up to provide higher volumes and thus yields, while staying consistent with the Sivetz principles. *Id.* at ¶ 13.

Tr. 34:16-22; *compare* Ex. 4, Figure 1 at 11 and 21, *with* Petersmeyer Decl. [Doc. No.

_____

[1] This is the six-year time period referred to in the Provisional Application [Doc. No. 1-3 at 20] that Javo relies upon as evidence that Mr. Corey conceived of his novel process during his Javo tenure.  (Mot. at 10:25-11:1, n.4.)  Not so.  The six-year time period instead refers to the six years it took Mr. Corey to discover, understand, and implement the Sivetz process.

22], Ex. 6 at 1, 7.[2]

Early into Mr. Corey's tenure at Javo, Javo's CEO, Cody Ashwell, instructed Mr. Corey not to develop the process any further. Corey Decl. at ¶ 14. Mr. Ashwell directed Mr. Corey to focus on customer products and responding to customer requests in the lab, which is how Mr. Corey spent most of his time at Javo. *Id.*



[2] All references to the deposition transcript of Bradley Petersmeyer, Javo's 30(b)(6) witness, are to "Tr. at ___," which is Exhibit 6 to the Declaration of Marisa Miller.

**B.**     **Mr. Corey's Catalyzing Pressure Wave Invention and the CEV Patents.**

Several years after Corey's departure from Javo, in or around 2014, Mr. Corey conceived of and began to work on Catalyzing Pressure Wave ("CPW") architecture. Corey Decl. at ¶ 29. The patents at issue were derived from this concept. *Id.* Mr. Corey did not perform any studies on CPW architecture while employed by Javo or at any of Javo's predecessor companies. *Id.* The CPW process is a "game changer" for the industry. A critical part of the CPW process is the energy generated through the boundary layer interface between water and coffee grounds. *Id.* at ¶ 31. This interface, which is continually moving upward through the vessel, is utilized to achieve high temperatures (e.g., 204°F) for milliseconds, so that nearly all 1600 compounds within the coffee grinds can be extracted without overheating and destroying them. *Id.*

Water is heated to a temperature of about 160°F prior to entering the extraction vessel. *Id.* at ¶ 32. The water then moves through a "flow governor assembly," consisting of at least two separate, different discs. *Id.* This is different from Javo's "diffuser plate," as Javo's witness admitted. Tr. at 64:13-19. The first disc slows the speed of water coming in through the base of the vessel to prevent surging. Corey Decl. ¶ 32. The second disc evenly distributes the water in an ultralinear circumferential layer through the grind column to accentuate the water's inertia and hydraulic forces. *Id.* Both discs are located at the bottom of the extraction vessel. *Id.* The flow governor assembly is essential to the CPW technology, providing for an even distribution of the maximum hydraulic pressure throughout the extraction process. *Id.* at ¶ 33. This is key for (1) the catalyzing of energy and heat at the boundary layer interface, which the Catalyzing Pressure Wave technology relies upon for extraction, and (2) allowing twice as much water to enter the vessel as the flow of effluent leaving the vessel (the "2:1 Ratio"). *Id.* ██████████████████

██████████████████████████████

██████████████ *Id.*

Once the water moves through the "flow governor," it reaches the base layer of coffee grinds in an evenly dispersed and regulated fashion across all 360° of the circumference of the coffee grinds. *Id.* at ¶ 34. The water begins to migrate through the coffee, catalyzing the released carbon dioxide and pushing the grind particles closer together, so that interstitial pockets are minimized or eliminated completely. *Id.* The coffee grinds are compressed against the side of the vessel walls. *Id.* At a critical tipping point (the "Skip Trigger"), the hydraulic force exceeds the coefficient of friction, locking the grounds in place against the vessel walls, which causes the coffee grinds to skip or jump upward. *Id.* at ¶ 35. As the grinds jump up, static friction, dry friction, skin friction, and fluid friction help catalyze kinetic energy and heat, which is immediately released at the boundary layer. *Id.* These short bursts of thermal energy raise the water temperature at the boundary layer to 196°F-204°F for a matter of milliseconds. *Id.* This quick temperature increase allows for the extraction of the good compounds, improving the extract's flavor. *Id.* A wave of cooler water follows immediately thereafter, allowing for the preservation of these good compounds without overheating, degrading, or destroying them. *Id.* This process is a self-perpetuating energy cycle, repeating itself throughout the extraction. *Id.*

