UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAVO BEVERAGE CO., INC.,<br><br>         Plaintiff,<br><br>v.<br><br>CALIFORNIA EXTRACTION VENTURES, INC. AND STEPHEN COREY,<br><br>         Defendants.<br><br>AND RELATED COUNTERCLAIMS | Case No.: 19-CV-1859-CAB-WVG<br><br>**ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION**<br><br>**[Doc. No. 20]** |

  On September 26, 2019, Plaintiff Javo Beverage Co., Inc. ("Javo") filed a complaint alleging misappropriation of trade secrets, intentional interference with contractual relations, and seeking declaratory judgment of ownership of the patents in issue against Defendants California Extraction Ventures, Inc. ("CEV") and Stephen Corey (collectively "Defendants"). [Doc. No. 1.] Javo primarily asserts, among other things, that Defendant Corey's filing of the provisional patent application, U.S. Pat. App. No. 62/134,497 (the "'497 Provisional Application"), in connection with his new business at CEV, disclosed Javo's confidential and trade secret information that Defendant Corey researched and

invented during his time as a co-founder and employee at Javo.

On November 14, 2019, Javo filed a motion for preliminary injunction. [Doc. No. 20.] Javo seeks to prohibit Defendants from further using Javo's trade secrets and other confidential information in connection with: CEV's process or selling any products derived from such information; raising money from investors; filing any new patent applications; and taking any steps to license or grant to third parties any rights in any issued patents or pending patent applications claiming priority to the '497 Provisional Application. [*Id.* at 2.[1]] A hearing was held on the motion on January 23, 2020. [Doc. No. 57.] For the reasons set forth on the record at the hearing and as discussed below, the motion is denied.

## I. BACKGROUND

As set forth in the Court's previous Order denying the Defendants' motion to dismiss, [Doc. No. 29], the factual background of this case is summarized as follows:

Since 1993, Javo has been engaged in the business of coffee, tea, and botanical extracts, ingredients, and flavor systems, which are sold across the country. [Doc. No. 1 at ¶ 13.] Javo researched and developed a proprietary process for its manufacture of extracts of coffee, tea, and other botanicals which includes, among other things, introducing purified, deionized water within particular temperature and pressure ranges into a proprietary columnar extraction vessel containing an extractable material (e.g., roasted coffee) that has been ground into multiple particle sizes and specially packed into the vessel into which deionized water is introduced, eventually resulting in a pure, concentrated extract flowing from the top of the vessel. [Doc. No. 1 at ¶¶ 1, 14.] Javo alleges it has continually maintained this process as a proprietary trade secret within the industry. [*Id.*] Defendant Corey was an original co-founder of Javo and its predecessors, and a principal inventor of Javo's trade secret extraction process. [*Id.* at ¶ 2.] During his time as an employee and before his departure from the company, Corey assigned all rights

---

[1] Document numbers and page references are to those assigned by CM/ECF for the docket entry.

and interests he may have had in the proprietary process to Javo through his Employment Agreement ("EA") and the associated Employee Confidentiality and Invention Assignment Agreement ("CIAA"), executed on December 5, 2001.  [*Id*. at ¶ 3.]

On January 24, 2011, Javo commenced a Chapter 11 bankruptcy proceeding to, among other things, restructure its debt.  [*Id*. at ¶ 42.]  In or about August 2011, Javo terminated Corey without cause because of the elimination of his position due to the restructuring under the bankruptcy plan.  [*Id*. at ¶ 47.]

Kurt Toneys, a former President/CEO of one of Javo's predecessors, is now involved with Defendant CEV as its current CEO, alongside Corey who is CEV's current President.  [*Id*. at ¶ 7, 22.]  Javo alleges that Corey and CEV misused Javo's trade secrets and other confidential information to benefit CEV, constituting a breach of Corey's EA and CIAA with Javo, when Corey improperly disclosed the information in publicly-available patent applications he filed with the United States Patent and Trademark Office and assigned to CEV.  [*Id*. at ¶¶ 15, 18.]  CEV offered and sold securities to fund, at least in part, the preparation and filing of Corey's provisional patent application, the '497 Provisional Application, which Corey filed on March 17, 2015.  [*Id*. at ¶ 49–50.]  The '497 Provisional Application lists Corey as the inventor and contains terminology frequently used by Corey at Javo and refers to "Javo" processes in certain figures.  [*Id*. at ¶ 51.]  Thus far, Corey has obtained seven issued patents and has seven additional published patent applications all claiming priority to Corey's '497 Provisional Application which have all been assigned to CEV.  [*Id*. at ¶ 65.]  Javo alleges that the issued patents and published patent applications disclose material that substantially describes and overlaps with the proprietary confidential information and trade secrets of Javo, constituting a violation of Corey's obligations to refrain from disclosing confidential information of Javo and to transfer all interest in any inventions to Javo.  [*Id*. at ¶ 66.]

