SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
   A Limited Liability Partnership
   Including Professional Corporations
JOHN A. YACOVELLE, Cal. Bar No. 131781
   jyacovelle@sheppardmullin.com
MARISA B. MILLER, Cal. Bar No. 270860
   mmiller@sheppardmullin.com
KRISTIN P. HOUSH, Cal. Bar No. 286651
   khoush@sheppardmullin.com
JESSE SALEN, Cal. Bar No. 292043
   jsalen@sheppardmullin.com
12275 El Camino Real, Suite 200
San Diego, California 92130-4092
Telephone:   858.720.8900
Facsimile:   858.509.3691

Attorneys for Defendants/Counter-Claimant
CALIFORNIA EXTRACTION
VENTURES, INC.; STEPHEN COREY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAVO BEVERAGE CO., INC., | Case No. 3:19-CV-01859-CAB-WVG |
| Plaintiff, | **DEFENDANTS CALIFORNIA EXTRACTION VENTURES, INC. AND STEPHEN COREY'S BRIEFING REGARDING DISCOVERY DISPUTES** |
| v. | |
| CALIFORNIA EXTRACTION VENTURES, INC. AND STEPHEN COREY, | |
| Defendants. | Ctrm.:   4C (4th Floor) The Hon. Cathy Ann Bencivengo |
| CALIFORNIA EXTRACTION VENTURES, INC., | Complaint Filed:   September 26, 2019 Trial Date:   TBD |
| Counter-Claimant, | |
| v. | |
| JAVO BEVERAGE CO., INC., | |
| Counterclaim-Defendant. | |

# **TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ...................................................................................... 1

II.   ARGUMENT .......................................................................................... 3

    A.   The Parties' Disputes Relating To The ESI Order .................................. 3

        1.   The Parties Should Produce OrgFolder Metadata ....................... 4

            a.   FRCP 34 Requires the Production of OrgFolder Metadata ...................................................... 4

            b.   The OrgFolder Metadata Is Highly Relevant .................... 5

            c.   Javo's Arguments Against Producing OrgFolder Metadata Are Meritless ...................................... 6

        2.   The ESI Order Should Not Relieve The Parties of Their Obligation to Preserve Relevant Evidence ................................... 8

    B.   The Parties' Disputes Relating To The SPO ....................................... 10

        1.   Neither William Marshall Nor Drew Koning Should Be Permitted to Review CEV/Corey's OAEO Material ................. 11

        2.   CEV/Corey's Outside Counsel Should Not Be Prohibited From Advising On Patent Acquisitions ..................................... 14

III.   CONCLUSION ...................................................................................... 17

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3
<u>Federal Cases</u>

4
*Adobe Sys. Inc. v. Davachi*

5
    2011 WL 2610170 (N.D. Cal. July 1, 2011) .................................................. 12, 13

6
*Applied Signal Tech., Inc. v. Emerging Markets Commc'ns, Inc.*
    2011 WL 197811 (N.D. Cal. Jan. 20, 2011) ......................................................... 15

7

8
*Arista Records LLC v. Usenet.com, Inc.*
    608 F. Supp. 2d 409 (S.D.N.Y. 2009) .................................................................. 10

9

10
*Brown Bag Software v. Symantec Corp.*
    960 F.2d 1465 (9th Cir. 1992) ................................................................... 12, 13, 14

11

12
*CardioNet, LLC v. InfoBionic, Inc.*
    2015 WL 13696787 (D. Mass. Dec. 23, 2015) .................................................... 17

13

14
*City of Colton v. Am. Promotional Events, Inc.*
    277 F.R.D. 578 (C.D. Cal. 2011) ............................................................................ 5

15

16
*Columbia Pictures, Inc. v. Bunnell*
    245 F.R.D. 443 (C.D. Cal. 2007) ............................................................................ 9

17

18
*In re Deutsche Bank Trust Co.*
    605 F.3d 1373 (Fed. Cir. 2010) ............................................................................ 15

19

20
*EPL Holdings, LLC v. Apple Inc.*
    2013 WL 2181584 (N.D. Cal. May 20, 2013) ..................................................... 16

21
*Intel Corp. v. VIA Tech, Inc.*
    198 F.R.D. 525 (N.D. Cal 2000) ......................................................................... 13

22

23
*Jenam Tech, LLC v. Samsung Elecs. Am., Inc.*
    2020 WL 757097 (E.D. Tex. Feb. 4, 2020) ......................................................... 16

24

25
*Pinterest, Inc. v. Pintrips, Inc.*
    2014 WL 5364263 (N.D. Cal. Oct. 21, 2014) ................................................ 12, 13

26
*Rothschild Storage Retrieval Innovations, LLC v. Motorola Mobility, LLC*
    2015 WL 12860290 (S.D. Fla. Feb. 25, 2015) .................................................... 17

27

28

*S2 Automation LLC v. Micron Tech., Inc.*
    2012 WL 3656454 (D.N.M. Aug. 9, 2012 ........................................................... 8

*Starline Windows Inc. v. Quanex Bldg. Prod. Corp.*
    2016 WL 4485568 (S.D. Cal. Aug. 19, 2016) ................................................... 10

