UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAVO BEVERAGE CO., INC.,<br><br>                                    Plaintiff,<br><br>v.<br><br>CALIFORNIA EXTRACTION<br>VENTURES, INC.; STEPHEN COREY,<br><br>                                    Defendants. | Case No.:  19-CV-1859-CAB-WVG<br><br>**ORDER ON DISCOVERY DISPUTES REGARDING DRAFT STIPULATED PROTECTIVE ORDER AND DRAFT PROTOCOL ON ELECTRONICALLY STORED INFORMATION** |

## I.    INTRODUCTION

Since January 2020, Plaintiff and Counter-Defendant Javo Beverage Co., Inc. ("Javo") and Defendants and Counter-Claimants California Extraction Ventures, Inc. and Stephen Corey ("CEV and Corey") (collectively, "Parties") have been negotiating the terms of two orders for this Court's adjudication, namely a Protective Order and a protocol on electronically stored information ("ESI Protocol"). Despite extensive meet and confer efforts, the Parties remain unable to resolve four disputes arising from the Protective Order and the ESI Protocol as drafted. Consequently, on April 1, 2020 the Parties jointly informed this Court's Chambers of the disputes, consistent with Chambers Civil Rule IV(A). On that same day, the Court ordered the Parties to submit supplemental briefing on each issue no

later than April 8, 2020. (Doc. No. 70.) The Parties timely filed their submissions. In short, the matters before the Court are as follows:

(1) Whether Javo's outside counsel may access highly confidential Outside Attorneys' Eyes Only ("OAEO") designated information upon executing the Protective Order;

(2) Whether and to what extent CEV and Corey's counsel of record, who obtains Javo's OAEO information, as designated under the Protective Order, may be barred from future patent acquisitions or applications related to the technology at issue here;

(3) Under the ESI Protocol, whether Javo's filepath information is discoverable to any extent; and

(4) Under the ESI Protocol, whether the Parties are obligated to preserve their deleted and ephemeral data and, if so, to what extent.

The Court answers each of these issues, as framed above, in the affirmative and resolves the Parties' discovery disputes as follows.

## II. DISCUSSION

### a. Javo's Outside Counsel's Access to OAEO Information

Under the Protective Order, the Parties dispute whether Javo's affiliates, William Marshall and Drew Konig, should gain access to CEV and Corey's OAEO information upon Marshall and Konig executing the Protective Order. For purposes of this action, Marshall and Konig serve in an advisory capacity as Javo's outside counsel and not as counsel of record. Marshall previously worked as Javo's general counsel and senior executive vice president of operations before entering private practice in or around 2011. In contrast, Konig has no employment history with Javo. Under these facts, Javo argues Marshall and Konig are entitled to access CEV and Corey's OAEO information to ensure Javo receives Marshall and Konig's fully informed advice and counsel throughout this litigation. CEV and Corey oppose Marshall and Konig's access to OAEO information chiefly because it risks Marshall and Konig's misusing, inadvertently or otherwise, CEV

and Corey's information for Javo's commercial advantage. Javo rejects this position and responds that Marshall and Konig hold no commercial interest in the coffee or extraction industries and there is no basis to suspect Marshall or Konig will abandon their ethical obligations in breach of the Protective Order.

As a foundational matter, Rule 26(b) of the Federal Rules of Civil Procedure favors disclosure of all information "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). At the same time, the Rule is not limitless. For good cause, the court may issue a protective order to protect a producing party from undue burden or expense, including "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." Fed. R. Civ. P. 26(c). To resolve protective order disputes implicating trade secrets, courts apply the Ninth Circuit's *Brown Bag* balancing test, which considers parties' rival interests. *GXP Capital, LLC v. Argonaut EMS*, 2018 U.S. Dist. LEXIS 102581, at *7 (S.D. Cal. June 19, 2018) (citing *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465 (9th Cir. 1992)). On one end of the balancing scale is the risk of inadvertent disclosure of the producing party's confidential information; on the other end of the scale is the risk that protection of confidential information might impair the requesting party's ability to prosecute its claims. *Kaseberg v. Conaco*, 2016 U.S. Dist. LEXIS 97581, at *40 (S.D. Cal. July 26, 2016); *Ubiquiti Networks, Inc. v. Kozumi USA Corp.*, 2012 U.S. Dist. LEXIS 168351, at *2-3 (N.D. Cal. Nov. 26, 2012). At all times, "Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *GXP Capital, LLC*, *supra*, 2018 U.S. Dist. LEXIS 102581, at *7 (citing *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36, (1984)); *Karl Storz Endoscopy-America, Inc. v. Stryker Corp.*, 2014 U.S. Dist. LEXIS 163473, at *3 (N.D. Cal. Nov. 21, 2014).

/ / /

/ / /

/ / /

19-CV-1859-CAB-WVG

### i. Risk of Inadvertent Disclosure of CEV and Corey's OAEO Information

The Court's assessment of the risk of Marshall or Konig's inadvertent disclosure of CEV and Corey's OAEO information considers the factual circumstances of Marshall and Konig's relationship to Javo. *Frank Brunckhorst Co., LLC v. Ihm*, 2012 U.S. Dist. LEXIS 28152, at *3-4 (S.D. Cal. Mar. 2, 2012) (citing *Brown Bag Software*, *supra*, 960 F.2d at 1470 and *U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1468 (Fed. Cir. 1984)). The inquiry largely turns on whether Marshall or Konig constitute competitive decision-makers, such that "the risk of disclosure may outweigh [Javo's] need for confidential information." *Intel Corp. v. Via Technologies, Inc.*, 198 F.R.D. 525, 529 (N.D. Cal. Oct. 11 2000) (*U.S. Steel*, *supra*, 730 F.2d at 1468) (defining a competitive decision-maker as counsel who advises on and participates in client decisions regarding pricing, product design, and other commercial matters made in light of similar or corresponding information about a competitor); see also *Matsushita Elec. Indus. Co. v. United States*, 929 F.2d 1577, 1579 (Fed. Cir. 1991) (same). Notably, "unrebutted statements made by counsel asserting that he does not participate in competitive decision-making, which the court has no reason to doubt, form a reasonable basis to conclude that counsel is isolated from competitive decision-making." *Id*. (citing *Matsushita*, *supra*, 929 F.2d at 1580).

