COOLEY LLP
Steven M. Strauss (99153) (sms@cooley.com)
Erin C. Trenda (277155) (etrenda@cooley.com)
Alexander R. Miller (294474) (amiller@cooley.com)
Joanna L. Hubberts (294230) (jhubberts@cooley.com)
4401 Eastgate Mall
San Diego, CA 92121
Telephone: (858) 550-6000
Facsimile:  (858) 550-6420

Jeffrey Karr (186372) (jkarr@cooley.com)
3175 Hanover Street
Palo Alto, CA 94304
Telephone: (650) 843-5000
Facsimile: (650) 849-7400

Attorneys for Plaintiff and Counterclaim-Defendant
Javo Beverage Co., Inc.

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAVO BEVERAGE CO., INC., | Case No. 19-cv-01859 CAB WVG |
| Plaintiff, | **JAVO'S MOTION TO STAY PENDING ARBITRATION** |
| v. | |
| CALIFORNIA EXTRACTION VENTURES, INC. AND STEPHEN COREY, | Date:   July 1, 2020<br>Ctrm.:  4C (4th Floor)<br>Judge:  Hon. Cathy Ann Bencivengo |
| Defendants. | Complaint Filed:   September 26, 2019<br>Trial Date:      TBD |
| CALIFORNIA EXTRACTION VENTURES, INC., | PER CHAMBERS RULES, NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT |
| Counter-Claimant, | |
| v. | |
| JAVO BEVERAGE CO., INC., | |
| Counterclaim-Defendant. | |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ............................................................................. 1

II.   BACKGROUND ............................................................................... 1

    A.    Corey Owes Broad Duties of Confidentiality and Invention Assignment to Javo. ............................................................... 2

    B.    Corey Breached His Contractual Obligations to Javo and Engaged in Tortious Conduct with CEV, Forcing Javo to Initiate Both Litigation and Arbitration to Protect its Interests. .................................. 3

    C.    CEV Has Asserted Baseless Patent Infringement Counterclaims Against Javo. ......................................................................... 3

    D.    Defendants Previously Recognized the Economy of a Stay. ..................... 5

    E.    The Arbitration is Set to Be Heard By the End of the Year. .................... 6

III.  LEGAL STANDARD ....................................................................... 6

IV.  ARGUMENT ................................................................................... 8

    A.    Judicial Economy and the Interests of Justice Favor a Stay of the Patent Infringement Claims Pending Resolution of the Arbitration. .......... 8

        1.    The arbitration will greatly narrow the issues here, and may resolve the patent infringement counterclaims completely. ............ 8

        2.    Continuing to proceed with the patent-related deadlines in parallel with the arbitration will be unnecessarily costly and burdensome. ................................................................. 11

        3.    Staying the patent infringement counterclaims will not harm CEV. ...................................................................... 14

    B.    Scope of the Stay ................................................................... 15

V.   CONCLUSION ............................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alzheimer's Inst. of Am. v. Elan Corp. PLC*,
2011 WL 6748634 (N.D. Cal. Dec. 22, 2011) ..............................................9, 10

*CMAX, Inc. v. Hall*,
300 F.2d 265 (9th Cir. 1962) ...................................................6, 7, 8, 14

*Ellingson Timber Co. v. Great N. Ry. Co.*,
424 F.2d 497 (9th Cir. 1970) ..................................................15

*Filtrol Corp. v. Kelleher*,
467 F.2d 242 (1972) ...............................................................5

*Gen-Probe, Inc. v. Amoco Corp., Inc.*,
Case No. 95-0998J, 926 F. Supp. 948 (S.D. Cal. 1996)................................9, 12

*Innovative Patented Tech., LLC. v. Samsung Elecs. Co.*,
2008 WL 2726914 (S.D. Fla. July 10, 2008) ...............................9, 11

*KPMG LLP v. Cocchi*,
565 U.S. 18 (2011).................................................................11

*Landis v. N. Am. Co.*,
299 U.S. 248 (1936)...........................................................6, 8, 15

*Leyva v. Certified Grocers of California, Ltd.*,
593 F.2d 857 (9th Cir. 1979) ..................................................6, 12

*McGovern v. U.S. Bank N.A.*,
362 F. Supp. 3d 850 (S.D. Cal. 2019) .......................................13

*Morales v. Lexxiom, Inc.*,
2010 WL 11507515 (C.D. Cal. Jan. 29, 2010)..............................7

*Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*,
460 U.S. 1 (1983)..................................................................7

*Neville v. Aldridge Constr., Inc.*,
2018 WL 3472189 (C.D. Cal. Apr. 10, 2018)...........................*passim*

*Pirkle v. Ogontz Controls Co.*,
1987 WL 19882 (E.D. Pa. Nov. 12, 1987) ..................................10

*Prencipe v. Kerv Wearables Ltd.*,
2017 WL 2335613 (N.D. Cal. May 30, 2017) ..............................9, 14

*Santrade, Ltd. v. Gen. Elec. Co.*,
1990 WL 312778 (E.D.N.C. Dec. 6, 1990).................................10

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*SST Millennium LLC v. Mission St. Dev. LLC*,
2019 WL 2342277 (N.D. Cal. June 3, 2019)....................................................7, 13

**Statutes**

Federal Arbitration Act.......................................................................................11, 13

**Other Authorities**

Fed. R. Civ. P.
26(f)........................................................................................................................4, 6
42(b)..........................................................................................................................15

Local Rule
4.1...............................................................................................................................4

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

iii.

