SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
JOHN A. YACOVELLE, Cal. Bar No. 131781
    jyacovelle@sheppardmullin.com
MARISA B. MILLER, Cal. Bar No. 270860
    mmiller@sheppardmullin.com
KRISTIN P. HOUSH, Cal. Bar No. 286651
    khoush@sheppardmullin.com
JESSE SALEN, Cal. Bar No. 292043
    jsalen@sheppardmullin.com
12275 El Camino Real, Suite 200
San Diego, California 92130-4092
Telephone:  858.720.8900
Facsimile:  858.509.3691

Attorneys for Defendants/Counter-Claimant
CALIFORNIA EXTRACTION VENTURES, INC.; STEPHEN COREY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAVO BEVERAGE CO., INC., <br><br> Plaintiff, <br><br> v. <br><br> CALIFORNIA EXTRACTION VENTURES, INC. AND STEPHEN COREY, <br><br> Defendants. <br><br> CALIFORNIA EXTRACTION VENTURES, INC., <br><br> Counter-Claimant, <br><br> v. <br><br> JAVO BEVERAGE CO., INC., <br><br> Counterclaim-Defendant. | Case No. 3:19-CV-01859-CAB-WVG <br><br> **DEFENDANTS CALIFORNIA EXTRACTION VENTURES, INC. AND STEPHEN COREY'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ANTI-SUIT INJUNCTION TO ENJOIN ARBITRATION** <br><br> Date:  July 2, 2020 <br> Ctrm.:  4C (4th Floor) <br> The Hon. Cathy Ann Bencivengo <br><br> **PER CHAMBERS RULES, NO ORAL ARGUMENT UNLESS SEPARATELY ORDERED BY THE COURT** <br><br> Complaint Filed:  September 26, 2019 <br> Trial Date:    TBD |

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ........................................................................................... 1

II. FACTUAL AND PROCEDURAL BACKGROUND ..................................... 3

    A. District Court Litigation Proceedings ...................................................... 3

    B. Related Arbitration Proceedings .............................................................. 6

III. LEGAL ARGUMENT .................................................................................... 8

    A. The Litigation Is Dispositive of the Arbitration ...................................... 9

    B. Continuation of the Arbitration Would Frustrate the Policy of the Instant Forum Against Piecemeal and Duplicative Litigation .............. 12

    C. An Anti-Suit Injunction Will Have No Impact on International Comity ..................................................................................................... 15

IV. CONCLUSION ............................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

Cases

*Applied Med. Distrib. Corp. v. Surgical Co. BV*
　587 F.3d 909 (9th Cir. 2009) .......................................................................*passim*

*E. & J. Gallo Winery v. Andina Licores S.A.*
　446 F.3d 984 (9th Cir. 2006) ........................................................................*passim*

*Hilton v. Guyot*
　159 U.S. 113 (1895) ............................................................................................ 15

*Javo Beverage Co., Inc. v. Stephen Corey*
　AAA Case No. 01-19-0003-2445 ................................................................ 6, 7, 8

*Mastronardi Int'l Ltd. v. SunSelect Produce (Cal.), Inc.*
　2020 WL 520167 (E.D. Cal. Jan. 31, 2020) ................................................ 12, 13

*Microsoft Corp. v. Motorola, Inc.*
　696 F.3d 872 (9th Cir. 2012) ................................................................................ 8

*Oracle Am., Inc. v. Myriad Group AG*
　2012 WL 146364 (N.D. Cal. Jan. 17, 2012) ................................................*passim*

*Po-Hai Tang v. CS Clean Sys. AG*
　2011 WL 4073653 (S.D. Cal. Sept. 13, 2011) ...................................................... 9

*Seattle Totems Hockey Club, Inc. v. Nat'l Hockey League*
　652 F.2d 852 (9th Cir. 1981) ......................................................................... 13, 14

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Shortly after the above-captioned action ("Litigation") was filed by Plaintiff Javo Beverage Co., Inc. ("Javo") against Defendants California Extraction Ventures, Inc. ("CEV") and Stephen Corey ("Corey") on September 26, 2019, Javo initiated a parallel and related arbitration ("Arbitration") against Corey before the American Arbitration Association ("AAA") on October 11, 2019. Notwithstanding the substantial progress that has been made in the Litigation—including the Court's ruling denying Javo's Motion for Preliminary Injunction, the entry of a case management order and schedule, the exchange of Preliminary and Responsive Claim Constructions, and the party and third party discovery that has already been and will be completed—Javo seeks to continue litigating its duplicative claims against Corey in the parallel Arbitration, which is substantively and procedurally in its infancy.