███████████████████████████████████████████ during CEV's CPW process, carbon dioxide is ████████████████████████████████. *Id.* at ¶ 36. Instead, it is controlled and kept within the vessel by a combination of the flow governor assembly, the grind matrix, and a limiter disc near the top of the vessel. *Id.* This limiter disc contains approximately half the holes that the flow governor has at the bottom of the vessel where the heated water enters. *Id.* ████████████████████ ████████████████████████████████████████ ███████████████████████████. *Id.* Mr. Corey designed the limiter disc discussed in CEV's patents to re-pressurize the vessel. *Id.* ████████████████████ ████████████████████████████████████████████████████



3   The above-described CPW process is far different from the ▇▇▇▇

4   ▇▇▇▇ that Javo utilized, which was based on the Sivetz Patent.  *Id.* at ¶ 37.

16   The patent applications at issue were published by the USPTO on **September**

17   **22, 2016**, over three years before Javo filed the instant lawsuit.  Doc. Nos. 7-3, 7-4.

18   These seven patent applications eventually converted to issued patents starting on

19   January 2, 2018, with the latest patent issued on September 3, 2019.  *Id.*  The patents

20   share the same specification and claim priority to the '497 Provisional Application.

21   *Id.*  Javo's allegations do not distinguish between any of their disclosures.

22   **C.   CEV's Extraction Process Parameters.**

23   Not only is CEV's CPW extraction process as described by the patents far

24   different from Javo's extraction process, CEV's process parameters do not match

25   Javo's.  During extraction, ▇▇▇▇▇▇▇▇▇▇▇▇

1  ██████████████████████████████████████████████████

2  ██████████████████████████████████████████████████

3  ███████████████████ CEV degases its grinds anywhere from ████████████

4  ███████████████████████████, depending on a number of factors,

5  including but not limited to the type of coffee bean, the range of grind size, and the

6  type of roast. *Id.* at ¶ 8. ███████████████████████████████

7  █████████████████████████████████████████████████

8  █████████ ████████████████████████████████████████

9  ██████████████████████████████████████████████

10       CEV uses inline water heaters to raise the water temperature to no more than

11  ██████ when it enters the bottom of the extraction vessel. *Id.* at ¶ 10. When the water

12  reaches the top of the extraction vessel, it measures about ████████. *Id.* This is

13  different from the █████████████████████████ in Javo's process. Doc.

14  No. 22, Petersmeyer Decl. at ¶ 42. The extract is then stored under refrigeration,

15  where it is chilled to maintain its quality and longevity, ████████████████

16  ██████████████████████. Eng Decl. at ¶ 10. CEV's

17  extraction process from start to finish takes about ███████████. *Id.* at ¶ 11. With

18  loading, unloading and cleaning included, the process takes about ███████████

19  ██████████████████████████. *Id.*; Tr. at 114:12-17 By

20  doing so, CEV can achieve the █████████████ in a single shift, unlike Javo,

21  which can only complete ████████████████████████. Eng Decl. at ¶

22  11; Doc. No. 22, Petersmeyer Decl. at ¶ 46.

23       CEV is ████████████ from beginning production. Eng. Decl. at ¶ 12. CEV's

24  facility is still under construction. *Id.* The equipment and inventory that CEV needs

25  to begin production have not yet been purchased. *Id.* CEV will also need to hire and

26  train additional employees before production can begin. *Id.* The FDA will need to

27  perform audits, which takes about 6 months. *Id.* In addition, CEV will need to have

28  final microbial and shelf-life testing performed. *Id.* If CEV is prohibited from

1   conducting any extraction process, selling products, raising money, or taking steps to

2   otherwise monetize its product and generate revenue for the next 12 to 18 months, the

3   impact would be fatal to CEV.  *Id.* at ¶ 13.

4   **D.     <u>Plaintiff's Anti-Competitive Lawsuit.</u>**

5         Despite having constructive notice of Javo's patent applications since

6   September 22, 2016 and actual notice by no later than May 2019, Javo waited until

7   September 26, 2019 to file this lawsuit (and waited another seven weeks after that to

8   seek injunctive relief).  Doc. No. 1.  Javo's complaint contends that Corey conceived

9   of the invention that is the subject of the '497 Provisional Application "during

10  Corey's tenure with [Javo]," and therefore the information contained within the '497

11  Provisional Application constitutes Javo's trade secrets.  *Id.* at ¶ 53; *see also id.* at ¶¶

12  54-57.  In addition, Javo has asserted an intentional interference with contract claim

13  against CEV, as well as a declaratory judgment claim asking the Court to find that

14  Javo is the true owner of the patents.  Javo's claims are squarely based on the

15  published patent applications identified above.  *Id.* at ¶¶ 15, 66, 83, 111.