On May 30, 2019, Javo demanded, among other things, that Defendants immediately assign rights in the patents and applications claiming priority to the '497 Provisional Application.  [*Id*. at ¶ 68.]  Javo then filed its complaint on September 26, 2019, and its

3

motion for preliminary injunction on November 14, 2019.[2]

## II. LEGAL STANDARD

A preliminary injunction is "an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008); *see Earth Island Inst. v. Carlton*, 626 F.3d 462, 469 (9th Cir. 2010) ("[P]laintiffs seeking a preliminary injunction face a difficult task in proving that they are entitled to this 'extraordinary remedy.'") (quoting *Winter*, 555 U.S. at 24). It is "a device for preserving the status quo and preventing the irreparable loss of rights before judgment." *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984). "The grant or denial of a motion for a preliminary injunction lies within the discretion of the district court." *Johnson v. California State Bd. of Accountancy*, 72 F.3d 1427, 1429 (9th Cir. 1995).

In *Winter*, the Supreme Court held that a plaintiff seeking a preliminary injunction must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter*, 555 U.S. at 20. The Ninth Circuit balances these "Winter factors" using a "sliding scale" approach, where "a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). However, *Winter* "requires the plaintiff to make a showing on all four prongs." *Id.* at 1135.

---

[2] Both parties filed evidentiary objections to declarations filed by the other, arguing that certain assertions are inadmissible. But "the rules of evidence do not apply strictly to preliminary injunction proceedings" because of "the urgency of obtaining a preliminary injunction at a point when there has been limited factual development." *Herb Reed Enters., LLC v. Florida Entm't Mgmt., Inc.*, 736 F.3d 1239, 1250 n.5 (9th Cir. 2013). A trial court may give "inadmissible evidence some weight, when to do so serves the purpose of preventing irreparable harm before trial." *Flynt Distrib. Co. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984); *see also Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1363 (9th Cir. 1988) ("It was within the discretion of the district court to accept . . . hearsay for purposes of deciding whether to issue the preliminary injunction."). Accordingly, the Court **OVERRULES** all evidentiary objections. [Doc. No. 45-5; Doc. No. 54.]

## III. DISCUSSION

On the record before it the Court is not persuaded, at least for the purposes of the instant motion, that Javo has sufficiently established a likelihood of success on the merits or any of the remaining *Winter* factors to prevail on its motion for preliminary injunction.

### A. Likelihood of Success on the Merits

To state a claim for misappropriation of trade secrets under California's Uniform Trade Secrets Act ("CUTSA"), a plaintiff must allege: (1) the existence and ownership of a trade secret, and (2) misappropriation of the trade secret. *Pellerin v. Honeywell Int'l, Inc.*, 877 F. Supp. 2d 983, 988 (S.D. Cal. 2012) (citation omitted). A claim for misappropriation under the Defend Trade Secrets Act ("DTSA") has substantially similar elements. *See* 18 U.S.C. § 1836.

#### i. Trade Secret

In establishing the existence of a trade secret, "[a] plaintiff need not 'spell out the details of the trade secret,'" *Autodesk, Inc. v. ZWCAD Software Co.*, No. 5:14-cv-1409-EJD, 2015 WL 2265479, at *5 (N.D. Cal. May 13, 2015) (citation omitted), but must "describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies." *Pellerin*, 877 F. Supp. 2d at 988 (quoting *Diodes, Inc. v. Franzen*, 260 Cal. App. 2d 244, 253 (1968)). Both the DTSA and CUTSA define a "trade secret" as:

> all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if-
> (A) the owner thereof has taken reasonable measures to keep such information secret; and

(B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information;

18 U.S.C. § 1839(3); *see also* Cal. Civ. Code § 3426.1(d).

Here, Javo describes its proprietary extraction vessel and process as its trade secret. Javo contends its process derives independent economic value and is subject to rigorous measures to prevent its disclosure. Javo also claims that its process was not generally known and that Corey and Toneys were aware of this from their time working at Javo. Javo details the steps and parameters of its proprietary extraction vessel and process in a declaration by its Vice President, Brad Petersmeyer. [Doc. No. 20-2; Sealed Doc. No. 22 at ¶¶ 29—49].