*Teledyne Instruments, Inc. v. Cairns*
    2013 WL 5781274 (M.D. Fla. Oct. 25, 2013) ................................................. 4, 5

*U.S. Steel Corp. v. United States*
    730 F.2d 1465 (Fed. Cir. 1984) ............................................................... 12, 14

*Unwired Planet LLC v. Apple Inc.*
    2013 WL 1501489 (D. Nev. Apr. 11, 2013) .................................................... 17

*Williams v. Sprint/United Mgmt. Co.*
    230 F.R.D. 640 (D. Kan. 2005) ..................................................................... 8

Federal: Statutes, Rules, Regulations, Constitutional Provisions

18 U.S.C. § 1839(3)(A) ...................................................................................... 6

Federal Rules of Civil Procedure

    Rule 26(b) ..................................................................................................... 5

    Rule 26(b)(5) ................................................................................................ 8

    Rule 26(c) ................................................................................................... 12

    Rule 34 ..................................................................................................... 4, 5

    Rule 34(b)(2)(E)(i) ....................................................................................... 4

    Rule 37(e) .......................................................................................... 4, 8, 10

State: Statutes, Rules, Regulations, Constitutional Provisions

California Civil Code
    § 3426.1(d)(2) .............................................................................................. 6

-iii-

<u>Other Authorities</u>

*The Sedona Conference Commentary on Ethics & Metadata*, 14
    SEDONA CONF. J. 169, 184 (2013).........................................................................5, 8

*The Sedona Principles, Third Edition: Best Practices,*
    *Recommendations & Principles for Addressing Electronic*
    *Document Production*, 19 SEDONA CONF. J. 1, 212 (2018) ....................................5

Defendant and Counter-Claimant California Extraction Ventures, Inc. ("CEV") and Defendant Stephen Corey ("Corey") (together, the "Defendants") hereby submit their briefing regarding discovery disputes pursuant to the Honorable William V. Gallo's April 1, 2020 order (Dkt. 70).

## I.   **INTRODUCTION**

This lawsuit is Plaintiff/Counter-Defendant Javo Beverage Co.'s ("Javo") last-ditch effort to steal the intellectual property of Defendant/Counter-Claimant California Extraction Ventures, Inc. ("CEV") and Defendant Stephen Corey ("Corey") and prevent a competitor with cutting-edge technology from putting a superior product on the market.  All four of Javo's claims in this lawsuit are based on (incorrect) allegations that CEV/Corey disclosed Javo's confidential extraction process in CEV/Corey's Catalyzing Pressure Wave ("CPW") patent applications and patents, which cover certain technology and processes for extracting coffee, tea, and other botanicals.

Javo will not succeed on these claims for at least the following reasons:  (1) Javo cannot demonstrate that its extraction process is a trade secret; (2) Javo cannot show that CEV or Corey disclosed either (a) Javo's extraction process or (b) the individual parameters within that process to anyone; (3) CEV does not, in practice, use the self-proclaimed key parameters of Javo's process; (4) Javo cannot establish damages; (5) Javo's claims are barred by the applicable statutes of limitation; and (6) Javo is infringing on CEV and Corey's patents.

Indeed, the Court recently denied Javo's preliminary injunction motion and held that Javo is <u>not</u> likely to succeed on the merits of any of its four claims.  (Dkt.  67 at 8 ("[T]he Court is not persuaded that Javo has established a likelihood of success in proving that the proprietary aspects of Javo's extraction vessel and process were misappropriated by Corey and CEV and disclosed in the Corey patent applications. . . . Javo has similarly failed to sufficiently establish a likelihood of success on the merits of [its intentional interference and declaratory judgment] claims.").)

The parties are now beginning to conduct discovery, which will involve the production of electronically stored information ("ESI") necessitating the entry of an order governing the production of ESI (an "ESI Order"), and confidential data necessitating the entry of a stipulated protective order (an "SPO"). The parties have met and conferred extensively over the past six months on the terms of an ESI Order and an SPO, but have reached an impasse on four discrete issues necessitating judicial intervention. (Declaration of Kristin Housh ("Housh Decl.") at ¶¶ 2-29, Exs. 1-7.)

With respect to the ESI Order, the questions presented for the Court's consideration are as follows:

1. Should the parties be required to include the OrgFolder metadata field (which indicates the original file path where the custodian maintained the record) in connection with their production of ESI? CEV and Corey contend that the parties <u>should</u> be required to include this metadata field to the extent it exists. Javo contends that they <u>should not</u> be required to include it.

2. Should the ESI Order contain a provision that states that the parties "need not preserve" ephemeral or deleted data, even if that ephemeral or deleted data is relevant to this litigation? Javo contends that the ESI Order <u>should</u> contain such a provision. CEV and Corey contend that the ESI Order <u>should not</u> contain such a provision.

With respect to the SPO, the questions presented for the Court's consideration are as follows:

1. Should Javo's outside counsel William Marshall and Drew Koning (who are not counsel of record in this litigation, and one of whom is a prior Javo employee and a percipient witness in this case) be permitted to review material that CEV and/or Corey designate as Outside Attorneys' Eyes Only ("OAEO")? Javo contends that Messrs. Marshall and Koning <u>should</u> be permitted to review CEV and/or Corey's OAEO material.