The Court strains to find any meaningful risk that CEV and Corey's OAEO information is subject to inadvertent disclosure if Marshall and Konig were to access such information upon executing the Protective Order. Both Marshall and Konig operate as outside legal counsel, rather than in-house counsel. This framework inherently limits, if not altogether severs, Javo's access to Marshall and Konig's working files, which would presumably contain copies of CEV and Corey's OAEO information for not longer than 45 days from the date this litigation concludes[1]. Moreover, Marshall and Konig's substantive

---

[1] Javo indicates Marshall and Konig both agree to "return and/or destroy all of Defendants' Confidential Information, purge the same from their systems, and certify that they have done so and "have not

work for Javo is limited to "providing legal counsel to Javo in connection with this dispute." (Doc. No. 72, 7:6-7.) Providing "standard legal services to Javo," without more, should not be conflated with competitive decision-making, as neither Marshall nor Konig participate in business decisions akin to those made by internal executives or officers of Javo. (*Id.*, 8:9-10.) Absent CEV and Corey's substantiated rebuttal, Javo's counsel's representation that neither Marshall nor Konig participate in competitive decision-making "form a reasonable basis to conclude that counsel is isolated from competitive decision-making." *Intel Corp.*, *supra*, 198 F.R.D. at 529 (citing *Matsushita*, *supra*, 929 F.2d at 1580). To that end, the Court places little weight on Marshall's former life as a Javo executive and general counsel. Nearly ten years have passed, and Marshall's present role as outside counsel to Javo is divorced from competitive decisionmaking, as just explained. Further, neither Marshall nor Konig competes in the coffee or extraction industries, such that either would be incentivized to tip competitive scales in Javo's favor.

To oppose Javo's request for disclosure, CEV and Corey mainly indulge in the speculation that Marshall would be tempted to misuse, inadvertently or otherwise, OAEO information to spur Javo's competitive advantage over CEV and Corey. In doing so, CEV and Corey offer no fact-specific basis for their suspicions, other than pointing to Marshall's prior employment with Javo, which the Court finds unpersuasive for the reasons recited above. CEV and Corey seemingly undermine their position by agreeing that Marshall and Konig may be trusted with confidential information while, in the same breath, failing to explain why that trust dissipates when it comes to OAEO information. (Doc. No. 71, 11:20-23.) The sensitivity gap between confidential and OAEO information that CEV and Corey point to does not elucidate why Marshall and Konig are unfit to handle one type of information with care but not the other. Ultimately, CEV and Corey fall short in

---

retained any copies, excerpts, or summaries of that information" within 45 days of this litigation's final disposition. (Doc. No. 72, 9:2-6.)

demonstrating that Marshall and Konig are unable or unwilling to abide by the terms of the Protective Order. The Court finds that there is no appreciable risk of inadvertent disclosure of CEV and Corey's OAEO information on account of either Marshall or Konig. This finding weighs in favor Marshall and Konig's access to the OAEO information at issue. At the same time, it does not end the Court's inquiry.

### ii.  Potential Harm of Inadvertent Disclosure to CEV and Corey

The Court next evaluates the potential harm any inadvertent disclosure of the OAEO information may cause CEV and Corey. As a foundational matter, the party resisting discovery must substantiate why discovery should not be permitted and must clarify, explain, and support its objections. Fed. R. Civ. P. 26; *Duran v. Cisco Sys., Inc.*, 258 F.R.D. 375, 378 (C.D. Cal. July 1, 2009) (citing *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975)). CEV and Corey bear that burden here and do not convince the Court they have met it. The most insight CEV and Corey provide as to any potential harm they may suffer is that the OAEO information constitutes "CEV and Corey's most sensitive information, including trade secrets, [that] could be used by Javo to unfairly compete with CEV." (Doc. No. 71, 17:1-3.) However, the fact that the Parties are direct competitors operating in the same market does not explain what potential harm may befall CEV and Corey in the event of an inadvertent disclosure. While it may appear self-evident that the disclosure of sensitive information to a competitor could inflict harm upon the disclosing party, more is required to demonstrate the potential prejudice. The conclusory statement that the two competitors generally occupy the same space in the marketplace certainly does not meet the mark. In itself, this statement does not articulate *how* inadvertent disclosure of the particular categories of OAEO information may likely harm CEV and Corey.

Instead, CEV and Corey seemingly invite the Court to presume the OAEO information is so vital to CEV and Corey, and so distinguishable and novel from existing competitors' product lines, processes, services, and/or any other information, that any disclosure of that information would undercut CEV and Corey's business. But without

articulating this representation and providing factual basis to believe Marshall and/or Konig presently constitute competitive decision-makers, CEV and Corey leave the Court with no basis to find they have met their burden under *Brown Bag*'s specific harm factor. *Mad Catz Interactive, Inc. v. Razor USA, Ltd.*, 2014 U.S. Dist. LEXIS 115896, at *15 (S.D. Cal. Aug. 19, 2014) (producing party failed to meet its burden to prove *Brown Bag*'s "specific harm" element because producing party abandoned the product line under the disputed patent and requesting party's general counsel "was not engaged in any competitive decision-making as it concern[ed] competition with the producing party's business"); but see *Life Techs. Corp. v. Ebioscience Inc.*, 2011 U.S. Dist. LEXIS 44926, at *10 (S.D. Cal. Apr. 26, 2011) ("Ebioscience asserts that the trade secrets… directly relate to the success of the product. Accordingly, the potential injury from disclosure is great").