JAVO'S MOTION TO STAY
CASE NO. 19-CV-1859 CAB WVG

## I.   INTRODUCTION

Javo Beverage Company, Inc. ("Javo") filed this lawsuit after discovering that its former co-founder Stephen Corey ("Corey") and his new business, California Extraction Ventures, Inc. ("CEV," together with Corey, "Defendants") stole Javo's confidential and proprietary extraction process. At the same time, as required by Corey's Employment Agreement ("EA") and Confidentiality and Invention Assignment Agreement ("CIAA") with the company, Javo also initiated arbitration proceedings against Corey on grounds that Corey breached his contractual obligations to Javo by, among other things, failing to assign to Javo the inventions Corey patented based on Javo's confidential and proprietary information. These same patents are now being asserted by CEV against Javo in this lawsuit, where CEV has brought counterclaims accusing Javo of infringing the very same patents that disclose Javo's extraction process. In other words, CEV is now suing Javo for alleged patent infringement based on patents Javo rightfully owns.

The arbitration is scheduled to be heard by the end of the year—before the current close of fact discovery in this matter. Because the threshold contractual issues going to the question of patent ownership are being litigated in the arbitration and will be resolved far in advance of any decision in this Court, Javo seeks a stay of the patent infringement counterclaims here. This will be more efficient for the parties and the Court alike, and is consistent with the strong policy favoring a party's contractual right to arbitration.

## II.   BACKGROUND

Javo is a leader in cold brew extraction for coffee, tea, and botanicals. For over two decades, Javo has developed, perfected, and protected its extraction process as a trade secret, and has otherwise shielded its confidential information from public disclosure. Corey is an original founder of Javo and former head of Javo's research and development efforts. Corey was the principal inventor and developer of Javo's

proprietary extraction process for Javo during the course of his employment, but later secretly formed a competing company called CEV, where he is now an executive.

### A. Corey Owes Broad Duties of Confidentiality and Invention Assignment to Javo.

In 2001, Corey signed the EA and CIAA that he remains bound by today. Under the agreements, Corey acknowledged Javo's confidential information and trade secrets "are the sole property" of the company and agreed not to use or disclose Javo's confidential information or trade secrets, except for Javo's benefit. (EA § 7.3; CIAA § 10.2.) The EA broadly defines "Confidential Information" as including "any data or information, other than Trade Secrets, that are valuable" to the company and "not generally known to the public or to competitors" (EA § 7.1) and "all information that has or could have commercial value or other utility" in the company's business (CIAA § 2). Under the CIAA, Corey also expressly agreed to and initialed the following, in capital letters: "FOR VALUABLE CONSIDERATION, EMPLOYEE TRANSFERS AND ASSIGNS EMPLOYEE'S ENTIRE RIGHT, TITLE, AND INTEREST IN ALL INVENTIONS (AS DEFINED ABOVE) MADE, CONCEIVED, REDUCED TO PRACTICE, OR LEARNED BY EMPLOYEE (EITHER ALONE OR JOINTLY WITH OTHERS) DURING HIS PAST RELATIONSHIP WITH COMPANY OR ANY [OF ITS PREDECESSORS IN INTEREST]." (CIAA § 8.2.) Corey further acknowledged and agreed that for anything he invented, developed, or designed during the term of his employment, "all Inventions belong to and shall be the sole property of Company and shall be Inventions of Company subject to the provisions of this Agreement." (CIAA § 8.3). Such Inventions include "all discoveries, developments, designs, ideas, improvements, inventions, formulas, processes, techniques, know-how, intellectual property, and data . . . made, conceived, reduced to practice, or learned by [Corey during his employment]." (CIAA § 8.1.)

**B.    Corey Breached His Contractual Obligations to Javo and Engaged in Tortious Conduct with CEV, Forcing Javo to Initiate Both Litigation and Arbitration to Protect its Interests.**

Corey was terminated from Javo in 2011 in connection with Javo's bankruptcy restructuring. Corey received a severance payment from Javo under his EA and signed a release for Javo. (EA § 6.1(b) and Ex. A at Doc. No. 1-2 pages 8 and 26 of 27; *see also* Riley Decl. at Doc. No. 20-4 ¶ 6.) Unbeknownst to Javo, at some point after his departure from Javo, Corey joined with Kurt Toneys (a former CEO of Javo) to form CEV, where he began to file patents and develop a competing product based on Javo's extraction process. Corey currently serves as President, Chief Technology Officer, and Director at CEV. CEV, with Corey as its founder and current Executive/Director, knew about Corey's invention assignment obligations at Javo, as well as the extent to which anything he purports to have invented after leaving Javo builds on that work.