The Court "has the discretion to enter an anti-suit injunction enjoining parties before it from proceeding with a parallel action" or arbitration 'in circumstances that are unjust.'" *Oracle Am., Inc. v. Myriad Group AG*, No. C 10 05604 SBA, 2012 WL 146364, at *6 (N.D. Cal. Jan. 17, 2012) (quoting *E. & J. Gallo Winery v. Andina Licores S.A.*, 446 F.3d 984, 989 (9th Cir. 2006) ("*Gallo*")). Such unjust circumstances are present here. All three factors that district courts are directed by the Ninth Circuit to consider weigh heavily in favor of such an anti-suit injunction: "(1) whether or not the parties and the issues are the same, and whether or not the first action is dispositive of the action to be enjoined; (2) whether the foreign litigation would frustrate a policy of the forum issuing the injunction; and (3) whether the impact on comity would be tolerable." *Applied Med. Distrib. Corp. v. Surgical Co. BV*, 587 F.3d 909, 913 (9th Cir. 2009).

*First*, with respect to Corey, the parties to and issues presented in the Litigation and Arbitration are identical in all material respects. Both the Litigation

and Arbitration arise from the same set of core underlying allegations against Corey, and seek the same relief, including damages to be determined at trial or the arbitration hearing and orders (1) prohibiting Corey from continuing to use Javo's confidential or trade secret information and (2) assigning to Javo all patent applications and patents reflecting Javo trade secrets or confidential information.[1] The Litigation is accordingly dispositive of the claims asserted against Corey in the Arbitration, which Javo should be enjoined from continuing to pursue.[2]  Indeed, Javo admits as much in its recently-filed motion to stay, stating that "Javo agrees" with the Arbitrator's finding that "'[b]oth the Demand here and the complaint in the . . . Litigation advance similar allegations and claims,' and thus will have overlapping issues."[3]  (Motion to Stay [Doc. 79-1] at 10.)

*Second*, continuation of the Arbitration would frustrate the federal policy against duplicative and piecemeal litigation and potentially inconsistent rulings, as well as create unnecessary delay, burden, and expense on the parties, the Court, and the Arbitrator appointed in the Arbitration.  Indeed, as just one example, Javo has already served written discovery on Defendant Corey in both the Litigation and Arbitration which materially overlaps.  Not only does having to respond to **identical** discovery served in two parallel actions result in the imposition of an unnecessary burden and expense on Defendant Corey, discovery disputes which are likely to arise regarding those same discovery requests could potentially be subject to

---

[1] Notably, Javo is seeking an assignment of CEV's patents to Javo in the Arbitration, even though CEV is not a party to the Arbitration.

[2] The opposite is not true for several reasons.  First, CEV is not a party to the Arbitration, and Javo's claims against CEV in the Litigation will not be resolved in the Arbitration.  Second, CEV has a patent infringement Counterclaims pending against Javo, which will not be addressed in the Litigation.

[3] While Defendants disagree with the self-serving contentions in Javo's motion to stay, which seeks the stay of Defendants' Counterclaims in the Litigation, they do not address them here.  Defendants will respond directly to those contentions in their forthcoming opposition to Javo's motion to stay.

inconsistent rulings by both the Court and the Arbitrator, which could in turn lead to inconsistent rulings on core factual and legal issues in both the Litigation and the Arbitration on the basis of different factual records.