16  **III.    PRELIMINARY INJUNCTION STANDARD**

17        A preliminary injunction is an "extraordinary remedy that may only be

18  awarded upon a clear showing that the plaintiff is entitled to such relief."  *Winter v.*

19  *Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008); *see also Earth*

20  *Island Inst. v. Carlton*, 626 F.3d 462, 469 (9th Cir. 2010) (plaintiffs "face a difficult

21  task in proving that they are entitled to this 'extraordinary remedy'"); *Mazurek v.*

22  *Armstrong*, 520 U.S. 968, 972, (1997) (a preliminary injunction "should not be

23  granted unless the movant, **<u>by a clear showing</u>**, carries the burden of persuasion.")

24  (emphasis in original).

25        A plaintiff seeking a preliminary injunction "must establish" **<u>all</u>** of the

26  following:  (1) "that he is likely to succeed on the merits"; (2) "that he is likely to

27  suffer irreparable harm in the absence of preliminary relief"; (3) "that the balance of

28  equities tips in his favor"; and (4) "that an injunction is in the public interest."

1   *Winter*, 555 U.S. at 20.  This four-part test applies in ***every*** case where preliminary

2   injunctive relief is sought.  *See id*; *see also DISH Network Corp. v. Federal*

3   *Communications Comm'n*, 653 F.3d 771, 776 (9th Cir. 2011).  Javo cannot meet this

4   high standard here, and the Motion should be denied.

5   **IV.    ARGUMENT**

6   **A.    Javo Has Not Shown That It Is Likely To Prevail On The Merits.**

7          As a threshold matter, Javo must demonstrate that it is "likely" to prevail on the

8   merits.  *Winter,* 555 U.S. at 20.  Because it is a threshold issue, if plaintiff fails to

9   show a likelihood of success, the Court generally need not consider the other three

10  *Winter* elements.  *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015).  In

11  assessing whether a plaintiff is entitled to an injunction, "the court views the matter in

12  light of the burdens and presumptions that will inhere **at trial**."  *Prestige Flag Mfg.*

13  *Co., Inc. v. Par Aide Products Co.*, 2015 WL 11990931, *2 (S.D. Cal. 2015) (*quoting*

14  *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1375 (Fed. Cir. 2009)

15  (emphasis added).  Accordingly, "'when analyzing the likelihood of success factor,

16  the trial court, after considering all the evidence available at this early stage of the

17  litigation, must determine whether it is **more likely than not** that the challenger will

18  be able to prove at trial' the validity of its claim."  *Eskridge Research Corp. v. U.S.*,

19  92 Fed. Cl. 88, 97 (2010) (*quoting Titan Tire*, 566 F.3d at 1379) (emphasis added).

20         Javo has not come close to meeting its burden here, having botched its attempt

21  to show that its process constitutes a trade secret by admitting that the vast majority of

22  its process is not proprietary and failing to demonstrate that CEV's patents disclose

23  Javo's process or that CEV uses Javo's extraction process.  On this basis alone, Javo's

24  Motion should be denied.  *See* Cal. Civ. Code § 3246.1(d)(1); 18 U.S.C. 1839(3).

25         **1.    Javo's Process Is Not A Trade Secret.**

26              a.    Javo's Process Is Not Proprietary.

27         Javo's corporate witness has admitted that the following features of its

28  "proprietary" process are, in reality, **not proprietary**, including: ██████████████



Significantly, Javo has also admitted that Javo's Exhibit 4, █████████, is **<u>not confidential</u>**, except for one row which discloses yield.  Tr. at 99:20-101:13.  Javo has not contended that Defendants have misappropriated any trade secrets regarding Javo's yields.  Yet Javo marked the entirety of its Exhibit 4 as "highly confidential – outside attorneys' eyes only" and has touted it as one of the primary sources of evidence of Mr. Corey's alleged misappropriation merely because it contains the term "pressure wave."  Mot. at 11:2-11.

The inclusion of the term "pressure wave" on a single Javo document does not demonstrate that Javo's process is proprietary or that Mr. Corey misappropriated anything from Javo.  Indeed, that reference to "pressure wave" in Exhibit 4 is based on the "upflow" of pressurized water, as described in the Sivetz Patent, not on the Catalyzing Pressure Wave architecture that is featured in Defendants' patents.  Corey Decl. ¶ 29. ███████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████

The sworn testimony of Javo's corporate witness readily demonstrates that Javo's process is not confidential or a trade secret under California or federal law. Javo cannot prevail at trial, let alone on a preliminary injunction motion, when it has conceded that material elements of its process are not proprietary.