Defendants contend that the apparatus and methods for coffee bean extraction disclosed in Corey's U.S. provisional patent application no. 62/134,497, dated March 17, 2015 [Doc. No. 1-3] and U.S. Patent Application Publication, No. 2016/0270586, published September 22, 2016 [Doc. No. 7-3] do not reveal Javo's alleged trade secrets. They deny Corey and CEV have misappropriated Javo's proprietary vessel or methods.

### ii.   Misappropriation

Misappropriation is defined as:

(1) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

(2) Disclosure or use of a trade secret of another without express or implied consent by a person who:

(A) Used improper means to acquire knowledge of the trade secret; or

(B) At the time of disclosure or use, knew or had reason to know that his or her knowledge of the trade secret was:

(i) Derived from or through a person who had utilized improper means to acquire it;

|   |   |
|---|---|
| 1 | (ii) Acquired under circumstances giving rise to a duty to maintain its |
| 2 | secrecy or limit its use; |
| 3 | (iii) Derived from or through a person who owed a duty to the person |
| 4 | seeking relief to maintain its secrecy or limit its use; or |
| 5 | (C) Before a material change of his or her position knew or had reason to |
| 6 | know that it was a trade secret and that knowledge of it had been acquired by |
| 7 | accident or by mistake. |

Cal. Civ. Code § 3426.1(b). Misappropriation under the DTSA is nearly identical. *See* 18 U.S.C § 1839(5).

Javo alleges that Corey and CEV have misappropriated Javo's trade secrets by taking Javo's proprietary extraction process, publicly disclosing it, and falsely claiming it as their own–first by filing patent applications and now by plotting to unfairly compete with a new coffee extract product. Javo further alleges that Corey assigned to Javo all rights and interest he may have had in Javo's extraction process through his EA and the associated CIAA. Defendants contend that Javo's motion is devoid of any evidence explaining how Javo's purportedly trade secret extraction process overlaps with the processes described in Defendants' patents. Defendants argue that Javo makes sweeping, conclusory allegations regarding "substantial similarities" between Javo's process and Defendants' patents but Javo has failed to substantiate these claims.

The Corey applications are for an apparatus and methods for coffee bean extraction. A comparison of the disclosures in the patent applications and accompanying figures, to the asserted proprietary information set forth in Javo's supporting declaration [Doc. No. 22, at ¶¶ 29—49] does not persuade the Court that the asserted proprietary information was disclosed. For example, the specific ratio aspect of the Javo extraction vessels set forth in ¶ 30 of the Petersmeyer declaration [*id*.] is not disclosed in the patent applications. [*See* Doc. 1-3 at 9—11; Doc. 7-3 at 19.] The configurations of the extraction column caps are distinctly different. [*See* Doc. No. 22, Ex. 6 and Doc No. 7-3, Fig. 1.]

Although the Corey applications employ the term "grind matrix," the specific grind

combination described as the Javo proprietary method at ¶¶ 33—34 of the Petersmeyer declaration [Doc. No. 22] does not correspond to the disclosure regarding coffee bean preparation in the patent applications.  [*See* Doc No. 7-3 at 33.]  The additional process steps identified by Javo as its trade secrets further fail to correspond to the patent disclosures.  At this time the Court is not persuaded that Javo has established a likelihood of success in proving that the proprietary aspects of Javo's extraction vessel and process were misappropriated by Corey and CEV and disclosed in the Corey patent applications.

Javo's remaining claims for intentional interference and declaratory judgment of patent ownership are largely based on the same set of facts underlying its trade secret misappropriation claim.  For the reasons set forth above, Javo has similarly failed to sufficiently establish a likelihood of success on the merits of either of these claims.