CEV and Corey contend that Messrs. Marshall and Koning <u>should not</u> be permitted to review their OAEO material.

2.  Should CEV and Corey's outside counsel of record be prohibited from being "involved in" acquiring patents relating to the coffee extraction technology set forth in CEV and Corey's existing patent portfolio for a period of two years?   Javo contends that CEV and Corey's outside counsel of record should be prohibited from being "involved in" patent acquisitions.   CEV and Corey contend that their outside counsel of record should not be prohibited from being "involved in" patent acquisitions.[1]   (Housh Decl. at ¶ 29, Ex. 4.)

## II.   **ARGUMENT**

### A.   **The Parties' Disputes Relating To The ESI Order**

The parties are at an impasse with respect to two issues in connection with the ESI Order: (1) whether or not the OrgFolder metadata field should be produced, and (2) whether or not the ESI Order should contain a provision stating that the parties "need not preserve" ephemeral and deleted data.

As set forth below, the Court should grant CEV and Corey's request to include a provision in the ESI Order requiring the parties to include the OrgFolder metadata field in connection with their production of ESI, because it is required under Federal Rule of Civil Procedure ("FRCP") 34, and the location and manner in which Javo stored records are highly relevant in this case, where Javo must prove that it took reasonable measures to maintain the secrecy of its alleged trade secrets.

And, the Court should reject Javo's request to include a provision in the ESI Order stating that the parties "need not preserve" ephemeral and deleted data, which

---

[1] The parties were also discussing the possibility of entering into an interim protective order to allow third party discovery to proceed while they continued to meet and confer about these issues.  Because the parties' disputes are now before the Court, this issue is moot.  (Housh Decl. at ¶¶ 9, 14, Ex. 4.)

1  would improperly relieve the parties of their preservation obligations with respect to
2  this type of data and would effectively sanction the spoliation of evidence in
3  contravention of FRCP 37(e).

**1.**     **The Parties Should Produce OrgFolder Metadata**

5  The OrgFolder metadata field indicates the original file path where the
6  custodian maintained the record in question during the ordinary course of business.
7  (Declaration of Lauren Doucette ("Doucette Decl.") at ¶¶ 5, 7.)   For example,
8  hypothetically, if a party were to collect records maintained in a folder called
9  "Stephen Corey" on Employee A's desktop, the OrgFolder metadata field would
10  indicate "C:\\users\EmployeeA\desktop\Stephen Corey."  (*Id.*)  This field should be
11  included in the list of metadata fields to be included in connection with the parties'
12  production of ESI in this litigation, to the extent that it exists.  (Housh Decl., Ex. 7 at
13  § 3(d).)

***a.***     ***FRCP 34 Requires the Production of OrgFolder Metadata***

15  FRCP 34 requires parties to produce their ESI with the accompanying
16  OrgFolder metadata intact.  FRCP 34(b)(2)(E)(i) provides that, absent an agreement
17  between the parties or a court order, "[a] party must produce documents as they are
18  kept in the usual course of business or must organize and label them to correspond to
19  the categories in the request."  Here, the parties are agreeing, through the ESI Order,
20  to produce their ESI as it is kept in the usual course of business (i.e., in load files with
21  accompanying metadata).  (Housh Decl., Ex. 7 at § 3.)  "Production 'as kept in the
22  ordinary course of business' generally requires turning over electronic documents in
23  the format in which they are kept on the user's hard drive or other storage device."
24  *Teledyne Instruments, Inc. v. Cairns*, No. 6:12-CV-854-ORL-28, 2013 WL 5781274,
25  at *9 (M.D. Fla. Oct. 25, 2013).  "A file that is converted to another format solely for
26  production, or for which the application metadata has been scrubbed or altered, is not
27  produced as kept in the ordinary course of business."  *Id.*; (Ex. 8 (*The Sedona*
28  *Principles, Third Edition: Best Practices, Recommendations & Principles for*

*Addressing Electronic Document Production*, 19 SEDONA CONF. J. 1, 212 (2018) ("[S]tripping metadata and embedded data from files such as spreadsheets can substantially impair the functionality of the file and the accuracy of the production as a fair representation of the file as kept and used in the ordinary course of business.")). This means that a party must produce any records that were kept on a user's hard drive or other storage device with the accompanying metadata (including OrgFolder metadata) intact.

Moreover, a party must demonstrate that it has produced its ESI "in the usual course" pursuant to FRCP 34 by "revealing information about **where the documents were maintained**, who maintained them, and whether the documents came from one single source or file or from multiple sources or files." *City of Colton v. Am. Promotional Events, Inc.*, 277 F.R.D. 578, 585 (C.D. Cal. 2011) (emphasis added); *see also Teledyne Instruments, Inc.*, 2013 WL 5781274, at *10 ("[T]he producing party must provide information about where the documents are kept and how they are organized."). "For documents stored on a computer or external storage device, this means providing system metadata indicating at least the ***file name and path*** for produced files." *Teledyne Instruments, Inc.*, 2013 WL 5781274, at *10. The parties must therefore produce their ESI with the accompanying OrgFolder metadata field, which reflects the file path and location of where the records were stored, in order to demonstrate that they have produced their records "in the usual course of business" in compliance with FRCP 34.