Further, CEV and Corey's publication of patents on their extraction process call into question the sensitivity of the OAEO information at least as far as the CEV and Corey's process is concerned. (Doc. No. 72, 9:27-28.) To that end, the Court notes CEV and Corey "admit they are still in the development stage and currently have no competing products or services" in its analysis here. (Doc. No. 72 (citing Doc. No. 45-2).) Having not yet emerged onto the competitors' stage alongside Javo, CEV and Corey appear to have less at stake if its OAEO information were inadvertently disclosed. To the extent this impression is false, CEV and Corey should have, but did not, explain why not so. Ultimately, CEV and Corey fail to make the requisite fact-intensive showing of specific harm that may result from any inadvertent disclosure of their OAEO information. Accordingly, this circumstance weighs against CEV and Corey's interest in withholding their OAEO information from Marshall and Konig upon their execution of the Protective Order.

### iii. Prejudice to Javo in Denying Marshall and Konig Access to CEV and Corey's OAEO Information

Lastly, the Court examines whether Javo is likely to suffer actual prejudice if Marshall and Konig were excluded from accessing the OAEO information. In doing so, the Court emphasizes a blanket assertion that counsel requires access to OAEO information

to "manage" this litigation fails to meet the prejudice factor under *Brown Bag*. *Ubiquiti Networks, Inc. v. Kozumi USA Corp.*, 2012 U.S. Dist. LEXIS 168351, at *5 (N.D. Cal. Nov. 26, 2012). Javo must show more to meet its burden here, and the Court finds that it has. As a general matter, this is a complex and fact intensive patent case. Between Javo's claims and CEV's counterclaims, the Parties are embattled in a heated litigation where critical documents and data are not publicly available. Heightening this complexity is the Parties' stipulation that, to some extent, ephemeral and deleted data may be potentially relevant to the claims and defenses at issue. Consequently, liability and damages are entangled in the most nuanced details and, potentially, in the recesses of decades-old hard drives and computer memory.

Taken together, the above circumstances appear to reasonably inform Javo's need for the advice and counsel of its longtime outside counsel, Marshall and Konig. As set forth in its briefing, Javo seeks to "leverage[e] Marshall's institutional knowledge and specialized technical and legal expertise" to effectively litigate Javo's claims and defenses to CEV and Corey's counterclaims. (Doc. No. 72, 10:18-21.) This Court joins other courts within the Ninth Circuit in finding that institutional and other specialized knowledge is sufficient to show a compelling need for access to confidential information that outweighs the risk of inadvertent disclosure. *Intel Corp. v. VIA Techs., Inc.*, 198 F.R.D. 525, 528 (N.D. Cal. June 26, 2000) ("Where, because of the technical nature of a case, the specialized knowledge of in-house counsel was necessary to supervise the litigation, good cause was found to outweigh the risk of inadvertent disclosure and permit access of in-house counsel to confidential information"); *Persian Gulf Inc. v. BP W. Coast Prods. LLC*, 2019 U.S. Dist. LEXIS 167361, at *10-11 (S.D. Cal. Sep. 27, 2019) (finding in favor of disclosure given an expert's "extensive research since the inception of [the] case" and that "finding [a replacement] with detailed knowledge [of] the focus of Plaintiff's claims would be a much harder task"); see also *Kaseberg*, *supra*, 2016 U.S. Dist. LEXIS 97581, at *40 (citing *Life Techs. Corp.*, *supra*, 2011 U.S. Dist. LEXIS 44926, at *10 (contrasting denial of a party's counsel of choice with expertise lacking in a party's outside counsel for purposes

of analyzing the prejudice factor under *Brown Bag*)). Consequently, the Court concludes Javo will suffer appreciable prejudice if Marshall and Konig are denied access to CEV and Corey's OAEO information because such information may well bear upon Marshall and Konig's advice and counsel to Javo throughout this litigation. Javo has a legitimate interest in receiving the full benefit of its outside counsel's strategic thinking and guidance in furtherance of its claims and defenses against CEV's counterclaims, particularly because Marshall and Konig possess longstanding institutional knowledge of Javo's business model and legal needs that are likely to inform Javo's posture in this case.

### iv.   The *Brown Bag* Factors Here Weigh in Favor of Disclosure of CEV and Corey's OAEO Information to Marshall and Konig upon Marshall and Konig's Execution of the Protective Order

In light of the above, the Court hereby DENIES CEV and Corey's request to modify the stipulated Protective Order to exclude Marshall and Konig from accessing OAEO information upon Marshall and Konig's execution of the Protective Order. In other words, Marshall and Konig shall enjoy the same access as Javo's counsel of record with regards to CEV and Corey's OAEO information, as designated under the Protective Order, upon agreeing to be bound by the terms of the Protective Order. In this vein, the Court also DENIES CEV and Corey's request for an evidentiary hearing on Marshall and Konig's work for Javo to probe into the competitive decision-maker issue. As stated, "unrebutted statements made by counsel asserting that he does not participate in competitive decision-making, which the court has no reason to doubt, form a reasonable basis to conclude that counsel is isolated from competitive decision-making." *Id*. (citing *Matsushita*, *supra*, 929 F.2d at 1580). As discussed, CEV and Corey have not set forth any factual grounds to challenge Javo's representation of Marshall and Konig's non-competitive decision-maker status. In cases that similarly lack substantive rebuttal, courts have decided protective order issues like the instant one on the papers and without holding evidentiary hearings on the requesting party's alleged competitive decision-making activities. *R.R. Donnelley & Sons Co. v. Quark, Inc.*, 2007 U.S. Dist. LEXIS 424, at *4 (D. Del. Jan. 4, 2007) (deciding

confidential and OAEO disclosure issue on the papers absent substantiation of any acts of competitive decision-making); *Sprint Communs. Co. L.P. v. Big River Tel. Co., LLC*, 2008 U.S. Dist. LEXIS 70669, at *11 (D. Kan. Sep. 16, 2008) (same); see also *Alza Corp. v. Impax Labs., Inc.*, 2004 U.S. Dist. LEXIS 33076, at *10-11 (N.D. Cal. June 21, 2004) (concluding plaintiff's in-house litigation team did not consist of competitive decision-makers because its statements representing so remained unrebutted and noting that "should [defendant] become aware of information that points to a different conclusion, [defendant] could certainly bring a motion to modify the protective order"). The Court finds no reason to depart from such precedent on account of the Parties' supplemental briefing. Should some factual basis materialize through the discovery process that suggests Marshall and/or Konig in fact act as competitive decision-makers for Javo, CEV and Corey may revive their request to modify the Protective Order and bring forth such evidence at that time. For now, the Court's decision here endures unless and until such evidence emerges.