On September 26, 2019, Javo initiated this action against Corey and/or CEV for trade secret misappropriation, declaratory judgment of patent ownership, and intentional interference with contractual relations. (*See* Doc. No. 1.) As required by Javo's and Corey's agreement to arbitrate disputes arising under the EA and CIAA, Javo separately initiated arbitration proceedings on its contractual claims against Corey before the American Arbitration Association on October 11, 2019. Specifically, Javo alleges that Corey materially breached his agreement under the EA not to use or disclose any of Javo's confidential information, and his agreement under the CIAA to transfer and assign to Javo any discoveries or inventions conceived or learned of during his employment at Javo. The arbitration is currently proceeding before the Honorable Jay C. Gandhi (Ret.) (the "Arbitrator"). The same counsel at Sheppard Mullin represents Corey in the arbitration and represents CEV and Corey in this litigation. CEV and Corey share a common interest in fully litigating the claims in the arbitration.

**C.    CEV Has Asserted Baseless Patent Infringement Counterclaims Against Javo.**

In response to Javo's claims, CEV has asserted patent infringement

counterclaims against Javo based on the same coffee extraction process Javo has been using for decades. (Doc. No. 38.) CEV alleges it "is informed and believes that, sometime after March 17, 2015, and likely following the publication of the CEV Patents on September 22, 2016, Javo adopted and started using extraction processes for its commercially available coffee, tea, and/or botanical extract products that embody one or more of the claims of the CEV Patents," and that Javo has used the patents "as a road map to develop and improve Javo's own extraction process." (Doc. No. 38 ¶¶ 36–37.) CEV has identified no support for this accusation. To the contrary, the fact is that Javo did not learn about the offending patents until May 2019, immediately after which Javo sent Corey and CEV a cease and desist letter. (*See, e.g.*, Doc. Nos. 20-2, 20-3, 20-4 (Declarations of B. Petersmeyer, G. Anderson, and D. Riley); Doc. No. 20-6 at 30–33 (Ex. 9).) Javo has been practicing the same extraction process to manufacture the accused products for decades. CEV, on the other hand, admits that it does not have any products that practice or were made using methods that practice the asserted claims (and is unlikely to anytime soon given it recently appears to have furloughed or terminated most of its employees), and is not seeking preliminary injunctive relief against Javo.

Tellingly, while the parties have continued to proceed with the deadlines under the Patent Local Rules and the Court's scheduling order at Doc. No. 65, CEV has made only minimal disclosures and appears to be prosecuting its infringement counterclaims with as little effort and cost as possible. (Trenda Decl. ¶¶ 13–18.) For example, rather than exchange actual claim constructions and identification of extrinsic evidence pursuant to Patent Local Rule 4.1(a) and (b), CEV sent a one paragraph email stating that "no construction is necessary and each term, phrase, and/or clause of the Asserted Claims can and should be understood according to its plain and ordinary meaning." (Trenda Decl. Ex. 8.) The idea that Corey's pseudo-scientific terms like "catalyzing energy creators" can be understood according to their plain and ordinary meaning is preposterous, and underscores the unnecessary cost that Javo is being forced to incur on a claim construction exercise that, after the arbitration, may be entirely unnecessary.

**D.   Defendants Previously Recognized the Economy of a Stay.**

Starting with the parties' Rule 26(f) conference, both CEV and Corey have repeatedly indicated that they may seek to stay either the district court action or the arbitration "[i]n the interests of judicial economy and efficiency." (Trenda Decl. Ex. 1 (Joint Discovery Plan at Section 15); *see also id.* ¶¶ 2–12; *id.* Ex. 2.) In subsequently arguing for a stay of the arbitration on behalf of Corey, counsel asserted that a stay was "necessary to promote the interests of judicial economy, preserve the limited resources of the parties, the district court, and the arbitrator." (Trenda Decl. Ex. 3.) Corey and CEV's counsel also recognized the Court's "inherent power" to issue a stay of the case before it, as Javo now requests here. (*Id.* (quoting *Filtrol Corp. v. Kelleher*, 467 F.2d 242, 244 (1972) (addressing Court's inherent authority to stay the case pending before it, not a separate arbitration).) Following an Arbitration Management Conference on March 2, 2020, Corey filed a motion with the Arbitrator seeking to stay the arbitration.[1] (Trenda Decl. ¶¶ 6–9.)