*Third*, an anti-suit injunction will have no impact on international comity, because the employment contracts that give rise to Javo's Arbitration claims call for the application of California law and for the jurisdiction of this Court to resolve any disputes of the parties arising therefrom. Accordingly, for all of the reasons set forth herein, Defendants CEV and Corey respectfully request that the Court grant the Motion and enter an anti-suit injunction enjoining Javo from continuing the Arbitration, until such time that that the Litigation is fully and finally resolved.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. District Court Litigation Proceedings

On September 26, 2019, Javo filed the Complaint in the Litigation, asserting four causes of action against Defendants CEV and Stephen Corey: (1) misappropriation of trade secrets under the Defend Trade Secrets Act against CEV and Corey; (2) misappropriation of trade secrets under the California Uniform Trade Secrets Act against CEV and Corey; (3) declaratory relief against CEV regarding a number of patents filed by Corey, in which Javo alleges an ownership interest; and (4) intentional interference with contractual relations against CEV. (Complaint [Doc. 1] at ¶¶ 71-113.)

All four causes of action arise from the same core set of allegations and contracts. Javo alleges that Corey was an "original co-founder of Javo" and a "principal inventor of Javo's trade secret [coffee, tea, and botanical] extraction process." (*Id.* at ¶ 2.) Javo contends that Corey worked at Javo and its predecessor entities from approximately 1993 until 2011. (*Id.*) Javo alleges that in December 2001, Corey executed an Employment Agreement ("EA") and an Employee Confidentiality and Invention Assignment Agreement ("CIAA") in which Corey agreed to assign his interest in Javo's alleged proprietary extraction process to Javo,

and further agreed not to disclose or otherwise misuse Javo's confidential information.  (*Id.* at ¶¶ 31-41.)

Javo alleges that many years after Corey's departure from Javo, on March 17, 2015, Corey filed the '497 Provisional Application attached as Exhibit B to the Complaint with the United States Patent and Trademark Office (the "USPTO").  (*Id.* at ¶¶ 50-51, Ex. B.)  Javo alleges that Corey conceived of the invention that is the subject of the '497 Provision Application "during Corey's tenure with [Javo]," and that therefore the information contained within the '497 Provision Application constitutes Javo's trade secrets.  (*Id.* at ¶¶ 53-57.)

Corey subsequently filed seven additional patent applications claiming priority to the '497 Provision Application, all of which Javo contends "disclose material that substantially describes and overlaps with the proprietary confidential information and trade secrets of Javo."  (*Id.* at ¶¶ 65-66.)  Based on these patent applications, Javo alleges that "Corey improperly disclosed the [trade secret] information in publicly-available patent applications he filed with the [USPTO] and assigned to CEV," (*Id.* at ¶15); the "published patent applications disclose material that substantially describes and overlaps with the proprietary confidential information and trade secrets of Javo," (*Id.* at ¶ 66); "Corey and CEV have willfully misappropriated Javo's confidential and trade secret information for their own use, including by filing patent applications," (*Id.* at ¶ 83); and that the "[p]ublished patent applications . . . were a material breach of the restrictions against disclosure of Javo's confidential and trade secret information" found in the EA and CIAA, (*Id.* at ¶ 111).

On November 14, 2019, almost two months after filing the Complaint, Javo filed a motion for preliminary injunction (the "PI Motion") to enjoin CEV and Corey from, among other things, "using Javo's trade secrets and other confidential information" in its business, raising money from investors, filing any new patent

applications, or licensing any rights to third parties in any issued patents based on such trade secrets or other confidential information. (PI Mot. [Doc. 20] at 2.)

On December 16, 2019, CEV filed Counterclaims against Javo for infringement of U.S. Patent Application No. 10,207,200 (the "'200 Patent") and U.S. Patent Application No. 10,293,275 (the "'275 Patent"), the rights and titles to which were assigned by Corey to CEV. (Counterclaims [Doc. 38] at ¶¶ 21, 27, 44-57.) As set forth in the Counterclaims, CEV seeks the dismissal of the Complaint and all claims for relief contained therein, with prejudice, findings that Javo directly and indirectly infringed on the '200 and '275 Patents, a permanent injunction enjoining Javo from further infringing on the Patents, an award of reasonable royalty adequate to compensate CEV for Javo's infringement of the Patents, an award of treble damages for willful infringement of the Patents, and an award of CEV's attorneys' fees, costs, and expenses. (*Id.* at 10-11.)