### b. Javo's Process Is Based On An Expired Patent.

Even if Javo's corporate witness had not admitted that the core elements of Javo's process are not proprietary, the fact remains that while Mr. Corey was employed by Javo, Javo's extraction process was based on the prior art disclosed in the Sivetz Patent.  Concepts that are already part of the public domain, including information published in a patent or patent application, are not protectible as trade secrets.  *See United States v. Liew*, 856 F.3d 585, 598 (9th Cir. 2017) (undisputed that "disclosure in patents…would destroy trade secret protection"); *E. & J. Gallo Winery v. Instituut Voor Landbouw—En Visserijonderzoek*, 2018 WL 2463869, *6 (E.D. Cal. 2018) ("Under California law, '[i]t is well established that disclosure of a trade secret in a patent places the information comprising the secret into the public domain.'") (*quoting Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp.*, 587 F.3d 1339, 1355 (Fed. Cir. 2009)); *Callaway Golf Co. v. Dunlop Slazenger Group Americas, Inc.*, 318 F. Supp. 2d 205, 214-15 (D. Del. 2004) (rejecting trade secret misappropriation claim under California law where the only similarities alleged were well known in the public domain and/or based on expired patents).



1    Javo has not addressed the Sivetz Patent.  The best it has done is to contend, for

2    the first time in its Motion, that it is the particular "combination" of steps that is

3    proprietary, even if some components of its process are part of prior art.  Mot. at

4    15:12-19.  Javo has **not** made this allegation in its complaint.  More importantly, Javo

5    has not even attempted to show that Defendants' patents disclose Javo's "entire"

6    process.  Javo has not demonstrated that Defendants' patents disclose *any* of the ▮▮▮

7    ▮▮▮▮▮▮▮▮▮ of Javo's alleged process, let alone Javo's process in its entirety.

8    Injunctive relief cannot issue under these circumstances.

9        **2.      Javo Has Failed to Show That The Patents Disclose Its Process.**

10       Javo's Motion is devoid of any evidence explaining just now Javo's

11   purportedly trade secret-protected process overlaps with the processes described in

12   Defendants' patents.  For example, Javo has failed to demonstrate that ▮▮▮▮▮▮▮

13   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

14   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

15   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

16   ▮▮▮▮▮▮▮▮▮▮ referred to in Mr. Petersmeyer's Declaration [Doc. No. 22]

17   appear in any of Defendants' patents.  Javo cannot succeed on the merits without this

18   showing.  *Callaway Golf*, 318 F. Supp. 2d at 215 (liability for trade secret

19   misappropriation based on a published patent does not lie where a plaintiff cannot

20   show with evidence that the patent bears any similarity to the alleged trade secret).

21       Instead, Javo makes sweeping, conclusory allegations regarding "substantial

22   similarities" between Javo's "proprietary extraction process" and Defendants' patents.

23   Mot. at 9:19-22.  Javo fails to actually substantiate these claims.  The best Javo can

24   muster is to point vaguely to "operating conditions" and the "structural configuration

25   of extraction vessel" while citing "generally" to Mr. Petersmeyer's Declaration.  Mot.

26   at 9:19-22.  Yet Mr. Petersmeyer's Declaration does not compare any part of Javo's

27   process to Defendants' patents.  Doc. No. 22 at ¶¶ 29-49.  ▮▮▮▮▮▮▮▮▮▮▮▮

28   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

1  ███████████████████████████████████████████████████

2  ██████████████████████████  This complete and utter failure to show any actual

3  similarity between Javo's process and Defendants' patents seals Javo's fate and is

4  dispositive of Javo's Motion.  *Callaway Golf*, 318 F. Supp. 2d at 215-16 (finding that

5  conclusory assertions are insufficient to meet the requirements for a trade secret

6  misappropriation claim under California law).

7          Javo's limited selection of a handful of terms that it contends are common to its

8  process and the patents fares no better.  The alleged use of certain terms by Mr. Corey

9  while working for Javo – "the coffee itself became its own best filtering agent" (Mot.