### B. Irreparable Harm

Even if Javo had established a likelihood of success on the merits, its motion would still fail because it has not established irreparable harm.  It is well established that monetary injury is not "irreparable harm."  *Los Angeles Memorial Coliseum Comm'n v. NFL*, 634 F.2d 1197, 1202 (9th Cir. 1980) (citing *Sampson v. Murray*, 415 U.S. 61, 88 (1974)).  The fact that adequate compensatory damages will be available in the ordinary course of litigation weighs heavily against a claim of "irreparable" harm.  *Sampson*, 415 U.S. at 90.  Moreover, delay in seeking a preliminary injunction weighs against a finding of irreparable harm.  *See Garcia v. Google, Inc.*, 786 F.3d 733, 746 (9th Cir. 2015) (holding that the district court did not abuse its discretion by finding a month's long delay in seeking an injunction undercut her claim of irreparable harm); *Oakland Tribune, Inc. v. Chronicle Publ'g Co.*, 762 F.2d 1374, 1377 (9th Cir. 1985) ("Plaintiff's long delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm."); *Lydo Enters., Inc. v. City of Las Vegas*, 745 F.2d 1211, 1213 (9th Cir. 1984) ("A delay in seeking a preliminary injunction is a factor to be considered in weighing the propriety of relief").

Here, the gravamen of Javo's complaint is that Corey misappropriated and publicly disclosed its confidential trade secrets in the '497 Provisional Application.  According to

Javo's complaint, Javo learned of the alleged misappropriation in May 2019. However, Javo did not file its complaint until September 26, 2019, and then further delayed moving for the preliminary injunction until November 14, 2019. Javo's delay alone weighs heavily against a finding of irreparable harm. Javo argues that it will suffer irreparable harm if a competitor like CEV is permitted to wrongfully take and misuse Javo's proprietary information to manufacture competing products. The issue with this argument, as detailed above, is that the Court is not convinced on the record before it that CEV has taken or misused Javo's trade secrets. Defendants have also shown that contrary to Javo's assertions, CEV is not close to production as construction of its facility is not completed, and it is still in the process of seeking regulatory approvals. Furthermore, Javo's conclusory assertion that there is a risk of further evisceration of Javo's trade secrets through additional disclosure is unavailing and speculative as Javo has not demonstrated any additional confidential or trade secret information that has yet to be disclosed.

More importantly, Javo has also failed to demonstrate that monetary damages would be inadequate. Javo primarily contends that Defendants' wrongdoing has decreased the value of Javo and interfered with recent efforts to sell the company. Javo has not established, and the Court is not convinced, that adequate monetary damages following a trial would be insufficient to redress Javo's alleged injuries which appear to consist of purely economic harm. If Javo is successful at trial it can also seek declaratory ownership of Defendants' patents as alleged. Further, Javo's own witnesses have stated that its revenues have continually increased in recent years. At this point in the litigation, in connection with the failure to establish a likelihood of success on the merits that Defendants indeed disclosed Javo's trade secrets, the Court is unwilling to presume a likelihood of irreparable harm. Accordingly, Javo has not established that it would suffer irreparable harm in the absence of a preliminary injunction.

### C. Balance of Equities

To qualify for injunctive relief, Javo must establish that "the balance of equities tips in [its] favor." *Winter*, 555 U.S. at 20. A court has the "duty . . . to balance the interests

of all parties and weigh the damage to each." *L.A. Mem'l Coliseum Comm'n*, 634 F.2d at 1203.

Here, as set forth by Defendants' papers and at the hearing, the Court is persuaded that in weighing the potential damage to each, the balance of equities tips in the Defendants' favor. Granting Javo's preliminary injunction would effectively shut down Defendants' business by forcing Defendants to cease all operations moving forward. While Javo contends that the Defendants' actions have decreased the value of Javo and interfered with recent efforts to sell the company, Javo has failed to sufficiently show that it faces any immediate and significant threat to continue doing business or continue with its efforts to sell the company. Accordingly, Javo has failed to establish that the balance of equities tips in its favor.

### D. Public Interest

Where, as here, an injunction's reach is narrow and affects only the parties without impacting non-parties, "the public interest will be at most a neutral factor in the analysis rather than one that favors granting or denying the preliminary injunction." *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1139 (9th Cir. 2009) (internal quotes and brackets omitted). Accordingly, this factor does not weigh in favor of granting or denying Javo's motion.

### IV. CONCLUSION

For the foregoing reasons, Javo's motion for preliminary injunction is **DENIED**.

It is **SO ORDERED**.

Dated: February 24, 2020

Hon. Cathy Ann Bencivengo
United States District Judge

10

19-CV-1859-CAB-WVG