### b.    The OrgFolder Metadata Is Highly Relevant

Not only must OrgFolder metadata be produced pursuant to FRCP 34, it also must be produced because it is highly relevant in this litigation. Under FRCP 26(b), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." "This includes metadata." (*See* Ex. 9 (*The Sedona Conference Commentary on Ethics & Metadata*, 14 SEDONA CONF. J. 169, 184 (2013).)

OrgFolder metadata is particularly relevant in this trade secret misappropriation case where one of the key questions is whether Javo took reasonable measures "to maintain [the] secrecy" of its alleged trade secrets. *See* Cal. Civ. Code § 3426.1(d)(2) (defining a "trade secret" under the CUTSA as information that "derives independent economic value, actual or potential, from not being generally known" and is the "subject of efforts that are reasonable under the circumstances to maintain its secrecy"; 18 U.S.C. § 1839(3)(A) (defining a "trade secret" under the DTSA as information that "the owner thereof has taken reasonable measures to keep . . . secret" and "derives independent economic value, actual or potential, from now being generally known"); (Doucette Decl. at ¶ 7.)

### c.   *Javo's Arguments Against Producing OrgFolder Metadata Are Meritless*

Despite the plain relevance of the OrgFolder metadata, Javo has advanced four arguments as to why it should not be produced:  (1) it "call[s] for an individual determination on a document-by-document basis, and therefore subject[s] Javo to undue burden and expense," (2) it "does not always exist (especially for old files)"; (3) it "may be misleading when it does exist to the extent it does not reflect where a Document currently resides, or where a Document resided at a time relevant to this litigation"; and (4) "[i]t may also indirectly reveal attorney-client communications and/or attorney work product, which will require us to review this metadata field on a document-by-document basis."  (Housh Decl. at ¶ 25, Exs. 5, 6.)  None of these arguments hold water.

First, producing the OrgFolder metadata field will not place any additional burden on the parties.  The OrgFolder metadata field is ***automatically populated*** when the record is collected in a forensically sound manner.  (Doucette Decl. ¶¶ 8-9, 12.) Contrary to Javo's contention, producing this metadata does not require the manual entry of information or any "document-by-document" determination.  (*Id*.)  The parties have already agreed to produce ESI with accompanying metadata.  (Housh

Decl., Ex. 7 at § 3(d).)  Thus, including the OrgFolder field in the list of metadata fields that must be produced (to the extent it exists) will not place any additional burden on the parties.  (Doucette Decl. at ¶¶ 8-9, 12.)

Second, contrary to Javo's contention, the OrgFolder metadata field exists and is available in almost all cases, even if the files are relatively "old."[2]  (Doucette Decl. at ¶ 11.)  The only circumstance in which the Orgfolder field would not be available is if the producing party (improperly) cherry-picked a file or handful of files from a subfolder, instead of collecting the entire subfolder itself.  (*Id.* at ¶ 10.)  As long as the parties collect their respective records in a forensically sound manner—as they are required to do to—then there should be no issues with providing the OrgFolder metadata.  (*Id.* at ¶ 9.)

Third, the OrgFolder field will accurately reflect where a document resided at the time it was collected.  (Doucette Decl. ¶¶ 5, 9, 12.)  Javo's speculation that the OrgFolder field "may be misleading" is therefore unfounded to the extent that Javo has collected its records in a forensically sound manner.  (*Id.* at ¶¶ 9, 10, 12.)  Javo's speculation also does not justify excluding this relevant metadata field altogether.  To the extent Javo believes that the OrgFolder metadata field for a particular document or set of documents is "misleading," it is free to make that argument during the course of this litigation.

---

[2] Javo's contention that all of the relevant records in this case are "old" (i.e., from prior to 2011) is wrong.  (Housh Decl., Ex. 6.)  CEV has asserted a patent infringement counterclaim that involves facts and records that extend to the present time.  (Dkt. 38.)  Moreover, CEV and Corey have asserted a statute of limitations defense that puts the timing of Javo's alleged "discovery" of the purported trade secret misappropriation squarely at issue.  (Dkt. 7, 37.)  Javo contends that it did not "discover" the alleged trade secret misappropriation until May 2019.  (Dkt. 10.)  In addition, Javo's alleged damages squarely implicate this same timeframe; Javo contends that its sale process was terminated and its value was reduced because of the CEV/Corey patents in 2019.  (Dkt. 1.)  Finally, Javo has taken the position that documents through the present are discoverable.  (Housh Decl. at ¶ 27.)