### b. Javo's Proposed Patent Acquisition Bar as to CEV and Corey's Litigation Counsel of Record

The Parties are at an additional standstill with respect to their draft Protective Order. Javo seeks enforcement of its proposed patent acquisition bar as to CEV and Corey's litigation counsel of record for a period of two years once this litigation concludes. Javo proposes the bar apply to any patent acquisition activity that may be considered "substantially related" to the coffee extraction technology at issue here. (Doc. No. 72, 12:13-15.) Javo argues, absent such restrictions, CEV and Corey are likely to inadvertently or otherwise misuse the confidential information learned from this action to engage in future patent acquisition to Javo's detriment. CEV and Corey dismiss Javo's concerns and consider Javo's proposed bar equal parts overbroad and unnecessary. To that end, CEV and Corey pose that their agreement to a broad patent prosecution bar prohibiting CEV and Corey's counsel from using Javo's confidential or OAEO information in future patent prosecutions sufficiently protects Javo and should not be extended any further.

/ / /

### i. Substantive and Temporal Scope of Javo's Proposed Patent Acquisition Bar

The threshold inquiry into the propriety of a patent acquisition bar considers whether "the information designed to trigger the bar, the scope of activities prohibited by the bar, the duration of the bar and the subject matter covered by the bar reasonably reflect the risk presented by the disclosure of proprietary competitive information." *Applied Signal Tech., Inc. v. Emerging Markets Communications, Inc.*, 2011 U.S. Dist. LEXIS 97403, at *2 (N.D. Cal. Jan. 20, 2011) (internal citations and quotations omitted); *Ubiquiti Networks, Inc.*, *supra*, 2012 U.S. Dist. LEXIS 168351, at *6-7 (same). The party seeking to impose the bar bears the burden of establishing these matters. *EPL Holdings, LLC v. Apple Inc.*, 2013 WL 2181584, at *2 (N.D. Cal. May 20, 2013) (citing *In re Deutsche Bank Trust Co. Americas*, 605 F.3d 1373, 1381 (Fed.Cir.2010)). The burden shifts once the moving party makes this showing. The party seeking an exemption from the bar must then demonstrate on a counsel-by-counsel basis: (1) counsel's representation of the client does not and is not likely to implicate competitive decision-making related to the subject matter of the litigation so as to give rise to a risk of inadvertent use of confidential information learned in litigation; and (2) the potential injury to the party from restrictions imposed on its choice of litigation and acquisition counsel outweighs the potential injury to the opposing party caused by such inadvertent use. *Id.*; *Am. GNC Corp. v. LG Elecs., Inc.*, 2017 U.S. Dist. LEXIS 176306, at *11 (S.D. Cal. Oct. 23, 2017); see also *Uniloc USA, Inc. v. Apple Inc.*, 2018 U.S. Dist. LEXIS 110427, at *6 (N.D. Cal. July 2, 2018) (approving one-year patent acquisition bar upon finding existing bar on using confidential information in future acquisitions did not account for preventing the "inadvertent" use of confidential information).

The Court finds Javo's proposed patent acquisition bar is appropriately tailored to meet Javo's need for confidentiality while allowing CEV and Corey reasonable opportunity to retain some, albeit not all, of its counsel of choice for future patent acquisitions for a two-year term following this action's disposition. As a principal matter, the proposed bar seeks to safeguard Javo's confidential and OAEO information as it may be used to acquire

patents that are "substantially related" to the technology in dispute here. The bar also extends to "the particular technology disclosed in the patents and patent applications filed by Corey/ CEV." (Doc. No. 72, 12:13-15.) CEV and Corey emphatically object to the latter language in particular because it would prevent them from engaging in patent acquisition that does not necessarily implicate Javo's confidential or OAEO information. (Doc. No. 71, 16:10-14.) The objection is unavailing. Javo makes clear throughout its briefing that the proposed bar implicates only the technology that the Parties both dispute, in Javo's claims and CEV's counterclaims: "Javo does not seek to bar Defendants' litigation counsel from advising in the acquisition of all future patents by Defendants – only patents "substantially related to the particular technology" at issue here." (Doc. No. 72, 13:22-24.) To the extent CEV and Corey insist that Javo's proposed language is inconsistent with Javo's representation as excerpted in this Order, the Court ORDERS the Parties to meet and confer on the acceptable language that is consistent with Javo's representation. The Court finds satisfactory Javo's proposal bar as to the subject matter implicated because the bar permits CEV and Corey to engage in patent acquisitions of any products and processes that are *not* substantially related to the subject matter at issue in this action for a period of two years once this lawsuit ends.