The Arbitrator denied Corey's motion to stay the arbitration by a ruling dated April 21, 2020, which was served on the parties on Friday, May 1, 2020. (Trenda Decl. Ex. 5.) The Arbitrator also issued a scheduling order providing for the arbitration to proceed expeditiously and be heard by December 2020. (*Id.* at 2 (noting that "the Arbitrator remains in a position to continue forward with this proceeding assiduously, and indeed under an expectation and the parties' pact to do so"); Trenda Decl. Ex. 6 (Scheduling Order 1).) Shortly thereafter, Javo's counsel asked if Defendants were now interested in staying the district court litigation pending the outcome of the arbitration. (Trenda Decl. Ex. 7.) Defendants waited until May 19, 2020—two weeks later—before responding that they were not interested.[2] (*Id.*) Javo then promptly proceeded to prepare

---

[1] Corey's counsel previously represented to Javo and the Arbitrator that they would also be moving to stay the arbitration in this Court, but never did so. (Trenda Decl. ¶ 8.)

[2] Although Corey has participated in deadlines under the scheduling order in the arbitration, he continues to purportedly reserve all rights on the denied motion to stay the arbitration.

the present motion for a temporary stay in the district court pending arbitration.

### E. The Arbitration is Set to Be Heard By the End of the Year.

The arbitration will resolve the issue of whether Corey breached his obligations of confidentiality and invention assignment to Javo, which will inform and may even resolve many of the issues in the district court litigation. The arbitration is proceeding under an accelerated schedule that has the arbitration hearing set for December 2020. Both parties have already served discovery and made preliminary witness disclosures, and fact discovery closes on August 28, 2020. The hearing on Javo's claims is set for December 7–11, 2020 with post-hearing briefs due December 21, 2020. The Arbitrator has already advised the parties that these dates "are firm, and the parties shall plan accordingly." (Trenda Decl. Exs. 5 and 6.)

In contrast, the district court litigation is currently proceeding under the Patent Local Rules and the scheduling order at Doc. No. 65, which front-ends contention and claim construction discovery on CEV's infringement counterclaims that may end up being unnecessary. These patent-related dates and deadlines command much of the schedule through the claim construction hearing set for August 27, 2020, and fact discovery is not set to close until December 21, 2020. (Doc. Nos. 65, 78.) While the parties have served additional discovery in this action, besides initial disclosures in accordance with FRCP 26(f) and disclosures under the Patent Local Rules, no documents have been exchanged and no depositions have been taken beyond the limited 30(b)(6) deposition that Defendants were permitted during the PI proceedings. Expert discovery closes March 15, 2021, and dispositive motions are not due until March 29, 2021—well after the arbitration will be resolved.

### III. LEGAL STANDARD

The Ninth Circuit has long recognized that "[a] district court has inherent power to control the disposition of the causes on its docket in a manner which will promote economy of time and effort for itself, for counsel, and for litigants." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962); *see also Landis v. N. Am. Co.*, 299 U.S. 248, 254–

55 (1936). This includes a stay pending resolution of arbitration proceedings, regardless of whether the litigants are all parties to the arbitration agreement. [3] *Leyva v. Certified Grocers of California, Ltd.*, 593 F.2d 857, 863–64 (9th Cir. 1979) ("A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case. This rule applies whether the separate proceedings are judicial, administrative, or arbitral in character."); *SST Millennium LLC v. Mission St. Dev. LLC*, 2019 WL 2342277, at *4 (N.D. Cal. June 3, 2019) ("As to litigants who are not parties to the arbitration agreement, the court may stay the litigation as a matter of discretion to await the outcome of the pending arbitration.").

Courts generally weigh three factors when evaluating a stay that is within the trial court's discretion: "[1] the possible damage which may result from the granting of a stay, [2] the hardship or inequity which a party may suffer in being required to go forward, and [3] the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *CMAX, Inc.*, 300 F.2d at 268.

In the arbitration context, "a stay should be granted where the resolution of issues in the arbitration would be determinative of the issues in the lawsuit." *SST Millennium LLC*, 2019 WL 2342277, at *5; *Morales v. Lexxiom, Inc.*, 2010 WL 11507515, at *11 (C.D. Cal. Jan. 29, 2010) (staying action because "[i]t is well-established that arbitration proceedings can have preclusive effect in federal court proceedings," and "it is clear that the outcome of the present litigation will be significantly affected by the arbitration"). In the patent context, courts routinely stay infringement claims "for a

---

[3] Such a stay is limited in time and is different than issuing a stay as a form of abstention. *Neville*, 2018 WL 3472189, at *3. It is also consistent with the FAA and the Court's discretion to issue stays on non-arbitrable claims pending arbitration. *See Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 21 n. 23 (1983) ("When there are some claims subject to arbitration, and some claims that are not subject to arbitration the "decision [regarding whether the entire case should be stayed pending the outcome of arbitration] is one left to the district court . . . as a matter of its discretion to control its docket."

limited amount of time until the parties have resolved their patent ownership dispute" in another forum. *Neville*, 2018 WL 3472189, at *3 (staying patent infringement claims because "in balancing hardships and the potential to significantly narrow the scope of the proceedings, such a stay will allow this Court to more efficiently manage its own docket and provide clarity for these proceedings").