Pursuant to an order from the Court, CEV and Corey conducted expedited discovery in connection with the PI Motion, including a Rule 30(b)(6) deposition of Javo on certain topics. (Order [Doc. 28] at 2.) On February 10, 2020, the parties conducted an Early Neutral Evaluation Conference and a Case Management Conference. (Minute Entry [Doc. 64].) On February 12, 2020, the Court entered a Case Management Order setting a schedule for fact and expert discovery on the patent claims asserted by the parties in both the Complaint and the Counterclaims, to be completed by March 15, 2021, and other pretrial proceedings. (Case Management Order [Doc. 65] at ¶¶ 16-18.)

On February 24, 2020, following additional briefing from the parties and a hearing on January 23, 2020, the Court entered an order denying the PI Motion, finding that "the Court is not persuaded that Javo has established a likelihood of success in proving that the proprietary aspects of Javo's extraction vessel and process were misappropriated by Corey and CEV and disclosed in the Corey patent applications." (Order [Doc. 67] at 7-8.) The Court further held that because "Javo's

remaining claims for intentional interference and declaratory judgment of patent ownership are largely based on the same set of facts underlying its trade secret misappropriation claim," Javo "has similarly failed to sufficiently establish a likelihood of success on the merits of either of these claims." (*Id.* at 8.)

On February 28, 2020, consistent with the Court's Case Management Order, CEV served its Initial Disclosure of Asserted Claims and Infringement Contentions on Javo, including an initial document production. (*See* Declaration of Marisa B. Miller ("Miller Decl.") ¶ 8.) On April 24, 2020, CEV served Invalidity Contentions on Javo. (*Id.*) On May 8, 2020, the parties exchanged Preliminary Claim Constructions, and on May 22, 2020, the parties exchanged Responsive Claim Constructions. (*Id.*)

In parallel, the parties have conducted significant party and third party discovery. On February 28 and March 2, 2020, Defendants CEV and Corey served four subpoenas on third parties, seeking information regarding Javo's alleged failed sales process, which is central to Java's core allegations of liability and damages in both the Litigation and Arbitration. (*Id.* at ¶ 9.) On March 25, 2020, Javo served separate requests for production, interrogatories, and requests for admission on Defendants CEV and Corey. (*Id.*, Exs 8, 9, 10.) Defendants served responses and objections to Javo's written discovery on April 24, 2020. (*Id.* at ¶ 9.) On May 1, 2020, Corey served requests for production and interrogatories on Javo, and on May 13, 2020, Corey served requests for admission on Javo. (*Id.*) On May 11, 2020, Defendants served supplemental responses to Javo's written discovery. (*Id.*)

### B. Related Arbitration Proceedings

In parallel with the Litigation, on October 11, 2019, Javo initiated the Arbitration against Corey by lodging a Demand for Arbitration with the American Arbitration Association ("AAA"), captioned *Javo Beverage Co., Inc. v. Stephen Corey*, AAA Case No. 01-19-0003-2445. (*Id.* at ¶ 2, Ex. 1.) The Demand asserts causes of action against Corey for breach of contract and breach of covenant of good

1  faith and fair dealing, which are premised on the same core set of allegations and
2  contracts as the causes of action asserted against Corey in the Complaint. (*Id.*, Ex. 1
3  at ¶¶ 71-93.)

4      As in the Complaint, Javo alleges in the Demand that Corey "was an original
5  co-founder of Javo and its predecessors," the "principal inventor of Javo's
6  proprietary extraction process," and an employee of Javo "from the company's
7  inception in or around 1993 until 2011." (*Id.* at ¶ 7.) As in the Complaint, Javo
8  asserts that Corey entered into the EA and CIAA in December 2011, which
9  contained certain "requirements to ensure that Corey would protect Javo's
10 confidential information and trade secrets." (*Id.* at ¶¶ 31, 33.) As in the Complaint,
11 Javo alleges that in March 2015, Corey filed the '497 Provisional Application,
12 subsequently "obtained seven issued patents claiming priority to Corey's '497
13 Provisional Application," all of which "disclose material that substantially describes
14 and overlaps with the proprietary confidential information and trade secrets [of
15 Javo] that existed when Corey signed the [EA and CIAA]." (*Id.* at ¶¶ 55, 62-63.)
16 And as in the Complaint, Javo alleges in the Demand that Corey by "filing . . .
17 patent applications and assigning the patent applications and issued patents to CEV,
18 Corey materially breached the EA and CIAA." (*Id.* at ¶ 77.)