10  at 10:17), "grind matrix" (*id.* at 10:19-25), "pressure wave" (*id.* at 11:2-11), "hungry

11  water" (*id.* at 11:14-15) – and the inclusion of those terms in the specifications of

12  Defendants' patents does not prove trade secret misappropriation or that CEV

13  interfered with Corey's employment agreement.  *See Callaway Golf*, 318 F. Supp. 2d

14  at 215-16 (applying California law and rejecting a counterclaimant's trade secret

15  misappropriation claim based on patent publication because there was no showing

16  beyond the use of information in the background section of a patent and common

17  industry processes that the counter-defendant had published any trade secret

18  information).  These terms are common in the industry, and Javo's own witness has

19  testified that many of them are not proprietary to Javo.  *Supra*, § IV.A.1.  ██████████

20  ███████████████████████████████████████████████████

21  ████████████████████.  Tr. at 155:23-156:14.

22          In short, there is no connection between Javo's process and Defendants'

23  patents.  Accordingly, Javo has failed to meet its burden of demonstrating a likelihood

24  of success on the merits, and its motion should be denied.

25          **3.      CEV's Process Is Different From Javo's.**

26          In addition to its failure to demonstrate any overlap between its process and

27  Defendants' patents, Javo has admitted that its process parameters are different from

28  those that CEV uses.  ██████████████████████████████████████████

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25



26      Javo has failed to demonstrate that its process, even if it was proprietary, bears

27  any similarity to CEV's.  Its motion should be denied.

28

### 4.      Javo's Claims Are Time-Barred.

The patent applications at issue were a matter of public record on September 22, 2016.  Doc. Nos. 7-3, 7-4. ████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████   Tr. at 189:15-23; Doc. No. 7-3, Ex. 1 at p. 30, Ex. 3 at 87, 11 at 389.  Javo was on constructive notice of its claims on September 22, 2016, but it did not file its complaint until September 26, 2019.  *Klang v. Pflueger*, No. SACV1301971JVSDFMX, 2014 WL 12587028, at *4-5 (C.D. Cal. Oct. 2, 2014); *Qiang Wang v. Palo Alto Networks, Inc.*, No. C 12-05579 WHA, 2014 WL 1410346, at *6 (N.D. Cal. Apr. 11, 2014); *WesternGeco v. Ion Geophysical Corp.*, No. CIV.A. 09-CV-1827, 2009 WL 3497123, at *4-5 (S.D. Tex. Oct. 28, 2009). Javo's claims are thus time-barred, another reason why Javo's claims will fail.

### B.      Javo Has Not Demonstrated Irreparable Harm.

#### 1.      Javo's Claims Are Based On Alleged Past Harm Redressable By Damages Or Equitable Relief Following Trial.

A plaintiff seeking preliminary relief must demonstrate that irreparable injury is likely in the absence of an injunction.  *Winter*, 555 U.S. at 22.  Plaintiff must demonstrate "immediate threatened injury[.]"  *Caribbean Marine Services Co., Inc. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988).  Plaintiffs seeking an injunction based on alleged past wrongs must show there is a **real and immediate** threat that they will be wronged again:  "[P]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief …" *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983); *Munns v. Kerry*, 782 F.3d 402, 411 (9th Cir. 2015); *Aransas Project v. Shaw*, 775 F.3d 641, 648 (5th Cir. 2014) ("Although past wrongs may help establish the threat of a future injury, they are insufficient alone.").

Moreover, "plaintiff must demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial. The preliminary injunction must be the **only** way of protecting the plaintiff from harm." *Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86, 91 (3rd Cir. 1992) (emphasis in original). Monetary harm alone does not constitute irreparable harm to Plaintiffs. *Los Angeles Memorial Coliseum Comm'n v. NFL*, 634 F.2d 1197, 1202 (9th Cir. 1980). The fact that adequate compensatory damages will ultimately be available in the ordinary course of litigation weighs "heavily against a claim of irreparable harm." *Sampson v. Murray*, 415 U.S. 61, 90 (1974); *Idaho v. Coeur d'Alene Tribe*, 794 F.3d 1039, 1046 (9th Cir. 2015) ("Purely economic harms are generally not irreparable, as money lost may be recovered later, in the ordinary course of litigation."). Furthermore, "[s]everal courts have found that a delay in seeking injunctive relief is probative of a lack of any irreparable harm." *Art Attacks Ink, LLC v. MGA Entm't, Inc.*, No. 04CV1035 J (BLM), 2004 WL 7333800, *15 (S.D. Cal. Sept. 8, 2004); *see also Garcia v. Google, Inc.*, 786 F.3d 733, 746 (9th Cir. 2015); *Oakland Tribune, Inc. v. Chronicle Publishing Co., Inc.*, 762 F.2d 1374, 1377 (9th Cir. 1985).