Fourth, Javo's speculation that the OrgFolder metadata **may** reveal privileged information is not a sufficient basis to exclude it from production, particularly considering its relevance in this litigation.  Privilege is always an issue that parties face when producing ESI with accompanying metadata.  If Javo contends that any of the OrgFolder metadata reveals privileged information, it may simply redact that information and identify it in an accompanying privilege log pursuant to FRCP 26(b)(5).  *See S2 Automation LLC v. Micron Tech., Inc.*, No. CIV 11-0884 JB/WDS, 2012 WL 3656454, at *28 (D.N.M. Aug. 9, 2012) ("To the extent [plaintiff] concludes that disclosing metadata will reveal privileged information, the rules governing assertion of privilege provide it with a method to protect privileged information."); *see also Williams v. Sprint/United Mgmt. Co.*, 230 F.R.D. 640, 653 (D. Kan. 2005) (rejecting defendant's argument that it should not be required to produce metadata because it would reveal privileged information, and permitting defendant "to remove metadata directly corresponding to" the defendant's alleged privileged information); (Housh Decl., Ex. 9 (*The Sedona Conference Commentary on Ethics & Metadata*, 14 SEDONA CONF. J. 169, 184 (2013) ("[I]f, by way of example, responsive yet privileged embedded metadata is part of a file, it must not be removed from the original file; but it must be redacted on a copy of the file.  And, as discussed above, the producing lawyer must sufficiently detail the basis for the redaction, such as pursuant to the attorney-client privilege.")).

## 2. The ESI Order Should Not Relieve The Parties of Their Obligation to Preserve Relevant Evidence

Javo insists that the ESI Order should contain a provision stating that the parties need <u>not</u> preserve ephemeral and deleted data.  The Court should reject Javo's requested provision because it would improperly relieve the parties of their preservation obligations and would sanction the spoliation of evidence in direct contravention of FRCP 37(e).

Javo contends that the following provision should be added to the ESI Order:

Deleted Files and Ephemeral Data. The following categories of ESI ***need not be preserved***, searched, or produced in this case: (i) "deleted," "slack," "fragmented," or "unallocated" data on hard drives; (ii) random access memory (RAM) or other ephemeral data; (iii) on-line access data such as temporary internet files, history, cache, cookies, etc.; (iv) server, system, or network logs; and (v) data remaining from systems no longer in use that is unintelligible on the systems in use.  The Receiving Party reserves the right to request that the Producing Party collect, search, and produce any and all of the above-listed categories of ESI in the event that it becomes warranted.  The Producing Party, on the other hand, reserves the right to object to the collection, search, and production of the above-listed categories of ESI, including because it would be unduly burdensome, expensive, and disproportionate to the needs of this case to do so. In the event an agreement cannot be reached, the Parties shall submit their respective positions to the Court, and the Court will issue further orders concerning any of the above-listed categories of ESI, as necessary. The Parties' agreement that these specific categories of ESI do not need to be searched and produced shall not prevent any Party from taking the position that other categories of ESI are inaccessible or should not be discoverable.  (Housh Decl. at ¶ 23, Ex. 6 (emphasis added).)

CEV and Corey have agreed to include this provision in the ESI Order <u>with the exception of the "need not be preserved" language</u>.  (Housh Decl. at ¶  24, Ex. 6.) CEV and Corey agree that these data sources need not be searched or produced in the first instance, but reserve their right to request that Javo produce information from these sources if it later becomes relevant and necessary.  (*Id*.)  To be clear, CEV and Corey are <u>not</u> suggesting that <u>all</u> ephemeral and deleted data must be preserved in <u>all</u> circumstances.  To the contrary, CEV and Corey only object to the inclusion of the language stating that such data "need not be preserved."  (*Id*.)

Ephemeral data is relevant and discoverable in certain circumstances.  *See Columbia Pictures, Inc. v. Bunnell*, 245 F.R.D. 443, 446 (C.D. Cal. 2007) ("The Court holds that data stored in RAM, however temporarily, is electronically stored information subject to discovery under the circumstances of the instant case."). Accordingly, if a party has ephemeral or deleted data within its possession, custody, or control that it has reason to believe contains relevant information, the party must

take reasonable measures to preserve that data. *See Arista Records LLC v. Usenet.com, Inc.*, 608 F. Supp. 2d 409, 416, 432 (S.D.N.Y. 2009) (holding that a defendant's "Usage Data," which showed requests by the defendant's subscribers to "download and upload digital music files[,]" was discoverable such that the defendant could be sanctioned for failing to preserve it notwithstanding the fact that the data was "transient").   Parties "must preserve evidence [they] know[] or should know is relevant to a claim or defense of any party, or that may lead to the discovery of relevant evidence." *See Starline Windows Inc. v. Quanex Bldg. Prod. Corp.*, No. 15-CV-1282-L (WVG), 2016 WL 4485568, at *6 (S.D. Cal. Aug. 19, 2016). "Once the duty to preserve attaches, a party must suspend any existing policies related to deleting or destroying files and preserve all relevant documents related to the litigation." *Id.* (internal quotation marks omitted).  If a party fails to take reasonable steps to preserve relevant evidence, however, "the court . . . may order measures . . . to cure the prejudice; or [order evidentiary or terminating sanctions]."  FRCP 37(e).