Additionally, Javo has taken steps to fittingly narrow the bar's reach by agreeing to allow CEV and Corey's current patent prosecution counsel to engage in *every* aspect of future patent acquisitions and related activity without limitation. Javo seeks to preclude only litigation counsel of record from being involved in patent acquisition activity as it relates to the technology at issue here. Inherently, the provision allows litigation counsel at any time to still play a robust role in patent acquisition activity insofar as it does not substantially implicate the subject matter of this lawsuit and, if it is substantially related, then litigation counsel is barred for a period of only two years following the lawsuit's resolution. *Catch A Wave Technologies, Inc. v. Sirius XM Radio, Inc.*, 2013 WL 9868422, at *1 (N.D. Cal., Aug. 6, 2013) (approving two-year patent acquisition bar preventing counsel from advising clients in patent acquisition implicating the subject matter in dispute

because "such a quid pro quo is reasonable"); *Am. GNC Corp. v. LG Elecs., Inc.*, 2017 U.S. Dist. LEXIS 176306, at *11 (S.D. Cal. Oct. 23, 2017) (rejecting proposed patent acquisition bar when bar encompassed information not relevant to the subject of the dispute and extended beyond counsel to include "any person associated with a party and permitted to receive" the confidential information). To that end, the Court finds the two-year term reasonably measured. *Catch A Wave Technologies, Inc.*, *supra*, 2013 WL 9868422, at *1 (granting proposed patent acquisition bar and noting "the two-year patent acquisition bar allows time for the limitations of human memory to run their course or for the information to become largely stale"). Javo's self-imposed limitations on its proposed patent acquisition bar are proper.

### ii. Potential Harm to the Parties if Javo's Proposed Patent Acquisition Bar Is Approved or, in the Alternative, Rejected

As explained above, the Court finds Javo has met its burden. In turn, the Court looks to CEV and Corey to demonstrate their litigation counsel of record is unlikely to become involved in "competitive decision-making related to the subject matter of the litigation so as to give rise to a risk of inadvertent use of confidential information learned in litigation." *EPL Holdings, LLC*, *supra*, 2013 WL 2181584, at *2 ((citing *In re Deutsche Bank Trust Co. Americas*, supra, 605 F.3d at 1381); *Uniloc USA, Inc.*, *supra*, 2018 U.S. Dist. LEXIS 110427, at *6. CEV and Corey underscore their agreement to a broad prosecution bar prohibiting their counsel of record from engaging in patent prosecutions, "competitive decision-making… concerning extraction process or extract products," and using Javo's confidential or OAEO information beyond this litigation constitutes a generous safeguard against Javo's concerns of unfair competition. (Doc. No. 71, 15:21-27 (citing Housh Decl., Ex. 3 at § 17).) The Court underscores it has no reason to doubt CEV and Corey's litigation counsel's attestation to uphold the terms of the Parties' proposed patent prosecution bar, and Javo offers none as well. Concurrently, however, the Court is mindful of the distinctions between "administrative and oversight duties from activities in which counsel play a 'significant role in crafting the content of patent applications or advising clients on

the direction to take their portfolios,' with the latter activities posing a more significant risk of inadvertent disclosure than the former." *In re Deutsche Bank Trust Co. Americas*, *supra*, 605 F.3d at 1378; see also *Xerox Corp. v. Google, Inc.*, 270 F.R.D. 182, 183 (D. Del. 2010). This consideration is imperative to the Court's analysis given the difficulty "for the human mind to compartmentalize and selectively suppress information once learned, no matter how well-intentioned the effort may be to do so.*" Barnes & Noble, Inc. v. LSI Corp.*, 2012 U.S. Dist. LEXIS 23103, at *9 (N.D. Cal. Feb. 23, 2012); *Catch a Wave*, *supra*, 2013 U.S. Dist. LEXIS 189086 at *1. The contentious nature of this litigation and the voluminous sensitive information to be exchanged amongst the Parties convinces the Court that CEV and Corey's litigation counsel of record are more apt to assume a hands-on role in future patent acquisition activity rather than mere "administrative and oversight duties." Absent a patent acquisition bar, the fallout from such an active role is a heightened risk of inadvertent disclosure of Javo's confidential or OAEO information.

Assuming *arguendo* the risk of inadvertent disclosure could be entirely eliminated, the Court finds Javo would suffer greater prejudice if it were denied enforcement of the proposed patent acquisition bar than if CEV and Corey were to endure the two-year bar on patent acquisition activity implicating the technology in dispute by its litigation counsel of record. While accepting CEV and Corey may be inconvenienced by litigation's counsel's two-year absence from patent acquisitions limited to the subject matter here, the proposed bar would not trample CEV and Corey's retention of their patent prosecution counsel to for such endeavors. The work could still be performed by CEV and Corey's patent prosecution counsel without incurring the risk of Javo's confidential and OAEO information being inadvertently weaponized to Javo's detriment. Javo's fear on this point is well founded, given that CEV has filed counterclaims for patent infringement based on "the very same patents Javo has alleged contain its trade secrets." (Doc. No. 72, 13:10-12.) 12.) Further, CEV and Corey would remain free to retain its litigation counsel of record for patent acquisition activity that is not substantially related to the technology in dispute here. Each of these circumstances inform the Court's decision to GRANT Javo's proposed

modification to the Protective Order. The Court ORDERS the Parties to meet and confer on language that imposes the two-year patent acquisition bar against CEV and Corey's litigation counsel of record as it relates to the technology the Parties dispute, to the extent CEV and Corey maintain that Javo's provision as memorialized in Doc. No. 72, page 12, lines 13-15, is inconsistent with the Court's finding.