## IV. ARGUMENT

### A. Judicial Economy and the Interests of Justice Favor a Stay of the Patent Infringement Claims Pending Resolution of the Arbitration.

A stay of Defendants' patent infringement claims until after the arbitration is completed is appropriate and will "promote economy of time and effort for [the Court], for counsel, and for litigants." *CMAX, Inc.*, 300 F.2d at 268. Specifically, as discussed below, a stay of the infringement counterclaims will: (1) allow the Arbitrator to expeditiously resolve necessary threshold determinations as to whether Corey violated his contractual duties of confidentiality and invention assignment to Javo, which directly relates to Javo's ownership of the patents, and could provide a complete defense to the patent infringement counterclaims; (2) preserve party and judicial resources and save Javo from having to attack the validity of patents it may well own, and (3) not damage CEV, which does not claim to have any commercial products that practice the patents, and did not accuse Javo of any alleged infringement until this litigation (despite Corey/CEV's knowledge of Javo's extraction process and products well before then). *See id.* (citing *Landis*, 299 U.S. at 254–55).

#### 1. The arbitration will greatly narrow the issues here, and may resolve the patent infringement counterclaims completely.

Patent ownership is a fundamental prerequisite to CEV's patent infringement counterclaims against Javo. If Javo is determined to be the owner (or co-owner) of the asserted patents, this provides a complete defense to the counterclaims. A temporary stay until after the arbitration will greatly narrow the issues before the Court, if not resolve them completely, because the Arbitrator will be required to make threshold

determinations as to: (1) whether Corey had a contractual duty to assign the patents to Javo, and (2) whether Corey violated that duty by patenting the claimed inventions and purportedly assigning them to CEV. If Corey had no right to assign the patents to CEV in the first place, then CEV does not own the patents, and thus has no standing to sue Javo for patent infringement. Similarly, if Javo has any ownership right in the asserted patents—whether as co-owner or the sole owner—then Javo has a complete defense to the asserted infringement counterclaims.

Courts regularly grant stays under similar circumstances. For example, in *Gen-Probe, Inc. v. Amoco Corp., Inc.*, Case No. 95-0998J, 926 F. Supp. 948, 963–64 (S.D. Cal. 1996), the Southern District of California stayed a patent infringement suit pending resolution of related patent ownership proceedings in the state court on grounds that if ownership were established "Gen-Probe would be deprived of any ownership interest in the patents in suit, and would lack standing to complain even of Amoco's current acts of infringement." *Id.* More recently, in *Neville v. Aldridge Constr., Inc.*, 2018 WL 3472189 (Apr. 10, 2018), the Central District of California also stayed an action involving patent infringement claims pending resolution of ownership issues in a separate action. The *Neville* court reasoned that "staying the case for a limited amount of time until the parties have resolved their patent ownership dispute . . . will allow this Court to more efficiently manage its own docket and provide clarity for these proceedings." *Id.* at *3. In *Prencipe v. Kerv Wearables Ltd.*, 2017 WL 2335613, at *1–2 (N.D. Cal. May 30, 2017), the Northern District of California similarly stayed an action involving claims of patent infringement where "resolution of the patent ownership dispute would simplify issues in this matter and preserve the orderly course of justice." *See also Alzheimer's Inst. of Am. v. Elan Corp. PLC*, 2011 WL 6748634, at *7 (N.D. Cal. Dec. 22, 2011) (staying patent infringement action pending resolution of parallel litigation because "a decision by the [other] court on the issue of patent ownership there is potentially dispositive of the dispute in this case"). Other district

1    courts outside of California have reached similar conclusions on this issue.[4]

2           Corey and CEV agree that it is most efficient to proceed in only one forum, they

3    just disagree with Javo on which one. In Corey's failed attempt to stay the arbitration,

4    Corey and his counsel (who also represent CEV) have already taken the position that

5    there are overlapping issues between this litigation and the arbitration. (Trenda Decl.

6    Ex. 3.) In denying Corey's motion to stay the arbitration, the Arbitrator also

7    acknowledged as much, finding that "[b]oth the Demand here and the complaint in the

8    [District Court] Litigation advance similar allegations and claims," and thus will have

9    overlapping issues. (Trenda Decl. Ex. 5 at 1.) Javo agrees. But to be clear, the overlap

10   between the district court litigation and the arbitration favors a stay of the district court

11   action, not the other way around. As the Arbitrator recognized in denying Corey's

12   motion to stay, the arbitration is well-positioned to move quickly and efficiently to

13   resolution, consistent with the parties' contracted-for rights. (*Id.* at 3.) "The existing

14   schedule for the [District Court] Litigation track puts the parties' matter on calendar for