19     On November 13, 2019, Corey lodged an Answer to Javo's Demand, denying
20 each and every allegation asserted against him, and further denying that Javo is
21 entitled to any of the relief requested therein. (*Id.* at ¶ 3, Ex. 2.) Corey further
22 provided notice to the AAA of Javo's filing of the related Litigation, which, like the
23 Demand, "alleges that Corey misappropriated Javo's trade secrets by filing U.S. Pat.
24 App. No. 62/134,497 and obtaining patents and patent applications therefrom,"
25 similarly "seeks declaratory relief as to the ownership of the patents and patent
26 applications allegedly containing Javo's trade secrets," and "alleges CEV
27 intentionally interfered with the two agreements—the [EA and CIAA]—at issue in
28 this arbitration." (*Id.*, Ex. 2 at 2-3.)

1    On January 27, 2020, the AAA appointed the Hon. Jay Gandhi as Arbitrator
2 in the Arbitration.  (*Id.* at ¶ 4.)  On March 2, 2020, the Arbitrator conducted a
3 telephonic Arbitration Management Conference, during which Corey raised the
4 concern that the substantial, if not identical, overlap between the allegations and
5 claims for relief asserted in the Litigation and the Arbitration against him created a
6 significant likelihood of conflicting rulings on common issues of law or fact as
7 determined by the Court and the Arbitrator.  (*Id.*)  At the Arbitrator's direction, on
8 March 6, 2020, Corey filed a motion to stay the Arbitration in favor of the
9 Litigation, which was fully briefed by the parties.  (*Id.* at ¶ 5.)
10   On April 21, 2020, the Arbitrator issued a ruling denying Corey's motion to
11 stay.  (*Id.* at ¶ 6, Ex. 3.)  The Arbitrator's ruling was primarily on the basis that "the
12 Arbitrator is unaware of any attempt by Corey to seek a stay of the Arbitration in the
13 District Court," and "[u]nder the AAA Rules, the Arbitrator may lack jurisdiction to
14 stay this proceeding," prompting the filing of this Motion.  (*Id.*, Ex. 3 at 2.)  On
15 April 21, 2020, the Arbitrator also issued Scheduling Order No. 1 (the "Arbitration
16 Scheduling Order").  (*Id.* at ¶ 6., Ex. 4.)  The Arbitration Scheduling Order
17 contemplates fact discovery to be closed by August 28, 2020, expert discovery to be
18 closed by October 23, 2020, and an evidentiary hearing to be conducted from
19 December 7 to 11, 2020.  (*Id.*, Ex. 4 at 2.)  On May 15, 2020, pursuant to the
20 Arbitration Scheduling Order, Javo served Corey with requests for production of
21 documents, interrogatories, and requests for admission, which materially overlap
22 with the written discovery served in the Litigation.  (*Id.* at ¶ 7, Exs. 5, 6, 7.)

### III.  **LEGAL ARGUMENT**

The Ninth Circuit has held that federal courts "derive the ability to enter an
anti-suit injunction from their equitable powers," which "allow the court to restrain
a party subject to its jurisdiction from proceeding in a foreign court in circumstances
that are unjust."  *Gallo*, 446 F.3d at 989; *see also Applied Med. Distrib. Corp.*, 587
F.3d at 919 (same); *Microsoft Corp. v. Motorola, Inc.*, 696 F.3d 872, 881 (9th Cir.

2012) (same).  California federal courts have held that the ability to enter an anti-suit injunction encompasses not only proceedings before foreign courts, but also arbitrations like the one initiated by Javo here.  *See Oracle*, 2012 WL 146364, at *6 (enjoining litigant "from proceeding further with the arbitration of the claims alleged in this [district court litigation]").  "The injunction operates *in personam*; in other words, the court enjoins the litigants, not the foreign tribunal."  *Id.* at *3.

"The usual standard for the issuance of injunctive relief is not applicable to anti-suit injunctions[.]"  *Po-Hai Tang v. CS Clean Sys. AG*, No. 11-cv-00212 BEN (RBB), 2011 WL 4073653, at *2 (S.D. Cal. Sept. 13, 2011).  "Instead, the Ninth Circuit has directed district courts to consider" what have been dubbed the three *Gallo* factors: "'(1) whether or not the parties and the issues are the same, and whether or not the first action is dispositive of the action to be enjoined; (2) whether the foreign litigation would frustrate a policy of the forum issuing the injunction; and (3) whether the impact on comity would be tolerable.'"  *Oracle*, 2012 WL 146364, at *3 (quoting *Applied Med. Distrib. Corp.*, 587 F.3d at 913).