Here, Javo allegedly discovered Defendants' purported public disclosure of Javo's trade secrets in May 2019 (though the alleged disclosures themselves took place approximately three years before and were discoverable via a Google search), but waited to file this lawsuit until September and then waited until November to file its Motion for Preliminary Injunction. For a party so concerned about the supposedly irreparable harm it was poised to suffer in light of Defendants' conduct **from over three years ago**, six months is a relatively lengthy delay in seeking injunctive relief. *See Garcia*, 786 F.3d at 746 (four to five month delay negated irreparable harm). The delay alone suggests that Javo does not truly believe its irreparable harm contention.

Moreover, all of the damages supposedly suffered as a result of Defendants' allegedly wrongful conduct have already been realized. According to Javo, Defendants made Javo's trade secrets a matter of public record in 2016. Javo's

prospective buyers then terminated the sales process, resulting in some $50 million in (vaguely-described and speculative) damages.  (*See* Anderson Decl., ¶ 21.) ████

██████████████████████████████████████████████████████████████

██████████████████████████████████████ (*Id.* ¶¶ 20-21; *see also*

Defendants' Objection to Anderson and Riley Decl.)

   Even assuming Javo's claims are viable (which they are not), Javo has not cited evidence of any impending, irreparable harm it will suffer unless preliminary injunctive relief is granted, aside from the alleged threat of CEV's product imminently going to the market to compete with Javo.  Javo refers to building permits that its counsel found online and an online biography on LinkedIn, in which a former CEV employee states that CEV's production will begin in 2019.  It is now 2020, and production has not started.  Indeed, CEV's current estimate is that it is ████ away from production, with its facility still under construction and missing essential equipment, inventory, personnel, and governmental approvals.  Eng Decl. at ¶ 12.

   This stands in stark contrast to the case law Javo cites for its irreparable harm argument, none of which involve a three-plus year old public disclosure.  *See* Mot. at 23-24:19-4 (citing *Sun Distributing Company, LLC v. Corbett*, 2018 WL 4951966, *4 (S.D. Cal. 2018) (customer list case where disclosure to third parties/public not at issue); *W. Directories, Inc. v. Golden Guide Directories, Inc.*, 2009 WL 1625945, *1-2 (N.D. Cal. 2009) (advertiser list where disclosure to third parties/public not at issue); *Gallagher Benefits Servs., Inc. v. De La Torre*, 2007 WL 4106821, *1-2 (N.D. Cal. 2007) (customer list); *Pac. Aerospace & Elecs., Inc. v. Taylor*, 295 F. Supp. 2d 1188, 1193-94 (E.D. Wash. 2003) (same); *Pixon Imaging, Inc. v. Empower Techs. Corp.*, 2011 WL 3739529, *2 (S.D. Cal. 2011) (injunction based on potential disclosure of trade secrets pursuant to certain agreements with foreign companies).[4]

---

[4] The last case cited by Javo on this issue is *Advanced Instructional Sys., Inc. v. Competentum USA, Ltd.*, 2015 WL 7575925 (M.D. N.C. 2015), where a contractor gained

## 2. Javo's Alleged Irreparable Injuries Are Speculative.

To justify injunctive relief, there must be evidence of actual injury to support claims of "irreparable" injury. Speculative losses are insufficient. *Goldie's Bookstore, Inc. v. Sup.Ct.*, 739 F.2d 466, 472 (9th Cir. 1984) (findings that plaintiff "would lose goodwill and 'untold' customers" held speculative). A preliminary injunction may not be granted based on a "possibility" of irreparable harm, even if plaintiff demonstrates a strong likelihood of prevailing on the merits (which Javo has not done here). *Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Moreover, the plaintiff must show a "sufficient causal connection" between the alleged injury and the conduct sought to be enjoined such that the injunction would effectively minimize the risk of injury. *Perfect 10, Inc. v. Google, Inc.*, 653 F.3d 976, 982 (9th Cir. 2011); *see also Garcia*, 786 F.3d at 745. Irreparable harm is not presumed simply because the lawsuit involves an alleged violation of intellectual property rights. *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 394 (2006); *Flexible Lifeline Systems, Inc. v. Precision Lift, Inc.*, 654 F.3d 989, 996 (9th Cir. 2011); *Herb Reed Enterprises, LLC v. Florida Entertainment Mgmt., Inc.*, 736 F.3d 1239, 1249 (9th Cir. 2013); *Perfect 10*, 653 F.3d at 979.