Javo's proposed provision that the identified sources of ephemeral and deleted data need <u>not</u> be preserved would effectively permit the parties to (1) not collect these data sources *even if* they have reason to believe that the sources contain relevant ESI, and (2) delete these data sources *even if* they have already collected them through forensically imaging relevant devices.  (Doucette Decl. ¶¶ 13-14 (ephemeral and deleted data sources are automatically collected and preserved through forensic imaging of relevant devices as the data exists at the time of collection).)  Including such a provision in the ESI Order would therefore be tantamount to allowing the parties to shirk their preservation obligations and to spoliate relevant evidence.  This provision is, accordingly, untenable, inconsistent with applicable law, and must be rejected.

## B.   The Parties' Disputes Relating To The SPO

The parties are also at an impasse with respect to two issues in connection with the SPO: (1) whether or not Messrs. Marshall and Koning should be permitted to

review CEV and/or Corey's OAEO material; and (2) whether or not CEV and Corey's counsel of record in this litigation should be prohibited from being "involved in" CEV and Corey's acquisition of patents relating to the technology at issue in this case for a period of two years.  For the reasons set forth below, the Court should reject both of Javo's proposed provisions.

### 1.  Neither William Marshall Nor Drew Koning Should Be Permitted to Review CEV/Corey's OAEO Material

Messrs. Marshall and Koning should not be permitted to review CEV and/or Corey's OAEO material produced in this litigation.  Neither Mr. Marshall nor Mr. Koning are Javo's counsel of record in this litigation.  <u>Moreover, Mr. Marshall is a former Javo employee and executive and a percipient witness in this case</u>.

Javo insists on including the following provision in the SPO:

> To the extent Javo's Outside Counsel finds it necessary to consult with other legal counsel for Javo, including but not limited to William Marshall, Esq. of UBM Law or Drew Koning, Esq. of Koning Zollar LLP, such other legal counsel may review any Confidential Information (regardless of whether the information is designated "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY") provided such counsel first signs a confidentiality certification in the form attached hereto as Exhibit A. . . . (Housh Decl., Ex. 3 at § 16.)[3]

CEV and Corey do not take issue with Messrs. Marshall and Koning reviewing information that they designate as "Confidential" in this litigation, once an SPO is entered and as long as they abide by the provisions of the SPO.  (Housh Decl. ¶ 13, Ex. 4.)   They do, however, object to Messrs. Marshall and Koning reviewing

---

[3] Javo has recently agreed to remove the overly broad "including but not limited to" language, such that this provision would only apply to Messrs. Marshall and Koning, and not to any other attorneys.  (Housh Decl. at ¶ 13, Ex. 4.)  Accordingly, the only dispute before the court, with respect to this particular provision, is whether or not Messrs. Marshall and Koning should be permitted to access CEV and/or Corey's OAEO material.

information that they designate as OAEO, which will contain CEV and Corey's most sensitive information, including trade secrets, and which could be used by Javo to unfairly compete with CEV.  (*See* Declaration of Wen Eng [Dkt. 40-1] (describing extremely sensitive nature of CEV's process engineering and financial information).)

Under FRCP 26(c), a party may move for, and the court may issue for "good cause," a protective order to protect the party from "annoyance, embarrassment, oppressions, or undue burden or expense[.]"  Courts routinely consider and restrict attorneys' (whether in-house or retained) access to an opposing party's highly confidential, trade secret information when devising parameters of protective orders. *See, e.g.*, *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992) ("[P]roper review of protective orders in cases such as this requires the district court to examine factually all the risks and safeguards surrounding inadvertent disclosure by *any* counsel, whether in-house or retained.") (emphasis in original); *Pinterest, Inc. v. Pintrips, Inc.*, No. 13-CV-04608-RS (KAW), 2014 WL 5364263, at *3 (N.D. Cal. Oct. 21, 2014); *Adobe Sys. Inc. v. Davachi*, No. C 10-03575 SC LB, 2011 WL 2610170, at *3 (N.D. Cal. July 1, 2011); *U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1468 (Fed. Cir. 1984).

"When access to trade secrets is at issue, a court should determine the 'factual circumstances of *any* counsel's relationship to the party demanding access' and balance the risk of inadvertent disclosure to competitors against the risk that protection of the trade secrets would impair prosecution of the claims." *Adobe Sys. Inc.*, 2011 WL 2610170, at *3 (quoting *Brown Bag Software*, 960 F.2d at 1470) (emphasis in original).  Where "[t]he risk of inadvertent disclosure outweighs any possible prejudice to Plaintiff's ability to prosecute its case," an attorney should not have access to the opposing party's OAEO information.  *Pinterest, Inc.*, 2014 WL 5364263, at *3.

Here, the existing facts weigh heavily against Messrs. Marshall and Koning (Javo's outside counsel) receiving access to CEV and/or Corey's OAEO material.

1     First, it is undisputed that Javo and CEV are competitors in the coffee, tea, and

2     botanicals extraction industry.

3     Second, Mr. Marshall is a former Javo employee and executive and is a

4     percipient witness in this litigation.   Indeed, in Javo's initial disclosures, Javo

5     identifies Mr. Marshall as its "Former General Counsel and Senior Executive Vice

6     President of Operations" and indicates that he has relevant knowledge regarding

7     "Javo's proprietary extraction process and confidential information; Corey's

8     contractual obligations to Javo; Corey's prior work at Javo; and Javo's damages."