### c.  Discoverability of Javo's Filepath Information

The Parties have reached an impasse on two matters arising under the ESI Protocol, namely whether Javo's "ORGFOLDER" data is discoverable and whether the Parties bear any obligation to preserve deleted and ephemeral data. The Court resolves each matter in turn. In doing so, the Court prefaces its analysis of the "ORGFOLDER" data issue with a more simplistic definition of the technical term, "ORGFOLDER data," namely information indicating the original file path of an electronically stored record as it was maintained throughout the routine course of business. For the remainder of this Order, the Court will refer to "ORGFOLDER data" as "filepath information." CEV and Corey's position on filepath information is that it is discoverable and should be produced in conjunction with Javo's ESI productions made pursuant to the Parties' ESI Protocol. CEV and Corey articulate a number of reasons why the filepath information is discoverable, including that the data is highly relevant to assessing the claims at issue, and Parties have already agreed to produce metadata[2] alongside its relevant ESI, where filepath information is encompassed within that metadata. Javo objects to producing the filepath information to any extent. In particular, Javo argues threefold that (1) the filepath information is misleading and thus irrelevant; (2) extracting the original filepath information would be unduly burdensome and costly; and (3) producing the filepath information would leave

---

[2] "Metadata is information about the ESI, as opposed to its contents." *Resnick v. Netflix, Inc. (In re Online DVD-Rental Antitrust Litig.)*, 779 F.3d 914, 925 (9th Cir. 2015) ("Metadata is simply data that provides information about other data. It is '[s]econdary data that organize, manage, and facilitate the use of primary data.") (quoting Black's Law Dictionary 1141 (10th ed. 2014)) (citations and some internal quotation marks omitted).

Javo vulnerable to breaches of attorney-client privilege and, consequently, irreparable harm to Javo would flow from such breaches.

The Parties' dispute is governed by the discovery rules. Under Rule 26(b), the scope of discovery is broad and entitles the parties to obtain discovery as to "any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case…" Fed. R. Civ. P. ("Rule") 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id.*; *Morgan Hill Concerned Parents Association v. California Department of Education*, 2017 WL 445722, at *3 (E.D. Cal. Feb. 2, 2017) (citing same). When the discoverability of information becomes the subject of dispute, the party seeking to compel discovery has the burden of establishing that its request satisfies the relevancy requirements of Rule 26(b)(1). See *Bryant v. Ochoa*, 2009 U.S. Dist. LEXIS 42339 at *3 (S.D. Cal. 2009).

Further, "with its *potential* relevance under Rule 26(b)(2) unquestioned, the metadata of both archival and active ESI has been found to be discoverable." *U.S. ex rel. Carter, supra*, 305 F.R.D. at 237 (citing *Aguilar v. Immigration & Customs Enforcement Div., U.S. Dep't of Homeland Sec.*, 255 F.R.D. 350, 355–56 (S.D.N.Y.2008)). However, as with other types of ESI, the extent to which the producing party must turn over the metadata depends on the form in which the ESI whose metadata is sought is kept in the ordinary course of business. *Id.* at 355. Assuming the requesting party articulates a "precise and detailed" discovery request, the ESI and its accompanying metadata is discoverable and producible. *Id.* at 238-239. Rule 34 makes this clear and provides that metadata must be produced "as [it] is kept in the usual course of business or must organize and label [the data] to correspond with the categories in [a discovery] request." Fed. R. Civ. P. 34(b)(2)(E)(i)-(ii). *City of Colton v. American Promotional Events, Inc.*, 277 F.R.D. 578, 583 (C.D. Cal. 2011). To that end, as a matter of custom, "the [rebuttable] presumption is that the responding party must bear the expense of complying with discovery requests." *U.S. ex rel. Carter*, *supra*, 305 F.R.D. at 236–237 (citing *Country Vintner of N.C., LLC v.*

1   *E. & J. Gallo Wintery, Inc.*, 718 F.3d 249, 261 (4th Cir.2013)); *LightGuard v. Spot Devices,*
2   *Inc.*, 281 F.R.D. 593, 598 (D.Nev.2012)).

3        Once relevance is established, the opposing party must demonstrate the discovery
4   should be prohibited by substantiating its objections. *Morgan Hill Concerned Parents*
5   *Association*, *supra*, 2017 WL 445722, at *4 (citing *Lofton v. Verizon Wireless (VAW) LLC*,
6   308 F.R.D. 276, 281 (N.D. Cal. 2015)). Most significantly, consistent with Rule 26, a court
7   may limit discovery for any one of three reasons: (1) "the discovery sought is unreasonably
8   cumulative or duplicative;" (2) it is "obtainable from some other source that is more
9   convenient, less burdensome, or less expensive;" or (3) "the burden or expense of the
10  proposed discovery outweighs the likely benefit." Fed. R. Civ. P.  26(b)(2)(C)(i)—(iii);
11  *U.S. ex rel. Carter v. Bridgepoint Educ., Inc.*, 305 F.R.D. 225, 237 (S.D. Cal. Feb. 20,
12  2015) (citing *Nicholas v. Wyndham Int'l, Inc.*, 373 F.3d 537, 543 (4th Cir.2004 and *S. Ute*
13  *Indian Tribe v. Amoco Prod. Co.*, 2 F.3d 1023, 1029–30 (10th Cir.1993) (discussing the
14  courts' powers to grant protection against "undue burden and expense" by shifting costs of
15  discovery to the requesting party as a condition of discovery)).

16       With the relevance of the filepath information in dispute, the Court turns to CEV and
17  Corey's briefing and finds they have met their burden. CEV and Corey properly place
18  emphasis on Rule 34's stance that production of ESI is relevant. The Rule necessarily
19  encompasses the metadata that inherently exists within the ESI in requiring the Parties to
20  produce ESI as maintained in the usual course of business. To that end, the Parties' own
21  agreement to produce ESI with accompanying metadata (Doc. No. 71, 6:27-28) plainly
22  evidences that Javo, too, is of the position that the metadata underlying the ESI is as
23  relevant as the ESI itself. Equally convincing, the location and manner in which Javo stored
24  its ESI in the normal course of its business is directly relevant because, as part of its claims,
25  Javo "must prove that it took reasonable measures to maintain the secrecy of its alleged
26  trade secrets." (Doc. No. 71, 3:21-22.) For these reasons, the Court finds CEV and Corey
27  have met their burden as to establishing the relevance of the filepath information.