15   trial in late summer/fall of 2021."[5] (*Id.* at 2.) Meanwhile, "the arbitration can be resolved

16   by the ***end of 2020***" as "the Arbitrator remains in a position to continue forward with

17   this proceeding assiduously, and indeed under an expectation and the parties' pact to do

18   so." (*Id.*) Accordingly, the arbitration is set to be heard from December 7–11, 2020—

19
20   [4] *See, e.g.*, *Innovative Patented Tech., LLC. v. Samsung Elecs. Co.*, 2008 WL 2726914,
     at *1 (S.D. Fla. July 10, 2008) ("Granting a motion to stay when pending litigation will
21   address the ownership of the patent in suit is well within a court's discretionary
     power."); *Santrade, Ltd. v. Gen. Elec. Co.*, 1990 WL 312778, at *2 (E.D.N.C. Dec. 6,
22   1990) ("If General Electric is held to be the rightful owner of [the patents], it could not
     be liable for infringement. Therefore, a stay conserves the time and resources of the
23   parties, counsel, and the courts should that be the outcome of that case."); *Pirkle v.
     Ogontz Controls Co.*, 1987 WL 19882, at *2 (E.D. Pa. Nov. 12, 1987) ("First it is a
     waste of judicial resources for this court to rehear extensive evidence and arguments
24   already presented before the state court with regard to the issue of ownership. Second,
     it is unfair to impose on either party the burden of litigating the identical issue of
25   ownership in two forums. . . . Indeed, the very foundation of plaintiffs' patent
     infringement claim requires the determination of ownership of the patents which
26   defendants allegedly infringed."), *aff'd*, 852 F.2d 1293 (Fed. Cir. 1988).)
     [5] This assumes the challenges of the COVID-19 crisis does not further impact the trial
27   date. *See* [[Order]] ("[G]iven the current unprecedented circumstances relating to the
     COVID-19 pandemic and statewide 'shelter in place' orders, it is not beyond conjecture
28   to envision further setbacks in the [District Court] Litigation.".)

before the December 21, 2020 fact discovery cutoff in this case, and well ahead of the current March 29, 2021 dispositive motion deadline. (*Compare* Trenda Decl. Ex. 6 *with* Doc. No. 65.) Resolving threshold issues in the arbitration concerning Corey's contractual obligations to Javo, which go directly to the patent ownership question, is not only required under contract and the Federal Arbitration Act ("FAA"), it will be faster and more efficient than attempting to do so here. *See Innovative Patented Tech., LLC.*, 2008 WL 2726914, at *2 (granting stay where "the Court is not convinced that it will be able to resolve the ownership issue more quickly" than another forum). If Defendants renew their argument that they are concerned about the possibility of conflicting rulings on these threshold issues, this is highly unlikely given the current schedules.[6] Moreover, a stay would even more fully address any such concern while continuing to protect Javo and Corey's bargained-for right to arbitration and furthering the FAA's "emphatic federal policy in favor of arbitral dispute resolution." *KPMG LLP v. Cocchi*, 565 U.S. 18, 21 (2011).

Even if the breach of contract claims in the arbitration are not decided in Javo's favor, permitting the arbitration to proceed first will still narrow the issues and create efficiencies here. Regardless of the outcome in the arbitration, this factor favors a stay.

### 2. Continuing to proceed with the patent-related deadlines in parallel with the arbitration will be unnecessarily costly and burdensome.

Allowing the patent infringement counterclaims to proceed against Javo in parallel with the arbitration is inequitable and inefficient, and should be avoided for at least three reasons.

First, a stay will preserve party and judicial resources alike. The current scheduling order, which tracks the Patent Local Rules, has costly patent discovery and disclosures front-loaded through the claim construction hearing scheduled for August

---

[6] The Arbitrator is also aware of Defendants' concern regarding possible conflicting rulings, and agrees that "the timing of an expedient schedule in keeping with the spirit of arbitration can avoid this potential pitfall." (Trenda Decl. Ex. 5.)

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

11.

JAVO'S MOTION TO STAY
CASE NO. 19-CV-1859 CAB WVG

27, 2020. Javo has already incurred thousands of dollars in fees in connection with invalidity contentions and proposed claim contentions alone, and anticipates incurring substantially greater expenses associated with additional patent infringement related discovery, briefing, and other preparation through claim construction. The claim construction hearing and the parties' discovery disputes will also divert resources from the Court, even though arbitration may obviate the need for further patent infringement proceedings.[7] *See Leyva*, 593 F.2d at 864 ("It would waste judicial resources and be burdensome upon the parties if the district court . . . were mandated to permit discovery, and upon completion of pretrial proceedings, to take evidence and determine the merits of the case at the same time as the arbitrator is going through a substantially parallel process."). At minimum, the Arbitrator's resolution of the threshold issues concerning the validity of Corey's employment agreements and Corey's duty to assign the patents will at least clarify and streamline the issues here.[8] Consideration of this potentially unnecessary expense and burden strongly favors a stay. *See, e.g.*, *Gen-Probe, Inc.*, 926 F. Supp. at 964 (granting stay pending resolution of patent ownership issue in another forum "because of the massive costs that proceeding with this litigation would entail for the parties and the court").