All three of these factors weigh strongly in favor of an injunction to prohibit Javo from continuing to litigate the same issues against the same parties in parallel proceedings before both the Court and the Arbitrator.  *See id.* at *6 (holding that "[e]ach of the three considerations set forth in *Gallo* weigh in favor of enjoining [litigant] from proceeding further with the arbitration of the claims alleged in this action," and granting "request to enjoin [litigant] from proceeding further with its Demand for Arbitration with respect to the claims alleged in this lawsuit").

### A.   The Litigation Is Dispositive of the Arbitration

The first *Gallo* factor "addresses the relationship between the federal court action and the foreign proceeding."  *Oracle*, 2012 WL 146364, at *3.  The "crux of the functional inquiry in the first step of the analysis is to determine whether the issues are the same in the sense that all the issues in the foreign action . . . can be

resolved in the local [district court] action." *Applied Med. Distrib. Corp.*, 587 F.3d at 915.

Here, there can be no dispute that the parties to the Arbitration, Javo and Corey, are also parties to the Litigation. There can also be no dispute that the issues being litigated in the Litigation and the Arbitration are substantively, if not completely, identical with respect to Corey. Both the Litigation and the Arbitration arise from the same set of core underlying allegations against Corey—namely that by filing the '497 Application and obtaining patents and patent applications therefrom, Corey misappropriated Javo's confidential information and/or trade secrets, which were subject to protections against their use and disclosure contained in the EA and CIAA to which Corey was bound. (*See* Compl. at ¶¶ 2, 15, 31-41, 50-51, 53-57, 66, 83, 111; Demand at ¶¶ 7, 31, 33, 55, 62-63, 77.) Both the Litigation and the Arbitration assert claims against Corey relating directly and indirectly to the EA and CIAA, which provide that they "shall be interpreted in accordance with the laws of the State of California," and under which the "parties agree[d] to the jurisdiction of the federal and state courts of California for disputes arising from this Agreement." (Compl., Ex. A at § 11.1.) Both the Litigation and the Arbitration seek nearly identical relief, including damages to be determined at trial or the arbitration hearing, and orders (1) prohibiting Corey from continuing to use Javo's confidential or trade secret information and (2) assigning to Javo all patent applications and patents that disclose in whole or in part Javo trade secrets or confidential information. (*See* Compl. at 21-22; Demand at 17-18.)

The material overlap between the Litigation and Arbitration is evidenced clearly in the written discovery served by Javo on Corey in both actions, which is largely identical. Indeed, all of the same document requests, interrogatories, and requests for admission served by Javo in the Litigation were also served in the Arbitration, with only minor changes. Javo's apparent belief that **all** of the same documents sought in the Litigation are also relevant to the Arbitration is an implied

concession that the claims and defenses in the Litigation are also directly relevant to those asserted in the Arbitration.

Javo also openly admits in its recently-filed motion to stay that the Litigation and the Arbitration will resolve issues and claims that are dispositive of one another. In its own words, "Javo agrees" with the Arbitrator's finding that "'[b]oth the Demand here and the complaint in the . . . Litigation advance similar allegations and claims,' and thus will have overlapping issues." (Motion to Stay [Doc. 79-1] at 10.) By Javo's own admission, resolution of the factual and legal claims presented in the Litigation by this Court will naturally and inherently resolve the duplicative claims against Corey asserted in the Arbitration, weighing strongly in favor of an anti-suit injunction to preclude the Arbitration from continuing.[4]

Moreover, that the individual causes of action asserted in the Litigation are styled differently than the causes of action alleged in the Arbitration is irrelevant to the inquiry. As the Ninth Circuit in *Applied Med. Distrib. Corp.* recognized, "requiring issues to be precisely and verbally identical would lead to counterproductive, and perhaps unintended, results." 587 F.3d at 915. For example, a party could disrupt domestic litigation "simply by waiting until a local suit is filed, and then file a foreign action that, despite being easily disposed of by resolution of the local action, is in some way not identical in form[.]" *Id.* "Such language differences across national systems, if they invariably allowed competing