In this case and as further detailed in Defendants' concurrently-filed Evidentiary Objections, Javo's evidence of so-called irreparable harm is entirely speculative. The only purported "evidence" of "irreparable harm" submitted by Javo are conclusory statements from Messrs. Anderson and Riley's declarations. For example, Mr. Anderson claims that Javo suffered $50 million in

---

access to the plaintiff's secured server to steal proprietary software code. *Id.* at *1. The opinion states that "at least some of [the proprietary information] has been published publicly[,]" *id.* at *5, but provides no details concerning the extent of information published or the nature of the publication itself. In any case, there is no indication that the apparently limited publication in *Advanced Instructional* was in any way comparable to the alleged disclosure via Defendants' 3+ year-old patent applications.

1    damages ███████████████████████████████████████████████

2    ████████████████████████████████████████████████████████

3    ██████████████████████████.  Anderson Decl. at ¶¶ 19-21.  As a preliminary

4    matter, this purported past harm does not justify a preliminary injunction, which is

5    supposed to prevent **future**, irreparable harm.  In addition, Mr. Anderson does not

6    make any attempt to explain how he calculated the specified damage

7    figure.  Moreover, ███████████████████████████████████████████

8    ██████████████████████████████████████████████.  *See*

9    Anderson Decl. at ¶ 20.

10          Mr. Riley's declaration contains still more unsupported, speculative

11   claims.  Though Mr. Riley claims to be concerned about Defendants making

12   "additional disclosure of Javo's trade secrets," he does not specify what "additional

13   disclosures" he is concerned about or why he believes they may occur.  *See* Riley

14   Decl. at ¶ 14.  Given that Javo contends Defendants already publicly disclosed

15   Javo's supposed trade secrets in published patents/patent applications, it is difficult

16   to conceive of what "additional disclosures" Javo might fear.  In the same vein, Mr.

17   Riley's assertion that Javo will suffer damages based on Defendants' "misuse of

18   Javo's proprietary process to produce a competing product" is entirely

19   speculative.  *Id*.  Among other things, Mr. Riley has not identified any "competing

20   product" that CEV is poised to bring to market, and as reflected in Mr. Eng's

21   declaration, CEV is still ███████ away from beginning production.  And even if

22   Javo *had* identified a competing product set to be released, Javo has not provided

23   any details concerning how that hypothetical "competing product" would impact

24   Javo's business (*e.g.*, which specific Javo product the hypothetical product would

25   compete with, which Javo customers would defect, how much lost profit those

26   defections would cause, etc.).

27          As if Javo's lack of "evidence" of irreparable harm were not enough, its

28   conjecture about past damages and imminent harm **is contradicted** by its

admissions that its revenues have **more than doubled** since the publication of Defendants' patent applications.  Anderson Decl. ¶¶ 8-9.  Given these facts, preliminary injunctive relief is not warranted.

## C.       The Balance Of Equities Favors Defendants.

Before a preliminary injunction may issue, the court must identify the harm that a preliminary injunction might cause the defendant and weigh it against plaintiff's threatened injury.  "[T]he real issue in this regard is the degree of harm that will be suffered by the plaintiff or the defendant if the injunction is **improperly** granted or denied."  *Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 284 (4th Cir. 2002) (emphasis in original); *see Winter*, 555 U.S. at 24 ; *Earth Island Institute v. Carlton*, 626 F.3d 462, 475 (9th Cir. 2010) ("The assignment of weight to particular harms is a matter for district courts to decide").  Where the harm likely to be suffered by defendant substantially outweighs any injury threatened by defendant's conduct, plaintiff must make a stronger showing of a likelihood of success on the merits.  *MacDonald v. Chicago Park Dist.*, 132 F.3d 355, 357 (7th Cir. 1997).

In assessing the relative hardships to each party, the Court must consider the impact the injunction may have on the respective parties.  The relative size and strength of each party may be pertinent to this inquiry.  *Sardi's Restaurant Corp. v. Sardie*, 755 F.2d 719, 726 (9th Cir. 1985) (preliminary injunction against use of "Sardi's" denied because established restaurant less likely to be adversely impacted by identity problem than new restaurant); *Int'l Jensen, Inc. v. Metrosound U.S.A., Inc.*, 4 F.3d 819, 827 (9th Cir. 1993).  In balancing hardships, the Court may consider the potential harm defendant (1) may suffer while the preliminary injunction is in place, and (2) will suffer permanently as a result of the preliminary injunction.  *League of Wilderness Defenders/Blue Mountains Biodiversity Project v. Connaughton*, 752 F.3d 755, 765-66 (9th Cir. 2014).