9     (Housh Decl., Ex. 10 at 4.)  Given Mr. Marshall's prior role as Javo's in-house counsel

10    and executive and his current role as a percipient witness in this litigation, there is a

11    "real risk" that he will find himself in the "'untenable position' of either refusing

12    [Javo] legal advice or revealing [CEV and/or Corey's] sensitive information."

13    *Pinterest, Inc.*, 2014 WL 5364263, at *3 (quoting *Intel Corp. v. VIA Tech, Inc.*, 198

14    F.R.D. 525, 530-31 (N.D. Cal 2000)).  "Put another way, there is a risk that [Mr.

15    Marshall] will have [an] interest in the protected information beyond the current

16    litigation." *Id.*

17    Third, Messrs. Marshall and Koning are <u>not</u> Javo's counsel of record in this

18    litigation.   Javo already has several competent counsel of record (Steven Strauss,

19    Jeffrey Karr, Erin Trenda, and Alex Miller of Cooley LLP) who may review CEV

20    and/or Corey's OAEO material.  Javo has not and cannot explain why, in addition to

21    its counsel at Cooley, Messrs. Marshall and Koning ***must*** have access to CEV and/or

22    Corey's OAEO material, or why Javo cannot "manage its litigation" without these

23    other attorneys.  *See Adobe Sys. Inc.*, 2011 WL 2610170, at *5 (denying access to

24    outside attorney where proponent "has not really said why—given competent outside

25    counsel—its ability to litigate is prejudiced (not merely made more difficult to

26    manage)"); *see also Brown Bag Software*, 960 F.2d at 1471 (no prejudice where

27    outside counsel had sufficient time and resources to review confidential information

28    and was presumably competent to evaluate the information); *Pinterest, Inc.*, 2014 WL

5364263, at *3 (holding that plaintiff's arguments that it "prefers to closely supervise its outside counsel," and that its "ability to prosecute its case would be impaired because [the attorney in question] would not have access to important information that would help [attorney] understand the strengths of Plaintiff's claims and could inform his decision to settle" were "insufficient to justify risking the inadvertent disclosure of Defendant's attorneys' eyes only information").

The Court should reject outright Javo's proposal to grant Messrs. Marshall and Koning access to CEV and/or Corey's OAEO.  However, in the event the Court is considering allowing Messrs. Marshall and Koning to review CEV and/or Corey's OAEO material, CEV and Corey respectfully request an evidentiary hearing to question Messrs. Marshall and Koning on the scope of their work for Javo in order to determine whether that work encompasses competitive decision-making[4] or other advice that would present a risk that they would use CEV and/or Corey's OAEO material outside of this litigation.  *See Brown Bag Software*, 960 F.2d at 1470 (affirming trial court's decision denying in-house counsel access to defendant's confidential information after "comprehensive evidentiary hearing" regarding the "factual circumstances" of counsel's role and responsibilities at plaintiff).

**2.    CEV/Corey's Outside Counsel Should Not Be Prohibited From Advising On Patent Acquisitions**

In connection with the SPO, Javo is demanding a broad patent acquisition bar that would prohibit CEV and Corey's counsel of record at Sheppard, Mullin, Richter & Hampton LLP ("SMRH") from being "involved in" "the acquisition of patents (including patent applications), or the rights to any such patents or patent applications

---

[4] The Federal Circuit has defined "competitive decision-making" as "shorthand for a counsel's activities, association, and relationship with a client that are such as to involve counsel's advice and participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor."  *U.S. Steel Corp.*, 730 F.2d at 1468, n. 3.

with the right to sublicense, substantially related to the particular technology disclosed in the patents and patent applications filed by Corey/CEV or in Javo Confidential Information" for a period of two years.  (Housh Decl., Ex. 3 at § 17.)  Javo's proposed patent acquisition bar is overly broad and unnecessary to protect Javo's Confidential and OAEO information.  The Court should reject it.

"Despite provisions in protective orders that specify that information designated as confidential may be used only for purposes of the current litigation, courts recognize that 'there may be circumstances in which even the most rigorous efforts of the recipient of such [sensitive] information to preserve confidentiality in compliance . . . with a protective order may not prevent inadvertent compromise.'" *Applied Signal Tech., Inc. v. Emerging Markets Commc'ns, Inc.*, No. C-09-02180 SBA DMR, 2011 WL 197811, at *1 (N.D. Cal. Jan. 20, 2011) (quoting *In re Deutsche Bank Trust Co.,* 605 F.3d 1373, 1378 (Fed. Cir. 2010)).  "Accordingly, courts authorize the inclusion of prosecution bars in protective orders as a less drastic alternative to the disqualification of counsel or experts." *Id*.

The proponent of the bar—here, Javo—"must show that the information designated to trigger the bar, the scope of activities prohibited by the bar, the duration of the bar, and the subject matter covered by the bar reasonably reflect the risk presented by the disclosure of proprietary competitive information." *In re Deutsche Bank Trust Co.*, 605 F.3d at 1381.  Javo cannot make any of the requisite showings.