28

In turn, Javo fails to adequately rebut the presumption of relevance and, moreover, its additional objections are unconvincing. Javo's weightiest objection appears to be that the effort to discover and produce the filepath information CEV and Corey seek will be unduly burdensome and costly. However, "it cannot be argued that a party should ever be relieved of its obligation to produce accessible data merely because it may take time and effort to find what is necessary." *Peskoff v. Faber*, 244 F.R.D. 54, 62 (D.D.C.2007); *Juster Acquisition Co., LLC v. N. Hudson Sewerage Auth.*, 2013 U.S. Dist. LEXIS 18372, at *10, 2013 WL 541972, at *3 (D.N.J. Feb. 11, 2013) ("[A]ctive, online data, near-line data, and offline storage/archives are typically identified as accessible electronic data."); *Zubulake v. UBS Warburg LLC*, 216 F.R.D. 280, 284 (S.D.N.Y.2003) ("When a discovery request seeks accessible data—for example, active on-line or near-line data—it is typically inappropriate to consider cost-shifting"). Javo insists that the filepath information "does not exist as metadata and cannot be automatically generated during the collection process." (Doc. No. 72, 15: 12-13.) Consequently, Javo contends that "it will require a manual, document-by-document determination regarding the 'original' filepath where a document was stored 'in the normal course of business.'" (*Id.*, 15:10-12.)

But in so representing, Javo offers no explanation for why this is the case. Javo exclusively relies upon the declaration of its counsel, Alexander Miller, ("Miller Declaration") to verify these statements. But the Miller Declaration explains neither why the filepath information, unlike the other metadata underlying Javo's ESI, would not be automatically populated and readily producible nor why a document-by-document analysis is required in contrast to the productions Javo intends to make. The Court finds far more convincing CEV and Corey's briefing and the supporting declaration of ESI expert Lauren Doucette ("Doucette Declaration") because that declaration sets forth sufficient factual context as to how metadata, including filepath information, is created and stored and how it may be potentially altered. *U.S. ex rel. Carter*, *supra*, 305 F.R.D. at 243 ("While defendants did provide a declaration from an actual expert detailing these possible financial burdens [involved in the production of certain ESI and metadata], plaintiffs afforded only

their lawyers' words and emails. This very dearth of an actual expert declaration… is a telling sign of the plaintiffs' inadequate argumentation on this precise issue) (citing to *Medtronic Sofamor Danek, Inc. v. Michelson*, 229 F.R.D. 550, 557 (W.D.Tenn.2003); *Wiginton*, 229 F.R.D. at 570, 577 ("$249,000"); *Zubulake*, *supra*, 216 F.R.D. at 283 to illustrate necessity of setting forth factual specificity to support any objections to producing ESI or related metadata on undue burden grounds)). Further, even if the Court accepts Javo's representations that the filepath information does not presently exist in *any* of Javo's ESI, Javo provides not even an iota of insight into the approximate monetary cost, man hours, and length of time recovering and producing the filepath information would entail. In turn, this leaves the Court with no grounds to sustain Javo's objection on the basis of undue burden or cost, at least not in the immediate instance.

As to Javo's objections on privilege grounds, the Court is not persuaded that such objections should stand in the way of Javo producing any relevant and non-privileged filepath information to accompany Javo's relevant ESI productions. As with all routine discovery, Javo may address any privilege concerns by withholding, in good faith, certain filepath information on privilege grounds, timely raising its privilege objections to CEV and Corey, and producing a privilege log that identifies the withheld information at the same time Javo's ESI productions are due to be served. To the extent Javo's concern remains that there is "no mechanism in the PO for the basis for withholding to be communicated in a privilege log or by some similar method," the Parties are ORDERED to amend the ESI Protocol to reflect the mechanism the Court has described here. Further, as to Javo's objection that certain filepath information would be misleading because it would reflect the ESI's current location rather than where the ESI existed during the relevant time for purposes of either Javo's claims or CEV's counterclaims and the relevant time therein, Javo may again assert standard discovery objections reflecting not relevant information as to time. There is simply no reason to obstruct the free flow of relevant, non-privileged discovery on the basis of this particular objection or on privilege grounds. Javo's suggestion that this discovery should be halted altogether because, if not, it "will only lead

to further discovery disputes" subverts the spirit of the discovery rules that require production of relevant information, even if it not admissible for evidentiary purposes.

Given the above, the Court GRANTS CEV and Corey's request to compel Javo's production of its filepath information to the extent it presently exists and accompanies Javo's any ESI productions pursuant to the Parties' ESI Protocol. Javo may properly object to producing discrete filepath information if Javo can articulate a good faith basis for such objection, including, but not limited to irrelevance as to time or scope if Javo determines the filepath as presently displayed is misleading. In the event Javo determines any filepath information is privileged, Javo shall produce a privilege log indicating so along with its ESI and accompanying metadata and filepath information productions. To the extent that Javo maintains that any filepath information is not readily accessible, the Court hereby ORDERS the Parties to meet and confer over the matter and regarding whether a cost-effective resolution may be reached. Should the Parties remain at an impasse, the Court ORDERS them jointly contact this Court's Chambers regarding the dispute. At such time, the Court will (1) order Javo to file supplemental briefing, inclusive of a supporting declaration from at least one ESI expert, who can provide a reasonable estimate of the expense, man hours, and time involved in retrieving and producing the filepath information; and (2) provide CEV and Corey the opportunity to similarly respond with its own approximation of the cost and work entailed based on Javo's reporting. Only then may the Court properly determine which party may appropriately bear the cost of searching for, recovering, and producing the filepath information.