Second, if the patent infringement counterclaims continue to proceed in parallel with the arbitration, Javo will face additional hardship "by having to take adverse positions to patents it believes it owns." *Neville*, 2018 WL 3472189, at *3. Now that Defendants have improperly taken and disclosed Javo's process in patents, it is inequitable that Javo should be required to prematurely litigate to decision issues of

---

[7] The strain that COVID-19 has placed on judicial and party resources alike, further exacerbates these issues and counsels in favor of a stay.

[8] Moreover, once the stay is lifted, the patent-related discovery can pick up where it left off, and the patent disclosures to date will not need to be repeated. By this time the relevant witnesses will have also been identified and deposed, and any responsive documents will have been produced. With the benefit of the Arbitrator's ruling, the parties will then be able to reassess their respective cases, abandon any claims or defenses that are no longer viable, and efficiently and expeditiously moving the district court case towards trial.

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

12.

JAVO'S MOTION TO STAY
CASE NO. 19-CV-1859 CAB WVG

claim construction and/or invalidity that may destroy the value and enforceability of those patents entirely. A stay will protect Javo from the risk of a pyrrhic victory in this litigation, and avoid forcing Javo to choose between fully defending against CEV's counterclaims and preserving Javo's future ability to protect against the unauthorized use of its extraction process by other third parties. This consideration also favors a stay. *See id.* (granting stay based on similar considerations).

Third, permitting the patent infringement claims to proceed before the arbitration is resolved will also "undermine [Javo]'s contractual right to resolve its disputes through arbitration" under the FAA. *SST Millennium LLC*, 2019 WL 2342277, at *5. Javo and Corey expressly bargained to arbitrate the issue of whether Corey violated the CIAA by failing to assign his patents to Javo. CEV (and Corey, as its co-founder, President, and Director) should not be permitted to deprive Javo of its contractual right to a prompt and effective resolution of the contractual dispute with Corey by prematurely forcing Javo to attack the very same patents "may end up owning."[9] Preventing CEV from unfairly weaponizing the patents in this way is also consistent with the broad policy favoring arbitration under the FAA. *See, e.g.*, *McGovern v. U.S. Bank N.A.*, 362 F. Supp. 3d 850, 856 (S.D. Cal. 2019) ("Because of the strong policy favoring arbitration, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.").

In sum, the parties and the Court should not be required to engage in costly and prejudicial parallel litigation on the infringement counterclaims. This is particularly true when, in as few as six months from now, the Arbitrator is prepared to hear and decide the threshold issue of whether Corey violated the CIAA by failing to assign the patents to Javo. This factor also favors a stay.

---

[9] (*See, e.g.*, Doc. No. 69, Preliminary Injunction Hr'g Tr. at 13:23–14:1 ("If the provisional application has disclosed publicly your trade secrets, they're out there, and the patents are not going to be withdrawn. They're done. They're history. And you may end up owning them.").)

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

13.

JAVO'S MOTION TO STAY
CASE NO. 19-CV-1859 CAB WVG

### 3. Staying the patent infringement counterclaims will not harm CEV.

A limited stay of the patent infringement claims will not harm CEV (or Corey), and will actually help address CEV's and Corey's past concerns about the cost of the proceedings. (Trenda Decl. Ex. 3.) The same counsel representing CEV and Corey here are also representing Corey in the arbitration. CEV, with Corey at the helm, has known the true facts all along, including at the time Corey/CEV filed for the patents. CEV and Corey share a common interest in fully litigating the claims in the arbitration such that CEV cannot avoid the results. If Javo prevails in the arbitration, Javo will have a complete defense to CEV's patent infringement claims, and both sides can avoid the unnecessary burdens of further contention discovery and claim construction proceedings under the Patent Local Rules. Even if Javo does not prevail in the arbitration, staying the patent counterclaims will lead to clear efficiencies by allowing the parties to resolve threshold ownership issues. After the arbitration is resolved, any outstanding deadlines under the Patent Local Rules can be resolved well in advance of any future trial date in this matter (which will likely be delayed due to COVID-19). A stay of the counterclaims for several months under these circumstances is simply not prejudicial.

To the extent CEV contends that it will be prejudiced by even a short stay of its patent infringement claims, CEV has been aware of Javo and the allegedly infringing products described on Javo's website since CEV's formation in or around January 2015 (and well before that time), vis-à-vis Corey and CEV co-founder and former Javo CEO Kurt Toneys. CEV/Corey's delay in waiting until Javo initiated this litigation to accuse Javo of infringing the patents "counters any argument that it faces prejudice or damage from a stay." *Neville*, 2018 WL 3472189, at *2. This is especially true where there is absolutely no basis for CEV's contention that Javo somehow modified its pre-existing proprietary process based on the patents. In any event, CEV cannot establish "why money damages would be insufficient to remedy" the alleged patent damages at a later

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

14.