---

[4] Although the Litigation is dispositive of the Arbitration, notably, the opposite is not true. For example, CEV is not a party to the Arbitration, and the claims that Javo asserted against it will necessarily have to be litigated in Court. In addition, CEV filed Counterclaims in the Litigation which must be resolved before the Court regardless of whether the Arbitration is permitted to continue. Javo recognizes as much in its motion to stay, which seeks a stay of Defendants' patent infringement Counterclaims in the Litigation—one of the only aspects of the Litigation that is not inherently duplicative of Javo's claims asserted in the Arbitration.

international litigation, would wholly frustrate the normal purposes of clauses selecting a forum and applicable law." *Id.*

That same reasoning is equally applicable to the Arbitration initiated by Javo here—while styled as different causes of action, the claims in the Litigation and Arbitration against Corey are functionally equivalent. *See id.* at 918. Because Javo's claims and requests for relief asserted against Corey in the Litigation and the Arbitration arise from the same set of core allegations, contracts, and documents, and will be resolved in accordance with the same body of California law pursuant to the choice-of-law provision contained in the EA and CIAA, "the issues are functionally the same" for the purposes of determining whether an anti-suit injunction should issue under the *Gallo* factors. *Id.* at 916.

### B. Continuation of the Arbitration Would Frustrate the Policy of the Instant Forum Against Piecemeal and Duplicative Litigation.

The "second step in deciding if an anti-suit injunction is appropriate is determining if the continuation of the foreign litigation would frustrate a policy of the forum issuing the injunction." *Id.* at 918.

Permitting Javo to continue the Arbitration here would frustrate the "federal policy against piecemeal and duplicative litigation, forum shopping[,] and inconsistent rulings," *Oracle*, 2012 WL 146364, at *4, and furthermore " cause[] substantial inconvenience, unnecessary expense, and duplication of efforts" to the parties, the Court, and the Arbitrator, *Mastronardi Int'l Ltd. v. SunSelect Produce (Cal.), Inc.*, No. 1:18-cv-00737-AWI-JLT, 2020 WL 520167, at *7 (E.D. Cal. Jan. 31, 2020).[5] As the Ninth Circuit has recognized, "[a]djudicating [the same] issue[s]

---

[5] Although the court in *Mastronardi* denied plaintiff's request for an anti-suit injunction, the facts in that case are readily distinguishable from the present circumstances: (1) unlike the EA, the agreement at issue in *Mastronardi* provided for a dual-prong dispute resolution procedure, provided that disputes "shall be settled [in litigation] under the procedures set out in [the Perishable Agricultural

in two separate actions is likely to result in unnecessary delay and substantial inconvenience and expense to the parties and witnesses"—an outcome that will inevitably result if the Arbitration is permitted to continue, given the material overlap in the parties to, and claims asserted against Corey in the Litigation and the Arbitration. *Seattle Totems Hockey Club, Inc. v. Nat'l Hockey League*, 652 F.2d 852, 856 (9th Cir. 1981). As just one example, by serving largely identical written discovery on Defendant Corey in both the Litigation and Arbitration, Javo has already imposed on Corey the unnecessary burden and expense of having to respond to the same discovery in two parallel actions.

Moreover, the concern expressed by the Ninth Circuit that "separate adjudications could result in inconsistent rulings or even a race to judgment" is already being realized here. *Id.* First, given the overlap between the discovery served by Javo on Corey in both the Arbitration and the Litigation, both the Court and the Arbitrator will likely be facing similar discovery disputes between Javo and Corey, which could potentially lead to inconsistent rulings based on the differing scope of discovery permitted in the Arbitration, which will be substantially more limited than discovery in the Litigation. Differing rulings on discovery could in turn lead to inconsistent rulings on core factual and legal issues as it relates to Corey in both the Litigation and the Arbitration on the basis of different factual records.