In this case, the balance of equities strongly favors Defendants.  A preliminary injunction would put CEV, a fledgling start-up, out of business.  Eng. Decl. ¶ 13.  In

1   contrast, Javo, a self-proclaimed established industry leader, will continue as a going

2   concern regardless of whether an injunction is granted.  Javo's witnesses have shown

3   that Javo has only prospered, not suffered, since the patent applications were

4   published in 2016.  Javo's 100% increase in revenues during this time is a testament

5   to what little impact Defendants' patents have had on Javo.  This is yet another reason

6   why a preliminary injunction should not be issued here.

7   **D.**      **An Injunction Is Not In The Public Interest**

8          Javo cannot meet its burden on the public interest prong of the *Winter* test.  555

9   U.S. at 20.  Javo's attempt to enjoin CEV would essentially put CEV out of business

10  and Mr. Corey out of a job, and thus, acts as an effective non-compete.  California

11  has a strong public policy against non-compete agreements.  Cal. Bus. & Prof. Code

12  § 16600 ("Except as provided in this chapter, every contract by which anyone is

13  restrained from engaging in a lawful profession, trade, or business of any kind is to

14  that extent void."); *see also Scott v. Snelling & Snelling, Inc.*., 732 F. Supp. 1034,

15  1042 (N.D. Cal. 1990) ("California courts have repeatedly held that section 16600

16  should be interpreted as broadly as its language reads.") (citing cases).

17         Although California courts recognize that, as an exception to section 16600, a

18  company may use a non-compete with a former employee in a limited fashion where

19  necessary to protect its trade secrets, that is not the case here.  *See Muggill v.*

20  *Reuben H. Donnelley Corp.*, 62 Cal.2d 239, 242 (Cal. 1965).  In particular, Javo

21  cannot show how further disclosure of any alleged trade secrets would occur by

22  allowing CEV and Corey to continue to do business.  In other words, to the extent

23  Javo's allegations were true and CEV had disclosed such alleged trade secrets in its

24  published patents (it did not), those disclosures were made over three years ago and

25  an injunction would have no effect, other than to eliminate one of Javo's potential

26  competitors.  Javo should not be permitted to use a preliminary injunction procedure

27  as an attempt to enforce a non-compete—something that has been explicitly rejected

28  by California courts and statute as violating public policy.

**E.    A Significant Bond Is Necessary.**

No party may be granted a preliminary injunction without first posting security "in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. Proc. 65(c). "[A] party has been wrongfully enjoined within the meaning of Rule 65(c) when it turns out the party enjoined had the right all along to do what it was enjoined from doing." *Nintendo of America, Inc. v. Lewis Galoob Toys, Inc.*, 16 F.3d 1032, 1036 (9th Cir. 1994)   The purpose of the bond requirement is threefold: (1) to discourage the moving party from seeking preliminary injunctive relief to which it is not entitled; (2) to assure the court that if it errs in granting such relief the moving party rather than the wrongfully-enjoined party will bear the cost of the error; and (3) to provide a wrongfully-enjoined party a source from which it may readily collect damages without further litigation.  *Id*. at 1037.

In this case, imposition of the preliminary injunction sought by Javo will effectively shutter Defendants' business pending resolution of this lawsuit.  Based on Defendants' current business plans and an estimated 18 months to bring this case to trial, a preliminary injunction will cost Defendants the value of CEV, or ██████ ████████████████████████████████████████████████████ ████████████████████████████).  Eng Decl. at ¶¶ 13, 15, Ex. 1. Accordingly, if the Court is inclined to grant Javo's Motion, Javo should be required to post a bond equal to that amount.

**V.    CONCLUSION**

Javo's Motion is a transparent attempt to shut down a potential competitor with an extraction technology process advantage.  The failure to meet one of the prongs of the *Winter* test mandates denial of preliminary injunctive relief.  **Javo has failed to meet all four**.  Defendants respectfully request that the Court deny Javo's Motion.

1  Dated:  January 9, 2020

2                              SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

3

4                              By        /s/ John A. Yacovelle
5                                        JOHN A. YACOVELLE
6                                        MARISA B. MILLER
                                         KRISTIN P. HOUSH
7                                        JESSE SALEN
8
                                 Attorneys for Defendants/Counter-Claimant
9                                   CALIFORNIA EXTRACTION
10                              VENTURES, INC. AND STEPHEN COREY

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28