As an initial matter, CEV and Corey have already agreed to a ***broad*** prosecution bar that prohibits their SMRH counsel from "advising on, consulting on, preparing, prosecuting, drafting, editing, and/or amending of patent applications" and "engaging in competitive decision-making . . . concerning extraction processes or extract products." (Housh Decl., Ex. 3 at § 17.)  And, CEV and Corey's SMRH counsel have agreed not to use Javo's Confidential or OAEO information outside of this litigation. (*Id*. at § 9.)  Accordingly, CEV and Corey's SMRH counsel are already prohibited from using Javo's Confidential or OAEO information to advise on patent acquisitions.

Javo is asking this Court to go several steps further and prohibit SMRH from being "involved" in *any* way in the acquisition of patents that in *any* way relate to the coffee extraction technology covered by CEV and Corey's current portfolio of patent applications and patents.  (*Id*. at § 17.)   The scope of Javo's proposed patent acquisition bar is overbroad in terms of the activities that it covers—i.e., any "involvement" whatsoever in patent acquisition.  *See EPL Holdings, LLC v. Apple Inc.*, No. C-12-04306 JST JSC, 2013 WL 2181584, at *4 (N.D. Cal. May 20, 2013) (rejecting proposed patent acquisition bar that prohibited counsel "from playing any role in the acquisition of patents, including roles that do not pose the same risk as strategic decisionmaking with respect to patent acquisition").[5]   It is likewise overbroad in terms of the technology that it covers.  Javo seeks to prohibit SMRH from advising on the acquisition of patents relating to the technology covered by CEV and Corey's existing patent portfolio, ***even if the patent acquisition in question has nothing to do with Javo's Confidential or OAEO information***.  Such a prohibition is unnecessary to protect Javo's Confidential and OAEO information.  *See id*. (striking portion of patent acquisition bar that the proponent conceded "was unnecessary to protect its confidential information in the patent acquisition process").   Courts regularly decline to impose broad patent acquisition bars such as the one that Javo champions here.   *See Jenam Tech, LLC v. Samsung Elecs. Am., Inc.*, No. 419CV00250ALMKPJ, 2020 WL 757097, at *1, n.1 (E.D. Tex. Feb. 4, 2020)

---

[5] The court in *EPL Holdings, LLC* ultimately ordered a *very* narrow patent acquisition bar prohibiting "counsel from advising clients as to which patents to acquire to the extent such patents are narrowly related to the subject matter of this litigation, but allow[ing] counsel to advise on legal matters involving such patents, including validity."  2013 WL 2181584, at *5.  The Court need not order even a narrow patent acquisition bar here because CEV and Corey's counsel of record are already prohibited from using Javo's alleged trade secret information (i.e., "the subject matter of this litigation") to advise its clients on which patents to acquire, prosecuting patents, and engaging in competitive decision-making.  (Housh Decl., Ex. 3 at §§ 9, 17.)

(rejecting proposed patent acquisition bar that would have prohibited plaintiff's counsel from advising on the acquisition of any patents "relating to the field of the invention of the patents in suit"); *Rothschild Storage Retrieval Innovations, LLC v. Motorola Mobility, LLC*, No. 14-22659-CIV, 2015 WL 12860290, at *1 (S.D. Fla. Feb. 25, 2015) (denying request to amend SPO to include patent acquisition bar); *CardioNet, LLC v. InfoBionic, Inc.*, No. 1:15-CV-11803-IT, 2015 WL 13696787, at *3 (D. Mass. Dec. 23, 2015) (rejecting proposed patent acquisition bar).[6]

Javo's request to impose a broad patent acquisition bar on CEV and Corey's counsel of record should be denied.

### III.   CONCLUSION

For all of the foregoing reasons, CEV and Corey respectfully request that the Court enter an order:

- Granting CEV and Corey's request to include a provision in the ESI Order requiring the parties to include the OrgFolder metadata field in connection with their production of ESI;

- Denying Javo's request to include a provision in the ESI Order stating that the parties "need not preserve" ephemeral and deleted data;

- Denying Javo's request to include a provision in the SPO allowing Javo's outside counsel William Marshall and Drew Koning to access CEV and Corey's OAEO material; and

- Denying Javo's request to include a provision in the SPO prohibiting CEV and Corey's counsel of record from being "involved in" patent

---

[6] To be sure, patent acquisition bars are imposed in some cases. However, those cases are wholly distinguishable from the case at hand. *See, e.g.*, *Unwired Planet LLC v. Apple Inc.*, No. 3:12-CV-00505-RCJ, 2013 WL 1501489, at *3 (D. Nev. Apr. 11, 2013) (imposing patent acquisition bar where plaintiff was a patent holding company – whose "sole reason for existence is to acquire patents and sue companies like Apple" – and where plaintiff used one law firm in connection with its patent litigation and strategic patent acquisition activities).

acquisitions relating to the technology covered by CEV and Corey's existing patent applications and patents.

Dated:  April 8, 2020

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By     _____
                    */s/ John A. Yacovelle*
               JOHN A. YACOVELLE
               MARISA B. MILLER
               KRISTIN P. HOUSH
               JESSE SALEN

       Attorneys for Defendants/Counter-Claimant
           CALIFORNIA EXTRACTION
       VENTURES, INC. AND STEPHEN COREY