### d. Preservation of the Parties' Deleted and Ephemeral Data

Finally, under the ESI Protocol, the Parties disagree as to whether they are under any obligation to preserve deleted or ephemeral data; or, at least, they appear to be under such impression. While the Parties' briefing suggests the Parties' impasse on whether a preservation duty exists, their substantive analysis arrives at the same conclusion: to the extent ephemeral or deleted data is relevant to the claims and defenses at issue here, such data *should* be preserved. Throughout its briefing, Javo states the equivalent while opting

to frame the statement in negative terms: "The following categories of ESI need not be preserved, searched, or produced, unless the parties have reason to suspect it contains information that is relevant to any party's claims or defenses and is proportional to the needs of the case: (i) "deleted," … (ii) random access memory (RAM) or other ephemeral data…" (Doc. No. 72, 19:6-17.) The provision appears to be mutually enforceable as it obligates both Javo and CEV and Corey to preserve, search, and/or produce the listed data types if counsel finds grounds to believe such data is relevant to the claims or defenses at issue in this case. CEV and Corey's briefing appears to reference a prior version of Javo's proposed provision, which excludes the qualifier that the preservation duty attaches to data counsel suspects may be relevant. (Doc. No. 71, 9:1-14.) From there, CEV and Corey state they "agree these data sources need not be searched or produced in the first instance, but reserve their right to request that Javo produce information from these sources if it later becomes relevant and necessary." (*Id.*, 9:17-19.) Thus, this so-called dispute in fact appears to be a non-issue as the Parties are in agreement in principle, albeit not in exact language.

Based on the Parties' briefings and the excerpted representations above, there appears to be no genuine dispute on whether the Parties are obligated to, at least, preserve deleted and ephemeral and other similar kinds of data if relevant. In any event, the Court emphasizes that litigants bear a duty to preserve "what [they know], or should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery and/or is the subject of a pending discovery request." *Toppan Photomasks, Inc. v. Park*, 2014 WL 2567914, at *5 (N.D. Cal., May 29, 2014); see also *Io Grp.*, 2011 WL 4974337, at *5 (quoting *Zubulake, supra*, 220 F.R.D. at 217). Further, the duty "arises not only during litigation but also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation." *World Courier v. Barone*, 2007 WL 1119196, at *1 (N.D. Cal. Apr. 16, 2007) (quoting *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir.1998)). As to the scope of such duty, no party is ever obligated to preserve "every shred of paper, every e-mail or electronic document, and every backup tape;"

however, a litigant bears the duty to preserve what it "knows, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery and/or is the subject of a pending discovery request." *Zubulake, supra*, 220 F.R.D. at 217.

Courts generally agree that deleted, ephemeral, and other similar kinds of data are discoverable, and, necessarily then, subject to the parties' preservation duty. *U.S. ex rel. Carter*, *supra*,  305 F.R.D. at 236; see also *John B. v. Goetz*, 879 F.Supp.2d 787, 877–78 (M.D. Tenn. 2010) (noting that "[d]eleted information in a party's computer's backup tapes is as discoverable as electronic documents in current use," though simultaneously observing that these emails may in fact be presently maintained "as replicant data, archival data or residual data"); *Antioch Co. v. Scrapbook Borders, Inc.*, 210 F.R.D. 645, 652 (D.Minn.2002) ( "it is a well-accepted proposition that deleted computer files, whether they be e-mails or otherwise, are discoverable"). As both Javo and CEV and Corey articulate in their briefings, there is no question regarding whether a duty of preservation attaches to the file types at issue – ephemeral, deleted, and other similar data – when counsel has reason to believe such data may be relevant to the claims, counterclaims, and defenses in this litigation.

The Parties' position readily aligns with the authority that informs this matter, and this Court's determination that Javo, CEV, and Corey bear the ongoing duty to preserve such data that may be relevant to any extent. Accordingly, the Court GRANTS CEV and Corey's proposed request that the ESI Protocol reflect the Parties' mutual understanding that they are obligated to, at minimum, preserve ephemeral, deleted, and other related kinds of data where counsel reasonably suspects such data is relevant to the claims, counterclaims, and defenses at stake. To the extent that CEV and Corey disagree with Javo's proposed wording as reflected on page 19, lines 6 through 17 of Javo's briefing (Doc. No. 72), the Court hereby ORDERS the Parties to meet and confer to forge language that reflects their agreement and this Court's decision on the matter, prior to submitting the ESI Protocol for the Court's adjudication.

### III.   CONCLUSION

Having reviewed and considered the Parties' respective briefing, the Court hereby ORDERS as follows:

(1) CEV and Corey's request to modify the Protective Order to exclude Marshall and Konig from accessing OAEO information upon Marshall and Konig's execution of the Protective Order is DENIED; CEV and Corey's related request that the Court hold an evidentiary hearing on the scope of Marshall and Konig's work for Javo for purposes of the competitive decision-making issue is DENIED without prejudice;

(2) Javo's proposed modification to the Protective Order to include a patent acquisition bar as detailed in Javo's briefing, specifically inclusive of a two-year acquisition bar against CEV and Corey's litigation counsel of record as it relates to the technology at issue here, is GRANTED; the Parties shall meet and confer on the wording of the provision to ensure it reflects the Court's decision as discussed above to the extent that CEV and Corey believe Javo's language as proposed in its briefing does not square with the Court's Order;

(3) CEV and Corey's request to compel Javo to produce its filepath information is GRANTED, to the extent that such information readily exists in Javo's ESI as produced pursuant to the ESI Protocol; to the extent Javo has particular objections to producing specific filepath information on privilege grounds or otherwise, Javo shall timely assert such objections, produce a privilege log, and meet and confer with CEV and Corey on the matter; and finally, to the extent Javo asserts it would be too costly or otherwise burdensome to recover any filepath information Javo discovers does not already exist within the ESI, the Parties are ORDERED to first meet and confer on the matter and then if necessary jointly contact this Court's Chambers and be prepared to submit to supplemental briefing fully setting forth the cost, labor, and time such a recovery process will take; and

(4) CEV and Corey's request to modify the ESI Protocol to contain language reflecting the Parties' mutual obligation to preserve deleted, ephemeral, and similar kinds of data, to the extent counsel suspects such data may be relevant to the litigation, is GRANTED.

**IT IS SO ORDERED.**

Dated: April 29, 2020

Hon. William V. Gallo
United States Magistrate Judge