JAVO'S MOTION TO STAY
CASE NO. 19-CV-1859 CAB WVG

date, especially as CEV is not seeking preliminary injunctive relief and has no competing products in the marketplace. *Prencipe*, 2017 WL 2335613, at *3 (granting stay and rejecting unsubstantiated claim of "irreparable harm"); *see also CMAX*, 300 F.2d at 269 (a delay in the recovery of damages "is not the kind of prejudice which should move a court to deny a requested postponement"). In fact, CEV admits it does not currently have any commercial products using the patented process, and is unlikely to launch any commercial products for several months at the earliest—if ever. This factor also favors a stay.

***

A temporary stay of CEV's patent infringement counterclaims is warranted and just here. Staying the counterclaims will either help simplify the issues or resolve the counterclaims entirely, and will allow the parties and the Court to avoid the undue and potentially unnecessary costs and burdens associated with litigating these claims. CEV delayed for years in bringing its patent infringement claims, and will not be damaged by a temporary stay while the arbitration is resolved.

## B. Scope of the Stay

It is well within in the Court's discretion under *Landis* to stay only CEV's counterclaims pending the arbitration. If the Court prefers, it would also be procedurally proper to bifurcate Javo's claims under Federal Rule of Civil Procedure 42(b) and allow that portion of the case to proceed through discovery while waiting for the Arbitrator to resolve the outstanding patent ownership issues.[10] This would avoid unnecessarily front-loading costs relating to patent discovery and claim construction proceedings under the Patent Local Rules that may become moot if the Arbitrator rules in Javo's favor, while allowing Javo's asserted claims of trade secret misappropriation,

---

[10] Federal Rule of Civil Procedure 42(b) expressly permits a district court to bifurcate counterclaim proceedings "[f]or convenience, to avoid prejudice, or to expedite and economize." Fed. R. Civ. Proc. 42(b); *see also Ellingson Timber Co. v. Great N. Ry. Co.*, 424 F.2d 497, 499 (9th Cir. 1970) ("One of the purposes of Rule 42(b) is to permit deferral of costly and possibly unnecessary discovery proceedings pending resolution of potentially dispositive preliminary issues.").

Cooley LLP
Attorneys At Law
San Diego

15.

Javo's Motion to Stay
Case No. 19-cv-1859 CAB WVG

declaratory judgment of patent ownership,[11] and tortious interference to proceed. This would also alleviate the concern that Javo may be forced to prematurely attack the very patents it may own in order to fully defend against CEV's counterclaim. To the extent Corey and/or CEV purport to have concerns regarding inefficiencies in discovery between the arbitration and district court action, this can be addressed in the cross-use agreement currently being negotiated by the parties to the arbitration. (Trenda Decl. ¶ 11.) Further, as detailed above, given the expeditious schedule of the arbitration, there should not be any concern about inconsistent rulings across the two actions.[12]

## V.   CONCLUSION

CEV's patent infringement claims will continue to be costly and distracting for the parties to litigate, and may effectively be resolved by the decision in the arbitration on the threshold contractual issue of Corey's invention assignment obligations to Javo. The arbitration is set to conclude later this year—long before dispositive motions will be due. The Court should stay the patent infringement claims, until the Arbitrator is able to resolve the threshold contractual issues that impact the question of patent ownership. If the counterclaims are not stayed, Javo reserves the right to seek an order requiring CEV to post a bond protecting Javo against the cost and undue burden of defending against patent infringement claims that CEV may have no standing to pursue.

---

[11] In contrast, allowing discovery to proceed on Javo's asserted claims does not create such inefficiencies. Moreover, as the schedule reflects, the threshold issues in the arbitration will be decided well before this Court is requested to make any determinations on Javo's patent ownership claim, which also encompasses Javo's allegations that other employees of Javo (with similar assignment obligations to those under Corey's CIAA), likely made inventive contributions to the subject matter claimed in the patents, thus entitling Javo to co-ownership. (*See* Doc. No. 1 at ¶¶ 96–105.)

[12] And to the extent Corey and/or CEV purport to have this concern, it weighs in favor of permitting the arbitration to proceed first under the FAA.

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

16.

JAVO'S MOTION TO STAY
CASE NO. 19-CV-1859 CAB WVG

| | |
|---|---|
| 1 | Dated:   May 27, 2020 |
| 2 | |

COOLEY LLP

By:  /s/ Steven M. Strauss
       Steven M. Strauss (99153)

Attorneys for Plaintiff and Counterclaim-Defendant Javo Beverage Co., Inc.

226448984

Cooley LLP
Attorneys At Law
San Diego

17.

Javo's Motion to Stay
Case No. 19-cv-1859 CAB WVG