---

Commodities Act ('PACA')], if applicable, and if not applicable, the parties shall refer the dispute to a single arbitrator," *id.* at *1; (2) unlike the overlapping claims asserted by Javo in the Litigation and Arbitration here, plaintiff's lawsuit against defendant in *Mastronardi* consisted of PACA claims, which did not appear to encompass the breach of contract claims asserted by defendant in the subsequently-filed arbitration; and (3) unlike the significant risk of inconsistent rulings created here if the Arbitration is permitted to continue in parallel with the Litigation, the lack of overlap between the claims asserted in the lawsuit and arbitration in *Mastronardi* did not give rise to the potential for differing outcomes. Accordingly, the court's finding in *Mastronardi* that an anti-suit injunction should not issue because there would be no inconvenience, unnecessary expense, duplication of efforts, or risk of inconsistent rulings is inapplicable.

Importantly, CEV, the assignee of the patents at issue in the Litigation, is not a party to the Arbitration. CEV's rights to its patents must therefore be addressed in the Litigation, rather than the Arbitration. Second, the schedule set by the Arbitrator—which contemplates an evidentiary hearing in December 2020—is precisely the kind of "race to judgment" that concerned the Ninth Circuit. *Id.*

By contrast, no prejudice to the parties or the Arbitrator will result if an anti-suit injunction is entered in the Litigation to enjoin the continuation of the Arbitration. The Arbitration is in its preliminary stages, with fact discovery only just beginning in early May 2020, and no proceedings touching on the substance of Javo's underlying allegations and claims have been conducted. In the Litigation, on the other hand, this Court is well-acquainted with the facts and merits of this case, having presided over extensive proceedings arising from Javo's PI Motion, which this Court denied. (Order [Doc. 67].) Moreover, significant party and third party discovery has already been and will continue to be conducted, an Early Neutral Evaluation Conference has taken place, a case management order containing a discovery schedule has been entered, and the Court has issued a protective order and a protocol for electronically stored information. (Order [Doc. 28]; Case Management Order [Doc. 65]; Order [Doc. 67]; Order [Doc. 77].)

Rather than subject the parties, the Court, and the Arbitrator to the unnecessary inconvenience, expense, and risk of inconsistent rulings that parallel proceedings would create, the interests of judicial economy would best be served by an anti-suit injunction to enjoin Javo from continuing the Arbitration. Accordingly, and for all of the foregoing reasons, the second *Gallo* factor weighs in favor of enjoining Javo from continuing the Arbitration. *See Oracle*, 2012 WL 146364, at *5 (holding that litigant's "efforts to proceed with the arbitration . . . frustrate and contravene the policy against avoiding inconsistent judgments, forum shopping and engaging in duplicative and vexatious litigation").

### C. An Anti-Suit Injunction Will Have No Impact on International Comity

The final step "in deciding if an anti-suit injunction is appropriate is determining whether the impact on international comity would be tolerable." *Applied Med. Distrib. Corp.*, 587 F.3d at 919. Comity is "the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens, or of other persons who are under the protection of its laws." *Hilton v. Guyot*, 159 U.S. 113, 164 (1895).

International comity concerns are not implicated under the present circumstances, where the parties agreed in the EA that "[t]his Agreement shall be interpreted in accordance with the laws of the State of California," and that the "parties agree to the jurisdiction of the federal and state courts of California for disputes arising from this Agreement." (Compl., Ex. A at § 11.1.) *See Gallo*, 446 F.3d at 994 ("The case before us deals with enforcing a contract and giving effect to substantive rights. This in no way breaches norms of comity."). Because both the Court and the Arbitrator will be applying California law to Javo's claims where applicable, and Javo agreed to the jurisdiction of the federal courts of California for the resolution of any disputes arising under the EA and CIAA, "the impact of an anti-suit injunction on international comity, if any, will be negligible." *Oracle*, 2012 WL 146364, at *6.

## IV. CONCLUSION

For all of the foregoing reasons, Defendants respectfully request the Court to enter an anti-suit injunction enjoining the continuation of the Arbitration, pending the resolution of the instant Litigation.

Dated: May 28, 2020

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By     */s/ John A. Yacovelle*
JOHN A. YACOVELLE
MARISA B. MILLER
KRISTIN P. HOUSH
JESSE SALEN

Attorneys for Defendants/Counter-Claimant
CALIFORNIA EXTRACTION
VENTURES, INC. AND STEPHEN COREY